UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

RUBEN A. LUNA, individually and on behalf of :
all others similarly situated,

                                          :

                Plaintiff,            Civil Action

        v.                     : No. 19-11662-LTS
                                     (Consolidated)

CARBONITE, INC., MOHAMAD S. ALI and   :
ANTHONY FOLGER,                    **LEAVE TO FILE GRANTED ON**

                                        : **JANUARY 10, 2023 (ECF No. 110)**

             Defendants.

                                        :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

### DEFENDANTS' SUR-REPLY MEMORANDUM IN FURTHER OPPOSITION TO LEAD PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

Dated:  January 10, 2023

                                      James R. Carroll
                                      Alisha Q. Nanda
                                      Kurt Wm. Hemr
                                      Nigel Tamton
                                      SKADDEN, ARPS, SLATE,
                                            MEAGHER & FLOM LLP
                                      500 Boylston Street
                                      Boston, Massachusetts 02116
                                      (617) 573-4800

                                      *Counsel for Defendants*
                                      *Carbonite, Inc., Mohamad S. Ali,*
                                      *and Anthony Folger*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................................................... ii

PRELIMINARY STATEMENT ..................................................................................................1

ARGUMENT ................................................................................................................................1

1.      Class Certification Should Be Denied Here Because The Weight Of The Evidence
        Before The Court Shows That The Alleged Misstatements Had No Price Impact,
        Which Suffices To Rebut The Fraud-On-The-Market Presumption ...................................1

        a.      The Trust Misreads *Goldman*: A Court Must Consider All Of The
                Competing Direct And Indirect Evidence In The Record To Assess
                Whether The Statements At Issue Did Or Did Not Have A Price Impact ...............1

        b.      The Weight Of The Evidence Shows That The November 1 And 15, 2018
                Statements Which Are The Basis for the Trust's Claim Had No Price
                Impact ....................................................................................................................2

        c.      The Trust Is Now Barred From Pursuing A Claim Based On Alleged
                Misstatements Other Than The November 1 And 15, 2018 Statements..................5

2.      Predominance Is Not Met Because The Trust Has Failed To Show That It Can
        Prove Damages Class-Wide Based On The November 1 And 15, 2018 Statements ..........6

3.      The Evidence Shows That The Trust Is Subject To Unique Defenses And Is
        Atypical.............................................................................................................................7

4.      The Trust Is A Plainly Inadequate Class Representative....................................................8

CONCLUSION.............................................................................................................................8

## TABLE OF AUTHORITIES

**CASE(S)**                                                                    **PAGE(S)**

*Aquinnah/Gay Head Community Association, Inc. v. Wampanoag Tribe of Gay Head*
    *(Aquinnah)*, 989 F.3d 72 (1st Cir. 2021)...............................................................6

*Basic Inc. v. Levinson,*
    485 U.S. 224 (1988)...............................................................................................1

*Comcast Corp. v. Behrend,*
    569 U.S. 27 (2013).................................................................................................7

*Construction Industry & Laborers Joint Pension Trust v. Carbonite, Inc.,*
    22 F.4th 1 (1st Cir. 2021).....................................................................................2, 6

*Doe v. Stonehill College, Inc.,*
    55 F.4th 302 (1st Cir. 2022)...................................................................................2

*Goldman Sachs Group, Inc. v. Arkansas Teacher Retirement System,*
    141 S. Ct. 1951 (2021)..............................................................................1, 2, 3, 7

*Halliburton Co. v. Erica P. John Fund, Inc.,*
    134 S. Ct. 2398 (2014)...........................................................................................4

*In re Razorfish, Inc. Securities Litigation,*
    143 F. Supp. 2d 304 (S.D.N.Y. 2001)...................................................................8

*Thorpe v. Walter Investment Management Corp.,*
    No. 1:14-CV-20880-UU, 2016 WL 4006661 (S.D. Fla. Mar. 16, 2016) ...........4

*Whitman v. American Trucking Associations, Inc.,*
    531 U.S. 457 (2001)...............................................................................................4


**STATUTE**                                                                    **PAGE(S)**

Private Securities Litigation Reform Act of 1995 ("PSLRA"),
    *codified at* 15 U.S.C. § 78u-4(a)(3) .....................................................................8

## PRELIMINARY STATEMENT

In this putative securities fraud class action, the Trust[1] seeks to take advantage of the fraud-on-the-market presumption to prove the requisite element of reliance class-wide. But the weight of the evidence before the Court on this Motion shows that the statements by Defendants on November 1 and 15, 2018 regarding Carbonite's VME product had no impact on the company's share price. That *rebuts* the fraud-on-the-market presumption and makes certification of this action as a class action impossible. For that reason and for the other reasons set forth in Defendants' Opposition (ECF No. 101), the Trust's Motion should be denied.

