UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RUBEN A. LUNA, Individually and on Behalf of All Others Similarly Situated, ) ) | No. 1:19-cv-11662-LTS **(Consolidated)** |
| ) | |
| Plaintiff, ) | CLASS ACTION |
| ) | |
| vs. ) | |
| ) | |
| CARBONITE, INC., et al., ) ) | |
| ) | |
| Defendants. ) ) | |
| ) | |

**MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFF'S
MOTION TO COMPEL AND FOR ADDITIONAL DISCOVERY**

Pursuant to Rules 26 and 37 of the Federal Rules of Civil Procedure, Lead Plaintiff Construction Industry and Joint Laborers' Pension Trust ("Lead Plaintiff") respectfully submits this memorandum of law in support of its Motion to Compel and for Additional Discovery.[1]

## I.      BACKGROUND

This securities class action was filed on August 1, 2019 (ECF No. 1), and the CAC was filed on January 15, 2020.  The CAC alleges that Defendants made materially false and misleading statements to investors about a new Carbonite product called the Server VM Edition ("VME"), that, in direct contrast to Defendants' statements, was plagued with severe problems from inception until the time Defendants withdrew it from the market entirely.  The parties have been engaged in discovery and have conferred with one another at various points in efforts to resolve issues that arose in the course of fact discovery.  At this point, however, Lead Plaintiff respectfully seeks Court intervention to address several extraordinary failures to produce, search, and/or preserve documents by Defendants, the full scope of which was learned by Lead Plaintiff this morning, which coincides with the last day of fact discovery.

First, Lead Plaintiff learned this morning that emails which contained hyperlinks to internal Carbonite documents were never searched, and appear to have never been preserved, or even collected.  This is particularly egregious because the parties have an Agreed-On Form of Production in this case which requires the parties to "use their best efforts to collect and produce documents that are links in e-mails . . . ."  Ex. A ¶7.

---

[1] Pursuant to Local Rule 7.1(a)(2), the Parties met and conferred on February 3, 2023 at 9:00 AM by phone, and no agreement was reached.  Paragraphs of the Consolidated Amended Complaint (ECF No. 45, the "CAC"), are cited as "¶__."  "Ex. __" refers to the exhibits in the Declaration of David A. Rosenfeld, dated February 3, 2023, submitted herewith.  Unless otherwise noted, emphasis has been added and internal citations and quotations have been omitted.  Capitalized terms not defined herein are as defined in the CAC.

Lead Plaintiff learned that these documents were never preserved, in response to its request for production of specific documents that, in the course of preparing for depositions, it noted were missing.  When these documents were requested from Defendants, Lead Plaintiff was informed

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███

Defendants were able to produce one of seven requested documents that were linked, which included a document that should have been previously produced (based on search criteria and custodians) but was not.  This prompted counsel for Lead Plaintiff to ask if the documents for all custodians that were located in email links had been collected and searched, as the parties' Agreed-On Form of Production required.  Defendants responded – and alerted Lead Plaintiff *for the first time today* – that those documents ███████████████████████████

███████████████████████

Thus, it is apparent that Defendants have not produced relevant and responsive documents that they were required to – and agreed to – produce in this litigation.  It remains unclear if those documents were even preserved.  To the extent these documents exist, Lead Plaintiff respectfully requests an Order compelling their production.  To the extent that they do not exist, or if it remains unclear if they exist, Lead Plaintiff respectfully requests an Order allowing for discovery into these issues, at Defendants' expense.

Another issue that recently arose concerns the preservation of documents of key personnel who worked on VME.  As the Court is aware, the duty to preserve documents and implement an appropriate litigation hold attached as soon as this litigation became reasonably foreseeable.  *See, e.g.*, *Integrated Commc'ns & Techs., Inc. v. Hewlett-Packard Fin. Servs. Co.*, 2020 WL 4698535,

at \*3 (D. Mass. Aug. 13, 2020) (Sorokin, J) ("The duty to preserve evidence arises when litigation is reasonably anticipated.").  ███████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████

Then, in the early stages of discovery, it was revealed that the documents of a Carbonite employee ███████████████ had not been preserved.  *See* Ex. E.  Unbeknownst to Lead Plaintiff at that point, ███ had been critical to the VME project.  According to ████████████████

████████████████████████████████████████  ████████████████

████████████████████████████████  Ex. F, CARB-00230997.  ███

prominence, however, was not known to Lead Plaintiff at the time this failure to preserve was uncovered, *i.e.*, May 2022.  Lead Plaintiff raised this issue with the Court at the September 12, 2022 status conference, while reserving all rights, and agreed to set the matter aside for the time being, (ECF No. 93), based on assurances from Defendants that the ███ incident was an ████████████████████  Ex. G at 2.