## ARGUMENT

1. **Class Certification Should Be Denied Here Because The Weight Of The Evidence Before The Court Shows That The Alleged Misstatements Had No Price Impact, Which Suffices To Rebut The Fraud-On-The-Market Presumption**

   a. **The Trust Misreads *Goldman*: A Court Must Consider All Of The Competing Direct And Indirect Evidence In The Record To Assess Whether The Statements At Issue Did Or Did Not Have A Price Impact**

Where a plaintiff proposes to rely on the fraud-on-the-market presumption to establish the element of reliance class-wide, it is essential that the alleged misrepresentation must have had some impact on the security's price. "If a misrepresentation had no price impact, then *Basic* [*v. Levinson*]'s fundamental premise 'completely collapses, rendering class certification inappropriate.'" *Goldman Sachs Grp., Inc. v. Ark. Tchr. Ret. Sys.*, 141 S. Ct. 1951, 1959 (2021) (citations omitted). Thus, in *Goldman*, the Supreme Court held that where "a preponderance of the evidence" shows that the alleged misrepresentation had no price impact, the fraud-on-the-market presumption is rebutted and class certification should be denied. *Id.* at 1963.

The Trust would rewrite *Goldman* to hold that "Defendants must prove a *complete absence* of evidence of price impact" to defeat class certification. (ECF No. 107, at 2

---

[1] Capitalized terms have the meanings ascribed to them in the Opposition. (ECF No. 101.)

(emphasis in original).)  That misstates the *Goldman* standard.  A "preponderance" means that a weighing of all the evidence indicates that it is more likely that a proposition is true rather than false, *not* that there is no evidence at all on one side of the scale.  *E.g.*, *Doe v. Stonehill Coll., Inc.*, 55 F.4th 302, 327 (1st Cir. 2022) ("The preponderance of the evidence standard calls for a weighing of the competing evidence.").  As the Supreme Court explained in *Goldman*:

> In most securities-fraud class actions, as in this one, the plaintiffs and defendants submit competing expert evidence on price impact.  The district court's task is simply **to assess all the evidence of price impact — direct and indirect** — and determine whether it is more likely than not that the alleged misrepresentations had a price impact.

141 S. Ct. at 1963 (emphasis added).  Thus, as this Court makes the procedural determination consigned to its discretion as to whether class certification is proper here, it must "assess all the evidence" to determine whether this essential predicate for proceeding by class action is satisfied *or* whether the presumption has been rebutted.  *Id.*  The Trust's protestations that it has no burden of production on price impact  —  or that there is at least some evidence which could support a finding of price impact — do not provide a sufficient basis for granting this Motion.

      **b.**      **The Weight Of The Evidence Shows That The November 1 And 15, 2018 Statements Which Are The Basis for the Trust's Claim Had No Price Impact**

The First Circuit held that the Trust had sufficiently pled a claim with respect to statements allegedly made on November 1 and 15, 2018 about VME.  *Constr. Indus. & Laborers Joint Pension Tr. v. Carbonite, Inc.*, 22 F.4th 1, 11 (1st Cir. 2021).  The weight of record evidence before the Court on this Motion shows that those two statements had no price impact:

      *(i) Front-End Price Impact.*  The Trust objects that "Defendants do not even attempt to show a lack of price impact at the time the misstatements were made (front-end), as [putatively] required."  (ECF No. 107, at 2 n.2.)  But the Trust's own submission shows that the November 1 and 15 statements did not inflate the company's share price when they were made:

- Mr. Ali's statement after the market close on November 1, 2018 as part of the third-quarter 2018 earnings release did not inflate the company's share price.  In fact, the Trust's expert Mr. Steinholt reports that the share price ***dropped*** 24% on the day after that statement was made.  (Steinholt Rep. Ex. D, ECF No. 95-1, at 54.)  Carbonite had revised its revenue guidance downward on that November 1, 2018 call, just as it later did on its July 25, 2019 call.  (*See* ECF No. 54-6, at 6.)