Except it was not isolated.  Lead Plaintiff has learned that Defendants failed to preserve the documents of other critical employees who worked on VME, including those of ████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████  ██████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████  ████  ████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

████████████████████████

While it is understandable if ████████████ documents were not preserved at the time ██ left the Company in October 2018 (and Defendants did not anticipate litigation at the time), that does not appear to be the case.  Moreover, ████████████ left the Company in July 2019, shortly before this lawsuit was filed, so ██ documents likely still exist or were destroyed after this litigation became anticipated or was filed.  In response to questioning from Lead Plaintiff's counsel during the meet and confer on this motion, counsel for Defendants represented that the email accounts for ████████████████████████ were ████████████ when they left, but counsel did not have any further information on whether those documents were preserved and, if not preserved, when they were destroyed.  To Lead Plaintiff's knowledge, there was no automatic document destruction policy at Carbonite when an employee left.

Lead Plaintiff also recently learned that Defendants' production contained significant gaps with respect to chat messages (it was not apparent on the face of the produced chat documents that they were in fact chat messages and this was only learned in the course of depositions).  One chat group titled "tiger team" is of particular interest to Lead Plaintiff, as the allegation of the role of the tiger team was specifically mentioned in the CAC.  *See* ECF No. 45 ¶49.  Moreover, witness and document testimony make clear that such a chat ██████████████████████████

███████████████████████████████████████████████████████████████████

Upon discovering that these messages were, in fact, chats, Lead Plaintiff asked Defendants to produce such chats in their native format so that they could be properly organized and reviewed. Following a meet and confer on this issue, Defendants offered to ██████████████████████████

███████████████████████████████ Ex. K.  But, as explained to Defendants, the problem with the chats in their current form is that specific chats cannot be identified or placed in order.  A document saying just "no," for example, cannot be traced to the question to which it responds.   Thus, requiring Lead Plaintiff to identify specific Bates numbers for chats is unreasonable, if not impossible, especially when Defendants have already stated that they have the ability to produce the requested chats in native format, *i.e.*, a format that will enable Lead Plaintiff to read and understand the chats.

Lead Plaintiff, of course, could not have asked for Defendants' production to be supplemented *before* having gone through that production and finding it deficient.  As Defendants acknowledge, the production in this case has been voluminous.  Lead Plaintiff carefully sorted through Defendants' production, working quickly but also thoroughly.  Lead Plaintiff even inquired about these missing documents during its depositions of former Carbonite employees. *See* Ex. L.  In so doing, Lead Plaintiff sought to exhaust all other means of obtaining these documents before bringing these issues to the Court's attention.

Accordingly, Lead Plaintiff respectfully requests that the Court compel Defendants to produce the materials described herein, permit Lead Plaintiff to take additional discovery into Defendants' document retention practices, and, if necessary, allow Lead Plaintiff to take, or re-take, depositions (including of those previously deposed) based on new information learned in this process.

## II.      ARGUMENT

### A.      Defendants Should Be Compelled to Produce the Documents Requested by Lead Plaintiff

A party seeking discovery may move for an order compelling compliance with, *inter alia*, a request under Rule 34 for document production. Fed. R. Civ. P. 37(a)(3)(B)(iv).[2] Rule 34, in turn, references Rule 26(b)(1), which permits discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense[.]" Fed. R. Civ. P. 26(b)(1). Courts in this District construe this broadly to allow discovery of information "if there is any possibility that it might be relevant to the [claims or defenses] the action." *Conning v. Halpern*, 2020 WL 5803188, at *2 (D. Mass. Sept. 29, 2020) (quoting *Viscito v. Nat'l Planning Corp.*, 2019 WL 5318228, at *1 (D. Mass. Oct. 21, 2019)); *see also In re Porsche Auto. Holding SE*, 2019 WL 5806913, at *5 (D. Mass. Nov. 6, 2019) (Sorokin, J.) ("Rule 26 must be 'construed broadly to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case.'") (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)).

"Once a showing of relevance is made, the party opposing disclosure bears the burden of showing that the requested discovery is improper." *Controlled Kinematics, Inc. v. Novanta Corp.*, 2019 WL 3082354, at *2 (D. Mass. July 15, 2019); *see also Baillargeon v. CSX Transp., Inc.*, 2022 WL 1104588, at *2 (D. Mass. Apr. 13, 2022) ("[W]hen a party resists the production of evidence, it 'bears the burden of establishing lack of relevancy or undue burden.'").

In determining the proper extent of discovery, courts must consider "the parties' relative access to relevant information[.]" Fed. R. Civ. P. 26(b)(1). Unlike, for example, contracts or torts disputes, securities fraud cases are almost by definition asymmetrical. *All* of the relevant

---

[2]   This is available even where the counterparty did produce something, but the production was "evasive or incomplete[.]" Fed. R. Civ. P. 37(a)(4).

information resides with the defendants.  Accordingly, this factor militates in favor of liberal discovery in this case.  *Cf. Roy v. FedEx Ground Package Sys., Inc.*, 2022 WL 17343846, at *4 (D. Mass. Nov. 30, 2022) ("FedEx contends that Plaintiffs' request is disproportional to the needs of the case and unduly burdensome.  Because the scanner data is important and . . . FedEx is clearly the party with access to more resources . . . , the request is proportional.").