- Mr. Folger's remark at a conference on November 15, 2018 did not inflate Carbonite's share price.  Mr. Steinholt did not find any unusual change in the share price on either that day or on the following day.  (ECF No. 95-1, at 54.)

That evidence weighs against finding that those statements had any price impact.

   ***(ii) Back-End Price Drop.***  As the Supreme Court noted in *Goldman*, many securities plaintiffs seek to infer a front-end price impact from a back-end price drop (although the Court noted in *Goldman* that it has never endorsed drawing such inferences):

> Plaintiffs typically try to prove the amount of inflation indirectly: They point to a negative disclosure about a company and an associated drop in its stock price; allege that the disclosure corrected an earlier misrepresentation; and then claim that the price drop is equal to the amount of inflation maintained by the earlier misrepresentation.

141 S. Ct. at 1961.  Here, the withdrawal of VME was announced in connection with the earnings release after the July 25, 2019 market close, and the Trust points to a drop in the share price by the July 26 market close as evidence of the price impact of that particular disclosure.[2] The Trust freely acknowledges that Mr. Steinholt's event study does not and cannot identify what if any disclosure(s) might have caused that drop in the share price, and indeed the Trust refers to that methodological limitation as "unremarkable."  (ECF No. 107, at 3.)[3]  That price

---

  [2]  "Mr. Steinholt's analysis demonstrates a negative stock price reaction . . . thus showing price impact." (ECF No. 96, at 16.)

  [3]  The Trust criticizes Defendants for criticizing Mr. Steinholt's study, for not deposing him, and for not performing their own event study. (ECF No. 107, at 2-3.)  Defendants reserve their rights to criticize Mr. Steinholt's opinions, but Defendants' principal point on this Motion is that *any* event study examining day-to-day share price changes is inherently limited, in that it cannot identify the price impact (if any) of one of several disclosures made on the same day.

drop, standing alone, is the *only* evidence of price impact that the Trust has adduced here.

### *(iii) Alternative Causes for July 26 Price Drop Confirmed By Analyst And Media Reports.*

*Media Reports.*  After the July 25 market close, Carbonite announced Mr. Ali's departure as CEO and the company's reduction in revenue guidance.  There is substantial evidence here — not just mere speculation, as in the cases cited by the Trust — which supports finding that those disclosures caused the July 26 price drop, rather than the withdrawal of VME.[4]  The earnings call focused on those disclosures, and analyst and media reports uniformly ascribed the share price drop to those disclosures.  (ECF No. 101, at 8-9.)  The Trust has two responses to that evidence:

*First*, the Trust points out that VME's withdrawal was the subject of a few questions on the earnings call and was fleetingly mentioned in some analyst reports.  (ECF No. 107, at 4-5.)  But no market participant ascribed any part of the price drop to VME, and the Trust's conclusory assertions that "Defendants are wrong" and the market must have been reacting to the putatively "surprising news" of VME's withdrawal (*id.* at 5) does not change that. There is no evident reason to attribute any part of the July 26 price drop to a disclosure that was barely discussed at the time.  As the Supreme Court has elsewhere observed, elephants do not hide in mouseholes.  *See Whitman v. Am. Trucking Assns., Inc.*, 531 U.S. 457, 468 (2001).

*Second*, the Trust suggests that the announcement of Mr. Ali's departure and the reduction in revenue guidance might have been related to VME's withdrawal.  (ECF No. 107, at

---

The Trust appears to agree.  There is thus no reason to fault Defendants for not performing such a study.  The cases the Trust cites (ECF No. 107, at 2-3) do not address the facts presented here.

[4]  *Thorpe v. Walter Investment Management Corp.*, No. 1:14-CV-20880-UU, 2016 WL 4006661 (S.D. Fla. Mar. 16, 2016) (cited at ECF No. 107, at 7) is not informative: it was decided years before *Goldman* and did not apply the preponderance test *Goldman* now requires.  *See id.* at *13 ("[I]n practice, the so-called 'rebuttable presumption' is largely irrebuttable" (alteration in original) (quoting *Halliburton Co. v. Erica P. John Fund, Inc.*, 134 S. Ct. 2398, 2417 (2014) (Thomas, J., dissenting)).