Here, Lead Plaintiff respectfully requests the Court compel the following categories of documents:

### 1.    Relevant Documents Internally Linked in Emails

As noted above, documents referenced by links in emails were plainly covered by the terms of the Agreed-On Form of Production, which the parties agreed to last April.  *See* Ex. A ¶7 ("The parties shall use their best efforts to collect and produce documents that are links in e-mails, including, but not limited to, Google G Suite, Microsoft O365, etc.  Documents extracted from links shall be populated with the BegAttach and EndAttach metadata fields to show the family relationship.").

The relevance of these documents cannot seriously be disputed.  As discussed above, despite Defendants' agreement to conduct searches for such documents, it appears that none of the linked documents for ***any*** custodians were ever searched, and may not have even been preserved.

Defendants should therefore be compelled to ascertain whether these hyperlinked documents are still in existence, and, if so, to run the agreed-upon search terms and produce responsive documents.  To the extent that they do not exist, or if it remains unclear if they exist, Lead Plaintiff respectfully requests an Order allowing for discovery into these issues, at Defendants' expense.

2. **Any Responsive Documents of** ███████████████████ **Still in Existence**

Over the course of discovery it was learned that █████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████ ████████████

████████████████████████████

    ████████████████████████████████ ████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

█████████████████████ ███████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████

The documents of ███████████████████ should be searched using the agreed-upon search terms and produced, to the extent they exist. To the extent that they do not exist, or if it remains unclear if they exist, Lead Plaintiff respectfully requests an Order allowing for discovery into these issues, at Defendants' expense. Lead Plaintiff also reserves the right to request to re-

take ███████ (or anyone else's) deposition, and to take ███████ deposition, once it has had an opportunity to review the produced documents.

### 3.    Other Relevant Documents

In addition to the request for chat messages in native format discussed above, Lead Plaintiff also requested, in correspondence that pre-dated this motion, that Defendants search for and produce specific documents that were missing from their production. *See* Ex. L.  To the extent those documents or the chats in native format are not produced, Lead Plaintiff requests that Defendants be compelled to produce them.

### B.    The Discovery Deadline Should Be Extended to Enable Inquiry into the Causes, Extent, and Consequences of Defendants' Failure to Preserve Highly Relevant Documents

Fact discovery (with the exception of the depositions of the two individual defendants, who are scheduled to be deposed next week) ends today.  Lead Plaintiff respectfully requests that fact discovery be extended for the limited purpose of sorting through these issues and allowing Lead Plaintiff an opportunity to request leave to take or re-take depositions, as may be necessary, and at Defendants' expense, based on newly produced documents.  *See, e.g.*, *NuVasive, Inc. v. Day*, 2021 WL 9059745, at *9 (D. Mass. Aug. 23, 2021) (awarding "costs associated with [the plaintiff's] attempts to recover the lost evidence").

The severity of these issues only fully came to light during depositions over the past three weeks, culminating with this morning's revelation that none of the links that had been agreed-upon to be searched were, in fact, searched.  Extending the discovery deadline for this limited purpose will provide Lead Plaintiff with the opportunity to adequately inquire into the causes, extent, and consequences of Defendants' actions (and inactions) and Lead Plaintiff expressly reserves all rights to seek an appropriate remedy and/or sanction.

## III.   CONCLUSION

For the foregoing reasons, Lead Plaintiff respectfully requests that its motion be granted.

DATED:  February 3, 2023                    Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
SAMUEL H. RUDMAN
DAVID A. ROSENFELD (admitted *pro hac vice*)
ROBERT D. GERSON (admitted *pro hac vice*)
PHILIP T. MERENDA (admitted *pro hac vice*)

*/s/ David A. Rosenfeld*
DAVID A. ROSENFELD

58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com
drosenfeld@rgrdlaw.com
rgerson@rgrdlaw.com
pmerenda@rgrdlaw.com

*Lead Counsel for Lead Plaintiff*

HUTCHINGS BARSAMIAN MANDELCORN,
LLP
THEODORE M. HESS-MAHAN, BBO #557109
110 Cedar Street, Suite 250
Wellesley Hills, MA  02481
Telephone:  781/431-2231
781/431-8726 (fax)
thess-mahan@hutchingsbarsamian.com

*Local Counsel*

## CERTIFICATE OF SERVICE

I, David A. Rosenfeld, hereby certify that on February 3, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a Notice of Electronic Filing to all counsel of record.

*/s/ David A. Rosenfeld*
DAVID A. ROSENFELD