5-8.)  But even now, just days before the end of discovery, the Trust offers nothing to show that

Mr. Ali's departure was related to VME, and no weight can be ascribed to that conjecture.  As

for the reduction in revenue guidance, although a fraction of that reduction was ascribed on the

July 25 earnings call to VME's withdrawal, that after-the-fact remark cannot help the Trust's

position.  As the Supreme Court explained in *Goldman*, the significance of a back-end share

price drop is that it might serve as a basis to infer that alleged misstatements inflated the share

price on the front end by a similar amount.  Here, however, the Trust points to nothing predating

the July 25, 2019 earnings release that would show that *before* the July 25 earnings call,

investors had attributed any part of the company's revenue guidance to anticipated sales of

VME.  There is thus no reason to infer that any part of a share price drop attributable to the

company's July 25, 2019 reduction in revenue guidance actually reflected prior inflation in the

share price caused by the November 1 and 15, 2018 statements about VME.

> The evidence on price impact may therefore be summarized as follows:

(i)      there was no front-end price inflation associated with the November 1 and 15, 2018 statements about VME;

(ii)     there was a drop in the share price following the July 25, 2019 earnings release;

(iii)    market participants uniformly ascribed that drop in the share price to disclosures made on July 25, 2019 *other* than the withdrawal of VME — specifically, to the departure of Mr. Ali and the company's reduction in revenue guidance; and

(iv)     there is no evidence that investors had attributed any part of the company's revenue guidance to VME before VME's withdrawal was announced.

The weight of the evidence thus shows that it is more likely than not that the November 1 and 15,

2018 statements about VME had no price impact.  That alone warrants denying this Motion.

**c.      The Trust Is Now Barred From Pursuing A Claim Based On Alleged Misstatements Other Than The November 1 And 15, 2018 Statements**

> In a footnote (ECF No. 107, at 5 n.7), the Trust asserts that "the First Circuit did

not dispose of the [putatively] false revenue guidance statements" (ECF No. 45, ¶¶ 84, 94) alleged in its Amended Complaint. That is not correct. The Trust's opening brief on appeal singled out and quoted the November 1 and 15, 2018 statements about VME in its statement of the issues presented, and did not mention the revenue guidance at all in the brief's argument. The First Circuit limited its analysis to those November statements, noting that the Trust "does not contend that the less pointed statements" — which included the revenue guidance — "might be actionable if the November statements are not." *Carbonite*, 22 F.4th at 6. The Trust did not seek reconsideration or rehearing of the First Circuit's opinion. The law of the case doctrine now bars the Trust from seeking to revive any claim based on statements other than the November statements.[5] Seeking to avoid that result, the Trust points to the end of the First Circuit's opinion where, after addressing the scienter analysis applicable to the November statements, it reversed and remanded, "[t]here being no other claimed basis for dismissing the complaint." *Id.* at 11. But that language only serves to confirm that the First Circuit viewed the case as limited to the November statements upon remand. If the First Circuit had believed that the revenue guidance statements were still part of the case, it would have addressed the other bases for dismissal with respect to those statements that Defendants had presented both to this Court (*see, e.g.*, ECF No. 53, at 27-28) and in their brief before the First Circuit.[6]

**2.    Predominance Is Not Met Because The Trust Has Failed To Show That It Can Prove Damages Class-Wide Based On The November 1 And 15, 2018 Statements**

The Trust has failed to meet its burden of suggesting some means by which it can

---

[5]    *See Aquinnah/Gay Head Cmty. Ass'n, Inc. v. Wampanoag Tribe of Gay Head (Aquinnah)*, 989 F.3d 72, 79-80 (1st Cir. 2021) (issue waived under law of the case doctrine where appellant's statement of issues did not address issue, appellant's opening brief did not address it "beyond a single footnote," and First Circuit's opinion "likewise" did not address it).

[6]    Accordingly, if any class were to be certified here — and Defendants maintain that no class should be certified — the Class Period should not begin before November 2, 2018.

calculate damage class-wide attributable to the November 1 and 15, 2018 statements.  It insists

that Mr. Steinholt's "event study framework" could form the basis of such a calculation, but

expressly refuses to say how Mr. Steinholt (or anyone else) could "refine his model" so that it

actually performs that function.  (ECF No. 107, at 9.)  The Court is not obliged to credit Mr.

Steinholt's mere promise (ECF No. 95-1, ¶ 36 n.50) that he could do so.[7]

**3.       The Evidence Shows That The Trust Is Subject To Unique Defenses And Is Atypical**

The Trust insists that because its investment manager denied receiving disclosures

barred by Regulation FD, he could not have relied on non-public information.  (ECF No. 107, at

11.)  But Mr. Ross explained that he met with company executives notwithstanding the strictures

of that Regulation because his investment decisions were based on *other* non-public factors:

> Q.  If you don't receive material, non-public information from issuers, why do
> you go to meet with them, or to speak with them by phone?
>
> [MR. ROSS]:  We have a general investment strategy and a style.  And there's
> certain things that we look for.  And you can't necessarily get that from reading a
> boilerplate 10-K or a transcript or a buy-out listing of earning calls.

(ECF No. 102-29, 82:13-23 (objection omitted).)  His admitted reliance on those non-public

factors raises a unique defense applicable to the Trust, thereby rendering the Trust atypical.

The Trust also asserts that "Defendants conjure that [the manager] would have

purchased Carbonite stock" irrespective of the November 1 and 15, 2018 statements and that

"[n]othing in the record supports this rank speculation."  (ECF No. 107, at 12.)  But there is a

---

        [7]    Cases that excuse a failure to set forth a complete damages methodology on the ground
that requiring such a showing would intrude into the merits (*see* ECF No. 107, at 8-9) are in
conflict with *Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013), which expressly "requir[es] a
determination that Rule 23 is satisfied, even when that requires inquiry into the merits of the
claim."  *Accord Goldman*, 141 S. Ct. at 1960-61 (quoting *Comcast*).  Significantly, in *Comcast*,
the Supreme Court specifically faulted the Third Circuit for accepting a plaintiff's "assurance"
that confounding factors could be excluded from damages: "such assurance is not provided by a
methodology that identifies damages that are not the result of the wrong."  569 U.S. at 37.

host of evidence supporting that conclusion, including the manager's own memoranda and testimony and post-disclosure stock purchases.  (*See* ECF No. 101, at 17.)  This defense also renders the Trust an atypical class representative, making class certification inappropriate.

**4.       The Trust Is A Plainly Inadequate Class Representative**

The Trust insists that its agent responsible for overseeing this litigation on its behalf does know *some* things about the litigation, and faults Defendants for "cherry-pick[ing]" inadequacies.  (ECF No. 107, at 14 n.23)  But never having read the Trust's complaint in the action — the Trust concedes that its current representative has never done that, not even before being deposed (*id.*) — and being entirely unaware that a settlement demand had been made on the Trust's behalf (also conceded) are each independently disqualifying.  The Trust is seeking to be certified as the representative of hundreds or thousands of investors, and its agent's knowledge of the litigation is woefully incomplete.  As the Trust itself elsewhere acknowledges, "[a] central aim of the PSLRA was to ensure that institutional investors, such as the Trust, would lead securities class actions" (ECF No. 107, at 11 n.19), presumably with the intention that such investors would have the resources to do so at least competently.  The Court is not obliged to lower the bar of adequacy to certify a demonstrably inattentive class representative here.[8]

**CONCLUSION**[9]

For all of the foregoing reasons, the Trust's Motion should be denied.

---

[8]    The Trust's inattention is perhaps not surprising.  It bought only 14,025 shares during the proposed Class Period (*see* ECF No. 102-5) and it has no theory of damage that would translate into a reasonable expectation of a meaningful per-share recovery here.  It thus has no real incentive to oversee the action.  *See In re Razorfish, Inc. Sec. Litig.*, 143 F. Supp. 2d 304 (S.D.N.Y. 2001) (investor with loss of less than $40,000 held inadequate as lead plaintiff).

[9]    Defendants rely on their Opposition for the Trust's other reply contentions.  The Trust's insistence that Defendants have "concede[d]" points not disputed (ECF No. 107, at 1) is not well taken in view of Defendants' express reservations as to those matters (ECF No. 101, at 3 n.1, 5 n.4).  The Trust's assertion that Defendants' summary of the Amended Complaint's allegations in their motion to dismiss papers constitute "admissions" (ECF No. 107, at 5-6 & n.8) is absurd.

8

Dated:  January 10, 2023
       Boston, Massachusetts

Respectfully submitted,

*/s/ James R. Carroll*
James R. Carroll (BBO #554426)
Alisha Q. Nanda (BBO #657266)
Kurt Wm. Hemr (BBO #638742)
Nigel Tamton (BBO #696396)
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
500 Boylston Street
Boston, Massachusetts 02116
(617) 573-4800
james.carroll@skadden.com
alisha.nanda@skadden.com
kurt.hemr@skadden.com
nigel.tamton@skadden.com

*Counsel for Defendants*
*Carbonite, Inc., Mohamad S. Ali,*
*and Anthony Folger*

9