UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

RUBEN A. LUNA, individually and on behalf of :
all others similarly situated,

                                 :

                  Plaintiff,            Civil Action

          v.                        : No. 19-11662-LTS
                                        (Consolidated)

CARBONITE, INC., MOHAMAD S. ALI and   :
ANTHONY FOLGER,

                                  :

                Defendants.

                                  :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## DEFENDANTS' OPPOSITION TO LEAD PLAINTIFF'S
## MOTION TO COMPEL AND FOR ADDITIONAL DISCOVERY

James R. Carroll
Alisha Q. Nanda
Kurt Wm. Hemr
Nigel Tamton
SKADDEN, ARPS, SLATE,
    MEAGHER & FLOM LLP
500 Boylston Street
Boston, Massachusetts 02116
(617) 573-4800

Dated: February 17, 2023

*Counsel for Defendants*
*Carbonite, Inc., Mohamad S. Ali,*
*and Anthony Folger*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT ...........................................................................................1

LEGAL STANDARD...........................................................................................................3

ARGUMENT........................................................................................................................4

I.     PLAINTIFF'S MOTION DOES NOT COMPLY WITH THIS COURT'S
LOCAL RULES AND SHOULD BE DENIED ON THAT BASIS ALONE ...................4

II.    DEFENDANTS HAVE FULFILLED ANY DISCOVERY OBLIGATIONS
THAT THEY MIGHT HAVE HAD WITH RESPECT TO "HYPERLINKS" ..................5

     A.     Defendants Have Complied With All Of Their Discovery Obligations
With Respect To "Hyperlinks" Contained In Emails And Documents ..................5

     B.     Plaintiff's Demand For Further Production With
Respect To "Hyperlinks" Is Unwarranted And Untimely .......................................9

III.    PLAINTIFF'S BELATED DEMAND FOR
REVIEW AND PRODUCTION OF DOCUMENTS FROM
TWO ADDITIONAL CUSTODIANS IS UNWARRANTED AND
UNDULY BURDENSOME AT THIS STAGE OF THE LITIGATION .........................10

     A.     Plaintiff Has Already Had Substantial Discovery
Regarding The Development Of VME, And There Is No
Need To Reopen Document Discovery At This Late Date With Respect
To Former Carbonite Employees Deepak Mohan And Scott Haines ....................10

     B.     Plaintiff's Putative Concerns About Document Preservation Are Baseless ..........12

IV.    PLAINTIFF'S DEMAND THAT DEFENDANTS NOW RE-PRODUCE
ALL ELECTRONIC "CHAT" MESSAGES IN THEIR PRODUCTION
IN NATIVE FORMAT IS BOTH UNTIMELY AND UNWARRANTED .....................15

V.    PLAINTIFF'S ELEVENTH-HOUR REQUEST TO UPEND
THE COURT'S SCHEDULING ORDER SO THAT FACT DISCOVERY
MAY BE EXTENDED IS MERITLESS AND SHOULD BE DENIED .........................17

VI.    PLAINTIFF SHOULD BE ORDERED TO PAY DEFENDANTS' FEES
AND COSTS INCURRED IN OPPOSING THIS UNJUSTIFIED MOTION .................18

CONCLUSION...................................................................................................................18

LOCAL RULE 7.1(d) STATEMENT REGARDING ORAL ARGUMENT ............................19

## TABLE OF AUTHORITIES

**CASES**                                                                      **PAGE(S)**

*Construction Industry & Laborers Joint Pension Trust v. Carbonite, Inc.,*
    22 F.4th 1 (1st Cir. 2021) ................................................................................. 1

*Doe v. Holly,*
    No. CV 20-10139-LTS, 2021 WL 1700765 (D. Mass. Apr. 29, 2021) ........................ 4, 16

*Hubbard v. Potter,*
    247 F.R.D. 27 (D.D.C. 2008) ............................................................................. 13

*Integrated Communications & Technologies, Inc. v. Hewlett-Packard Financial Services Co.,*
    No. 16-10386-LTS, 2020 WL 4698535 (D. Mass. Aug. 13, 2020) ................................. 13

*Jensen v. BMW of North America, LLC,*
    328 F.R.D. 557 (S.D. Cal. 2019) ........................................................................ 13

*Metropolitan Property & Casualty Insurance Co. v. Savin Hill Family Chiropractic, Inc.,*
    No. CV 15-12939-LTS, 2019 WL 1959653 (D. Mass. May 2, 2019) ............................. 9

*Nichols v. Noom Inc.,*
    No. 20CV3677LGSKHP, 2021 WL 948646 (S.D.N.Y. Mar. 11, 2021) ........................ 7, 8

*Perez v. DirecTV Group Holdings, LLC,*
    No. SACV1601440JLSDFMX, 2020 WL 5875026 (C.D. Cal. Aug. 17, 2020) .............. 13

*Scherer v. FCA US, LLC,*
    No. 20-CV-2009-AJB(BLM), 2021 WL 5494463 (S.D. Cal. Nov. 23, 2021) ................ 13

*Theidon v. Harvard University,*
    No. 15-CV-10809-LTS, 2016 WL 3919839 (D. Mass. July 15, 2016) ............................. 4


**RULES**                                                                      **PAGE(S)**

D. Mass. L.R 7.1(a)(2) ............................................................................................... 4

D. Mass. L.R 26.2(c) .................................................................................................. 4

D. Mass. L.R. 37.1 ................................................................................................. 4, 17

Fed. R. Civ. P. 26 ........................................................................................................ 3

Fed. R. Civ. P. 37(a)(5)(B) .................................................................................... 17, 18

**OTHER AUTHORITIES**                                                                                      **PAGE(S)**

Redgrave LLP, *Let's Start By Calling Them What They Are For Discovery: "Pointers" Not Modern Attachments* ..................................................................................................5

**PRELIMINARY STATEMENT**

Plaintiff's procedurally defective Motion is an eleventh-hour attempt to manufacture a discovery sideshow after the factual record revealed in discovery has proven unhelpful to Plaintiff's claim.

Here, Plaintiff contends that Defendants allegedly violated federal securities laws by making optimistic public statements about Carbonite's VME product, which Plaintiff alleges "never worked." (Am. Compl., ECF No. 45, ¶ 6.) This Court dismissed Plaintiff's claims in 2020. (ECF No. 62.) The First Circuit then remanded the matter in late 2021 with the view that — taking Plaintiff's allegations as true and assuming that VME "never worked" — Plaintiff stated an actionable claim. *Constr. Indus. & Laborers Joint Pension Tr. v. Carbonite, Inc.*, 22 F.4th 1, 10-11 (1st Cir. 2021). Discovery has revealed that Plaintiff's allegations are not true.

Plaintiff's sole living "confidential witness" was revealed in his deposition to be an uninformed, low-level former Carbonite employee with little direct knowledge of the VME product at issue in this action. That witness supposedly provided Plaintiff with the information used to support Plaintiff's allegation that VME "never worked" and "never once successfully backed up a customer's data," but at deposition, he testified that he did not do <u>any</u> work on VME after it was launched, did not work with VME customers, did not work on tracking VME's performance, and did not have any firsthand knowledge as to whether VME ever worked successfully for customers.[1] In contrast, documents and testimony have shown that the VME product Plaintiff maligns as having "never worked" in fact passed Carbonite's pre-launch tests, received positive feedback from potential customers in trials, and worked for customers after it

---

[1]  Declaration Of Nigel Tamton, Esq. In Support Of Defendants' Opposition To Lead Plaintiff's Motion To Compel And For Additional Discovery ("Tamton Decl.") ¶ 20, Ex. L.

was formally released (even though some customers certainly faced problems with it).

Defendants have timely and completely satisfied their discovery obligations consistent with the parties' agreements and the Federal Rules.  The Motion presents no reason whatsoever to compel further, cumulative discovery, and it certainly presents no reason to undo the Scheduling Order that this Court put in place more than a year ago (ECF No. 79) to govern pretrial proceedings in this action.  The Motion should be denied for those two reasons:

*(1) No Showing of Need.*  Plaintiff's claim in this putative securities fraud class action asserts that Carbonite misstated the viability of its VME product, thereby purportedly inflating the price of Carbonite's stock until Carbonite announced the withdrawal of VME in July 2019.  Plaintiff has deposed the individual Defendants who made those purported misstatements as well as the senior Carbonite executives in charge of VME's development, and Plaintiff has also had comprehensive document discovery regarding Carbonite's public disclosures on VME and Carbonite's development of the VME product.  Defendants produced more than 188,000 documents — almost half a million pages, enough to fill 200 bankers boxes — and arranged the appearance of <u>every</u> witness Plaintiff requested for deposition.[2]  All that discovery is more than proportionate to the needs of this action.  The Motion makes no effort whatsoever to suggest why the Court should blow up its scheduling order at this late date to provide Plaintiff with cumulative and unnecessary discovery on the same subject matter.

*(2) Untimeliness.*  Plaintiff's Motion seeks to raise purported document concerns that should have been apparent no later than June 2022 — eight months ago — when Defendants

---

[2]    Carbonite was acquired by OpenText Corporation in December 2019 (*see* Am. Compl., ECF No. 45, ¶ 20.) and many of its personnel left for other employment.  Thus, except for Defendants Mr. Ali and Mr. Folger, all of the fact witnesses deposed by Plaintiff are no longer associated with a party, but nonetheless they each agreed to appear for full-day depositions.

first made a substantial document production in this action.  Plaintiff had numerous opportunities to make its Motion in a more timely fashion but did not do so.  Plaintiff could have moved:

(i)      in time for the Motion to be heard at the September 12, 2022 status conference in this action — fully five months ago;

(ii)     before the parties started briefing class certification on September 16, 2022;

(iii)    before Plaintiff first issued deposition notices to fact witnesses in this action on December 1, 2022;

(iv)     before Plaintiff subjected five non-party fact witnesses to full-day depositions in January 2023 — remarkably, Plaintiff now suggests that if its Motion is granted, it intends to recall those witnesses to demand additional testimony;

(v)      before the very last day of fact discovery — February 3, 2023, the day Plaintiff finally filed its Motion; or

(vi)     in time to be resolved before the parties commenced expert discovery — indeed, on the day that Defendants are filing this Opposition (February 17, 2023), the parties are exchanging initial expert reports.

In its Motion, Plaintiff's counsel suggest that they were somehow unaware of their putative need for relief because they did not closely examine Defendants' production before their preparation for the depositions that began in January 2023.  (*See* Pltf.'s Mem. at 5; Tamton Decl. ¶ 14, Ex. F.) Respectfully, Plaintiff and its counsel are entitled to manage their own time however they see fit, but their choice to delay their review of Defendants' production does not entitle them to relief from the pre-trial schedule ordered by the Court.

For all of those reasons, Plaintiff's Motion should be denied in its entirety.

## **LEGAL STANDARD**

Under Federal Rule of Civil Procedure 26(b)(1), parties may only obtain relevant discovery that is "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to information, the parties' resources, the importance of the discovery in resolving the issues, and whether the

burden or expense of the proposed discovery outweighs its likely benefit."  Fed. R. Civ. P. 26(b)(1).  Fed. R. Civ. P. 26(b)(2)(C) further provides in pertinent part that "[o]n motion or on its own, the court must limit the frequency or extent of discovery otherwise allow[able] by these rules or by local rule if it determines that . . . the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive."  Fed. R. Civ. P. 26(b)(2)(C).  Here, Plaintiff's requests to compel additional document productions fail to meet these touchstone requirements of Rule 26.  They should be denied because they seek cumulative, unnecessary discovery that would be unduly burdensome to require at this juncture.

## ARGUMENT

### I.    PLAINTIFF'S MOTION DOES NOT COMPLY WITH THIS COURT'S LOCAL RULES AND SHOULD BE DENIED ON THAT BASIS ALONE

Plaintiff's Motion fails to comply with Local Rule 37.1, in that it does not "include a certificate in the margin of the last page that the provisions of this rule have been complied with," or "state with particularity . . . the time, date, location and duration of the [relevant discovery] conference; who was present for each party; the matters on which the parties reached agreement; and the issues remaining to be decided by the court."  D. Mass. L.R. 37.1(b). This Court's Local Rule 26.2(c) requires denial of the Motion for that reason alone.  ("The judicial officer shall not consider any discovery motion that is not accompanied by a certification, as required by L.R. 7.1(a)(2) and L.R. 37.1(b)"); *accord Doe v. Holly*, No. CV 20-10139-LTS, 2021 WL 1700765, at *4 (D. Mass. Apr. 29, 2021) (Sorokin, J.) (denying discovery motion for failure to comply with Local Rule 37.1(b)); *Theidon v. Harvard Univ.*, No. 15-CV-10809-LTS, 2016 WL 3919839 at *1 (D. Mass. July 15, 2016) (Sorokin, J.) (same).

## II.    DEFENDANTS HAVE FULFILLED ANY DISCOVERY OBLIGATIONS THAT THEY MIGHT HAVE HAD WITH RESPECT TO "HYPERLINKS"

### A.    Defendants Have Complied With All Of Their Discovery Obligations With Respect To "Hyperlinks" Contained In Emails And Documents

A "hyperlink" is a short piece of text or an icon that can point to a file or other location on the Internet or local computer network:  for example, "http://www.mad.uscourts.gov" is a hyperlink that points to the Internet web site for the District of Massachusetts.  Unlike a file attached to an electronic mail message, the web site or file to which a hyperlink points is often not under the author's control, and the content to which the hyperlink points may change, move, or even disappear:  for example, even though the hyperlink to the web site for the District of Massachusetts remains the same, the content of the web site changes from time to time.  For that reason, some e-discovery experts suggest the use of the term "pointers" to describe hyperlinks,[3] because hyperlinks merely point to a website or document at a location where it was once in existence, and including a hyperlink in an email does not cause that email to attach and preserve a copy of the website or document to which the hyperlink points.

The parties' discovery protocol in this action requires the parties to "use their best efforts to collect and produce documents that are links in e-mails."  (Tamton Decl. ¶ 9, Ex. A.) In its Motion, Plaintiff construes the protocol's reference to "links" to refer both to attachments to emails and to hyperlinks, and asserts that "documents linked in [Defendant's] emails" using hyperlinks "were *not* searched using the agreed-upon search terms."  (Pltf.'s Mem. at 2.) Plaintiff demands that Defendants "be compelled to ascertain whether these hyperlinked

---

[3]    Redgrave LLP, *Let's Start By Calling Them What They Are For Discovery:  "Pointers" Not Modern Attachments* (https://www.redgravellp.com/lets-start-calling-them-what-they-are-discovery-pointers-not-modern-attachments).

documents are still in existence, and if so, to run the agreed-upon search terms and produce responsive documents." (*Id.* at 7.)

Yet, it does not appear that prior to filing this Motion, Plaintiff believed this provision of the discovery protocol required each party (i) to test every hyperlink in its production to see if it was still operable and (ii) to collect and review for production any documents so obtained, because ***Plaintiff's own production*** contains emails with hyperlinks for which Plaintiff did not produce the hyperlinked materials. (Tamton Decl. ¶ 3.) Plaintiff's unilateral demand that Defendants undertake that process now is therefore not well taken.

In any event, Defendants have already used their best efforts to comply with that provision of the discovery protocol:

***First***, to the extent that potentially responsive emails identified through searches of the ten agreed-upon Carbonite custodians had documents attached to them, Defendants reviewed and produced the relevant, non-privileged attachments. (Tamton Decl. ¶ 4.)

***Second***, Defendants also spoke with Carbonite personnel who worked on VME and asked them to identify Carbonite document repositories (i.e., shared locations on Carbonite's local computer network) that would likely contain documents relevant to VME. Defendants then independently searched those repositories for material relevant to VME and produced that material. (Tamton Decl. ¶ 5.) It is reasonable to suppose that hyperlinks in emails discussing VME in the relevant time frame would have pointed to material contained in those repositories, and that by searching the repositories independently, Defendants have captured a substantial proportion of the potentially responsive hyperlinked documents.

The alternative — mechanically testing all the hyperlinks in Defendants' document production — would be unworkable and unproductive. As Plaintiff's complaint notes,

Carbonite was acquired by OpenText Corporation in December 2019.  (ECF No. 45, ¶ 20.)

Because even the smallest change to a file's location on a network will render a hyperlink

inoperable, the changes in Carbonite's information technology infrastructure that resulted from

the OpenText acquisition means that the hyperlinks in those emails typically just do not work.

As Defendants explained to Plaintiff's counsel prior to the filing of this Motion, many hyperlinks

in those emails include unique identifiers (called "GUIDs") that point to locations on Carbonite's

Microsoft Office 365 environment, which is no longer in operation.  (Tamton Decl. ¶ 13, Ex. E.)

When those links are "clicked" in OpenText's system, they do not function, because they no

longer point to the location of the linked documents.  That does not mean the documents to

which the hyperlinks pointed have been destroyed, but only that those documents can no longer

be found in the same location as when the hyperlinks were created.[4]  Defendants believe that by

searching shared repositories for potentially responsive documents, they have produced many

documents identified by those hyperlinks.  (*See, e.g.*, Tamton Decl. ¶¶ 21, 22, Exs. M, N (title of

document produced from shared repository matching name of hyperlink in produced email).) [5]

---

[4]    Plaintiff claims Defendants told its counsel that certain hyperlinked documents "were never preserved."  (Pltf.'s Mem. at 2.)  Not so:  Defendants informed Plaintiff's counsel that certain hyperlinks in produced emails did not work (*i.e.*, the links no longer pointed to the location of the hyperlinked documents), not that the hyperlinked documents were never preserved.  (*See* Tamton Decl. ¶ 13, Ex. E.)

[5]    Plaintiff notes that in pre-Motion correspondence, Defendants were able to locate one document hyperlinked to an email Plaintiff identified, and claims that that document "should have been previously produced (based on search criteria and custodians) but was not."  (Pltfs.' Mem. at 2.)  Not so:  The document in question was found within a location in a shared document repository that was not specific to VME, and which Defendants did not believe would contain relevant material.  The parties never agreed to run search terms on shared document repositories, nor did Defendants guarantee that they would produce every last document held by Carbonite that might mention VME, as such a production would have been neither reasonable nor proportionate here.

Accordingly, Defendants submit that they used their best efforts to locate, review, and produce any responsive documents that were pointed to with hyperlinks.

Recently, in *Nichols v. Noom Inc.*, No. 20-CV-3677 (LGS) (KHP), 2021 WL 948646 (S.D.N.Y. Mar. 11, 2021), Judge Parker of the Southern District of New York considered a plaintiff's request that a corporate defendant in a putative class action undertake to test every hyperlink contained in every document in its production and review any documents located thereby for potential production in discovery.  Judge Parker denied that request, holding that it would be unduly burdensome in view of the defendant's production of attachments to emails and the defendant's review and production of corporate documents stored on shared drives — which is precisely what Defendants have done here:

> Noom is searching and producing its Google Drive documents — it is not refusing to search and produce them.  What it objects to is collection of them through both a direct collection and a collection through hyperlinks that would dramatically increase redundancies in the collection, increase costs, and delay discovery.  Moreover, Plaintiffs have not made a showing that the value of obtaining the metadata establishing the linkages for *all* hyperlinked documents is proportional to the needs of the case.

*Id.* at *5.  Judge Parker also noted that the more elaborate procedure demanded by the plaintiffs in that action was unduly burdensome because hyperlinks contained in documents and emails "may or may not be necessary to the communication":

> When a person creates a document or email with a hyperlink, the hyperlinked document/information may or may not be necessary to the communication.  For example, a legal memorandum might have hyperlinks to cases cited therein.  The Court does not consider the hyperlinked cases to be attachments.  A document also may contain a hyperlink to another portion of the same document.  That also is not an attachment.  A document might have a hyperlink shortcut to a SharePoint folder.  The whole folder would not be an attachment.  These are just examples.  An email might have hyperlinks to a phone number, a tracking site for tracking a mailing/shipment, a facebook page, a terms of use document, a legal disclaimer, etc.  The list goes on and on.  Many of these underlying hyperlinked documents may be unimportant to the communication.

*Id.* at \*4.  Defendants respectfully submit that the rationale of Judge Parker's ruling is applicable here and that no further production should be required.

      **B.      Plaintiff's Demand For Further Production With<br>                <u>Respect To "Hyperlinks" Is Unwarranted And Untimely</u>**

Even if Plaintiff's complaint about Defendants' application of the discovery protocol as it might relate to hyperlinks had any merit — and as explained above, it has no merit —  Plaintiff should not be granted any relief now:

***First***, Plaintiff has not shown that Defendants' efforts to date have been incomplete in any material respect, such that requiring further production is actually warranted by the needs of this action.  Defendants have produced almost half a million pages of documents to Plaintiff, and Plaintiff offers no reason to believe that that any documents located through testing of hyperlinks would be anything other than cumulative of discovery material already provided.  To the extent that Plaintiff identified particular hyperlinks of interest prior to its filing of this Motion, Defendants tested those hyperlinks and in one instance — where the hyperlink identified by Plaintiff still worked — Defendants produced the document thereby located.  Nothing more can reasonably be required at this point.

***Second***, Plaintiff's request is untimely in the extreme:  document discovery in this action was complete many months ago.  Following the Court's issuance of its Scheduling Order in February 2022 (ECF No. 79), the parties conferred to set a discovery protocol and to identify custodians and search terms.  Thereafter, between May and October of 2022, Defendants reviewed and produced more than 188,000 documents in accordance with that Scheduling Order:

9

| | |
|---|---|
| *May 2022* | 109 documents totaling 1,458 pages |
| *June 2022* | 73,470 documents totaling 175,632 pages |
| *July 2022* | 52,720 documents totaling 124,720 pages |
| *August 2022* | 54,444 documents totaling 125,505 pages |
| *September 2022* | 7,227 documents totaling 39,184 pages |
| *October 2022* | 52 documents totaling 351 pages |

(Tamton Decl. ¶ 6.)  Thus, by no later than June 2022, Defendants had produced to Plaintiff numerous documents containing hyperlinks.  If Plaintiff had a genuine concern about Defendants' compliance with the discovery protocol as it might relate to hyperlinks, Plaintiff could have raised it then — rather than waiting until the very end of fact discovery, *after* Plaintiff had compelled five non-party witnesses to sit for depositions.  Reopening document discovery now would be extraordinarily disruptive to the schedule ordered by the Court and cannot be warranted.  *See [Metro. Prop. & Cas. Ins. Co. v. Savin Hill Fam. Chiropractic, Inc.](), No. 15-12939-LTS, 2019 WL 1959653, at *2 (D. Mass. May 2, 2019) (Sorokin, J.)* ("[R]eopening paper discovery at this point would cause substantial disruption to the schedule for the remainder of this litigation.  It would affect expert disclosures, depositions taken, and deposition preparation underway, and interfere with the capacity of the parties to meet the established schedule.").

III.    **PLAINTIFF'S BELATED DEMAND FOR REVIEW AND PRODUCTION OF DOCUMENTS FROM TWO ADDITIONAL CUSTODIANS IS UNWARRANTED AND UNDULY BURDENSOME AT THIS STAGE OF THE LITIGATION**

A.    **Plaintiff Has Already Had Substantial Discovery Regarding The Development Of VME, And There Is No Need To Reopen Document Discovery At This Late Date With Respect To Former Carbonite Employees Deepak Mohan And Scott Haines**

Deepak Mohan and Scott Haines were software engineers at Carbonite who left Carbonite before the company withdrew VME from the market and before this action was commenced.  Plaintiff demands that "[t]he documents of Mohan and Haines should be searched

using the agreed-upon search terms and produced." (Pltf.'s Mem. at 8.)  That belated demand for the addition of two new document custodians is unwarranted and untimely:

*First,* this is an action involving a claim for securities fraud based on public statements about VME, not an academic undertaking to write an authoritative history of Carbonite's development of VME.  To the extent that development history is germane here, Defendants have produced tens of thousands of emails and other documents relating to the development of VME.  Plaintiff has taken the depositions of former Carbonite personnel who were highly knowledgeable about the development of VME, including Robert Beeler, the senior vice president in charge of software development at Carbonite, and Paddy Sreenivasan, a vice president of engineering who was directly responsible for the development of VME.  Plaintiff has not offered any reason to believe that requiring additional discovery relating to Mr. Mohan or Mr. Haines would result in anything that will not be cumulative of discovery material already provided.  Requiring such discovery at this juncture is not proportional to the needs of this case.

*Second,* Defendants have already produced an enormous number of documents relating to Mr. Mohan and Mr. Haines through their searches of the other ten custodians agreed on by the parties at the outset of discovery.  Defendants have produced 4,317 emails to, from, or copying Mr. Mohan, and 27,052 such emails involving Mr. Haines.  (Tamton Decl. ¶ 7.)  Plaintiff has deposed Mr. Mohan and <u>never</u> noticed the deposition of Mr. Haines.  Again, Plaintiff offers no basis to believe that further production would be anything other than cumulative.

*Third*, the burden of requiring such searches would be far higher than the minimal, incremental value of any additional documents that might be located thereby.  Each of the agreed document custodians in this case has had thousands of documents.  Mr. Mohan and Mr. Haines would likely be no different.  Reviewing thousands of documents related to

11

Mr. Mohan and Mr. Haines at this point — after a long hiatus in the document review process and in the midst of preparing expert reports and other work for the next phase of this litigation — would impose significant burdens of expense and time on Defendants.  Plaintiff does not and cannot explain how imposing such burdens could possibly be justified here.

*Fourth*, Plaintiff's demands for Mr. Mohan and Mr. Haines's documents are untimely.  Plaintiff seems to suggest that it only recently discovered Mr. Mohan's and Mr. Haines's roles with VME.  Not so.  Plaintiff has known (or should have known) those facts for many months.  Defendants identified both of them as Carbonite employees who worked on VME in an interrogatory response provided on April 21, 2022, more than nine months ago.  (Tamton Decl. ¶ 16, Ex. H.)  Both individuals were included on VME-related documents that Defendants produced in June 2022, more than seven months ago.  (Tamton Decl. ¶ 7.)  Both individuals have public profiles on the business networking site LinkedIn.com that describe their former roles at Carbonite.  (Tamton Decl. ¶¶ 18, 19, Exs. J, K.)  Plaintiff has had access to this information for months and could have used it to raise requests related to Mr. Mohan or Mr. Haines at the outset of fact discovery in 2022.  Yet, Plaintiff did not raise these requests in a timely manner, or even seek to depose Mr. Haines, even though Plaintiff now claims he "was vitally important."  (Pltf.'s Mem. at 8.)  Even if the discovery sought here was not cumulative (and it is) Plaintiff's failure to litigate this action diligently would not warrant judicial intervention on its behalf.   No further production regarding Mr. Mohan or Mr. Haines should be compelled.

## B.    Plaintiff's Putative Concerns About Document Preservation Are Baseless

Plaintiff's purported concerns regarding Defendants' document preservation practices are baseless.  Defendants promptly took action after the initial complaint was filed to identify potentially relevant discovery material.  Those efforts resulted in the preservation of

12

email accounts belonging to more than 140 individuals, including the named Defendants, members of Carbonite's executive leadership team, and the engineers who were principally responsible for work on VME.  (*See* Tamton Decl. ¶ 17, Ex. I.)  Defendants also took steps to preserve potentially relevant physical machines.  Those document sources continue to be preserved today.  In this manner, Defendants adequately fulfilled their document preservation obligations.  Defendants' diligent preservation is evidenced by the fact that Defendants have been able to produce more than 188,000 documents responsive to Plaintiff's document requests.

Plaintiff now contends that Carbonite should have also preserved the email accounts of Mr. Mohan and Mr. Haines, who were concededly no longer employed by Carbonite by the time that this action was commenced (Mr. Mohan had been gone for nearly a year).[6] Those contentions do not warrant disturbing the long-scheduled fact discovery deadline so that Plaintiff can obtain discovery into Defendants' document preservation practices — also known as "discovery on discovery," a practice generally disfavored by federal courts throughout the country.  *E.g.*, *Jensen v. BMW of N. Am., LLC*, 328 F.R.D. 557 (S.D. Cal. 2019) (denying request for discovery into a defendant's preservation efforts and commenting that "[d]iscovery into another party's discovery process is disfavored"; such requests should "be closely scrutinized in

---

[6]    Plaintiff complains that Carbonite did not initiate a litigation hold until "twelve days after the July 25, 2019 drop in Carbonite's stock price." (Pltf.'s Mem. at 3.)  For the reasons explained in Defendants' briefing (ECF Nos. 101, 111) on Plaintiff's pending motion for class certification (ECF No. 94), there is no reason to believe that the drop in Carbonite's stock price had anything at all to do with VME:  that price drop occurred because Carbonite's CEO Mr. Ali was leaving the company and Carbonite was lowering its revenue guidance.  In any event, there is no reason to expect that Carbonite would anticipate litigation simply because its stock price dropped, and certainly Plaintiff cites no case holding that a company must preserve documents every time its stock declines.  The only case cited by Plaintiff addresses a situation in which a party did not issue a litigation hold until four months after a suit was filed.  (Pltf.'s Br at 3 (*citing Integrated Commc'ns & Techs., Inc. v. Hewlett-Packard Fin. Servs. Co.,* No. 16-10386-LTS, 2020 WL 4698535 at *3 (D. Mass. Aug. 13, 2020 (Sorokin, J.).)  Here, there is no dispute that Carbonite issued a litigation hold shortly after this action was commenced.

light of the danger of extending the already costly and time-consuming discovery process ad infinitum" (citations omitted)).[7]

In an effort to buttress its demand for relief, Plaintiff's motion papers refer to a putative document preservation concern regarding Jamie Zajac, a former Carbonite employee. But the story of Ms. Zajac's documents demonstrates that Plaintiff's concerns lack any foundation. Carbonite and its counsel identified Ms. Zajac in August 2019 as one of many people who might have documents relevant to this case, but due to an inadvertent copying error, her documents were not preserved. (Tamton Decl. ¶ 10, Ex. B.) To mitigate any potential effects of this error, Defendants promptly informed Plaintiff of that error and took steps to provide Plaintiff with additional information and material, including by:

(i)    Confirming that more than 10,000 emails collected for review and production using the parties' agreed-upon search terms and custodian list were sent to, from, or copied Ms. Zajac;

(ii)   Adding Ms. Zajac's supervisor as a document custodian and producing documents from his files;

(iii)  Running a search for emails including Ms. Zajac across Carbonite and OpenText's entire email system, which led to the collection and review of more than 10,000 additional documents related to Ms. Zajac;

(iv)   Expediting the production of organizational charts at Plaintiff's request;

(v)    Answering specific questions from Plaintiff relating to Ms. Zajac's documents and Carbonite's information technology environment; and

(vi)   Agreeing to produce a witness to sit for a Rule 30(b)(6) deposition on document preservation issues that would not count towards Plaintiff's allotted depositions.

---

[7]    *See also Scherer v. FCA US, LLC*, No. 20-CV-2009-AJB(BLM), 2021 WL 5494463 (S.D. Cal. Nov. 23, 2021) (denying request for discovery on discovery); *Perez v. DirecTV Grp. Holdings, LLC*, No. SA CV 160-1440-JLS (DFMx), 2020 WL 5875026 (C.D. Cal. Aug. 17, 2020) (same); *Hubbard v. Potter*, 247 F.R.D. 27 (D.D.C. 2008) (same).

14

(Tamton Decl. ¶ 11, Ex. C.)  Thereafter, on July 25, 2022, Defendants also provided Plaintiff with an interrogatory response that identified the more than 140 individuals whose email accounts are being preserved by Carbonite.  (Tamton Decl. ¶ 17, Ex. I.)

On September 12, 2022, the Court held a status conference where Plaintiff alluded to this situation, stating that "clearly" Ms. Zajac is "an important player in this."  (ECF No. 97, Tr. 5:11-12.)  The Court encouraged Plaintiff's counsel to file a motion if it felt that it needed judicial relief.  *(Id.*, Tr. 8:10-14.)[8]  But Plaintiff took no action:  Plaintiff <u>did not</u> file a motion, it <u>did not</u> notice a deposition of Ms. Zajac, and it <u>did not</u> even notice the Rule 30(b)(6) deposition on document preservation topics that Defendants had offered.  The Court should not rewrite its scheduling order to grant Plaintiff relief after the close of fact discovery when Plaintiff did not timely avail itself of such relief when it was expressly offered.

## IV.    PLAINTIFF'S DEMAND THAT DEFENDANTS NOW RE-PRODUCE ALL ELECTRONIC "CHAT" MESSAGES IN THEIR PRODUCTION IN NATIVE FORMAT IS BOTH UNTIMELY AND UNWARRANTED

Defendants reviewed electronic "chat" messages for production in this case, and produced those chat messages in PDF format between June 2022 and October 2022 pursuant to the document production protocol that the parties had negotiated in April 2022.  Plaintiff now demands that Defendants be ordered to re-produce <u>all</u> of those chat messages "in native format." (Pltf.'s Mem. at 9.)  The Court should deny that demand for relief:

***First***, Plaintiff's demand is untimely.  Plaintiff should have addressed its preferred format for production of chat messages in April 2022 in connection with the parties' discussions

---

[8]   "And if [Plaintiff's counsel] think that there is something there that is -- requires a resolution, they'll make a motion, I'm sure, or bring it to my attention. And then, of course, [Defendants' counsel] would respond. And then I would resolve whatever needs to be resolved that all of you need to be resolved."  (*Id.*)

at that time regarding the protocol for document production in this case.  Failing that, Plaintiff should have notified Defendants of any putative concern in June 2022, when Defendants began producing chat messages to Plaintiff in PDF format in accordance with that protocol.  At a minimum, Plaintiff should have addressed any putative concern before taking all of its depositions of fact witnesses in January and February 2023.  Plaintiff's belated demand that those messages be re-produced so that Plaintiff may consider them in connection with *recalling* those witnesses for further testimony is unfair both to those witnesses and to Defendants.

*Second*, Plaintiff's demand for re-production of chat messages is unwarranted:

(i)  Plaintiff has not made any showing that <u>any</u> of those chat messages is significant to any disputed factual issue such that Defendants should be burdened with re-producing <u>every</u> chat message in the production now.  Plaintiff suggests that some of those messages may relate to a "tiger team" mentioned in the complaint (Pltf.'s Mem. at 4), but Defendants have already produced more than 800 documents relating to a "tiger team" (Tamton Decl. ¶ 8), and Defendants have already produced to Plaintiff chat messages mentioning the "tiger team" in PDF format.  Plaintiff offers no reason to believe that re-production of those chat messages would be anything but cumulative.

(ii)  Even if Defendants re-produced all chat messages in native format, it is unclear whether that re-production would benefit Plaintiff in any way.  As Defendants explained to Plaintiff's counsel during their February 3, 2023 call, the native versions appear substantially identical to the versions that have already been reviewed and produced.

16

(iii)     Before Plaintiff filed this Motion, Defendants offered to produce native versions of any particular chat messages that Plaintiff identified by Bates number.  (Tamton Decl. ¶ 15, Ex. G.)  Plaintiff simply ignored that offer and filed this Motion.  The Court should not grant Plaintiff any additional relief now.

## V.    PLAINTIFF'S ELEVENTH-HOUR REQUEST TO UPEND THE COURT'S SCHEDULING ORDER SO THAT FACT DISCOVERY MAY BE EXTENDED IS MERITLESS AND SHOULD BE DENIED

Plaintiff's open-ended request to extend fact discovery to "sort through" purported document issues and request leave "to take or re-take depositions, as may be necessary" (Pltf.'s Mem. at 9) has no merit and should be denied:

*First*, as described above, each of Plaintiff's putative concerns is unwarranted.  No further searches or productions are warranted for Plaintiff to "sort through."

*Second*, Plaintiff's failure to raise these issues with no time left on the proverbial clock is its own fault, not that of Defendants.  Plaintiff's failure to diligently litigate this action does not warrant granting Plaintiff scheduling relief.  *See Doe*, 2021 WL 1700765, at *4 (D. Mass. Apr. 29, 2021) (Sorokin, J.) (denying request to extend fact discovery upon finding that "Plaintiffs have had more than ample opportunity to take discovery").

*Third*, extending fact discovery for any purpose would be unfairly prejudicial to Defendants and to non-party witnesses.  Plaintiff has already suggested that it will seek to recall non-party fact witnesses for further depositions, which would be unfairly burdensome to those witnesses and time-consuming for the parties and the Court.  An extension to fact discovery would predictably have a cascading effect that will compromise the rest of the upcoming case schedule.  For example, on the very day that this memorandum is being filed, the parties are exchanging initial expert reports:  if fact discovery is prolonged, those reports will have been based on an incomplete factual record, and those reports may need to be amended.  Dispositive

17

motion deadlines will need to be extended.  Further, if fact discovery is extended, even for some

limited purpose, Plaintiff may generate further discovery disputes that will continue on and on

and on.  Enough is enough: it is time for this case to move forward.[9]

## VI.    PLAINTIFF SHOULD BE ORDERED TO PAY DEFENDANTS' FEES AND COSTS INCURRED IN OPPOSING THIS UNJUSTIFIED MOTION

Under Federal Rule of Civil Procedure 37(a)(5)(B), a party bringing an

unsuccessful motion to compel may be ordered "to pay the party or deponent who opposed the

motion its reasonable expenses incurred in opposing the motion, including attorney's fees,"

unless "the motion was substantially justified."  For the reasons set forth herein, Plaintiff's

Motion is not "substantially justified":  it is patently not compliant with this Court's Local Rules,

it is not warranted by any showing of actual need for the relief demanded, and it is utterly

untimely.  If the Court is inclined to make an award of expenses pursuant to Rule 37(a)(5)(B),

Defendants are prepared to promptly submit a statement of the fees and costs that they incurred.

### CONCLUSION

For all of the foregoing reasons stated herein, Plaintiff's Motion should be denied,

and Defendants should be awarded their reasonable expenses incurred in opposing the Motion,

including attorneys' fees and costs.

---

[9]    In disregard of Local Rule 37.1(b)(4) and (5)'s requirement that a moving party state with particularity its specific requests, positions and supporting authority in a motion to compel, Plaintiff tacks to the end of its moving brief a broad request that Defendants be compelled to produce "documents missing from [Defendants'] production" that "Lead Plaintiff also requested, in correspondence that pre-dated this motion."  (Pltf.'s Mem. at 9.)  Defendants have fully addressed all of Plaintiff's pre-Motion requests in correspondence with Plaintiff's counsel, and will not burden the Court with unnecessary argument in response to Plaintiff's procedurally defective kitchen-sink request.  (Tamton Decl. ¶¶ 12, 13, Exs. D, E.)

18

## LOCAL RULE 7.1(d) STATEMENT REGARDING ORAL ARGUMENT

Plaintiff's Motion fails to comply with this Court's rules and is otherwise not justified, and accordingly Defendants respectfully submit that it may be denied without oral argument. Nevertheless, Defendants would be pleased to appear for oral argument on Plaintiff's Motion if the Court believes that oral argument would assist the Court in its resolution of the Motion. Defendants respectfully suggest that if the Court determines that it will hold oral argument on this Motion, such argument should be held after the Court's disposition of Plaintiff's pending motion for class certification. As Defendants' briefing on that motion (ECF Nos. 101, 111) explains, certification of this action as a class action would be improper for numerous reasons. If this Court determines that this action may only proceed as an individual action, then the discovery that Defendants have already provided is grossly disproportionate to the needs of the action, and no further discovery could possibly be required.

Dated: February 17, 2023
       Boston, Massachusetts

Respectfully submitted

*/s/ James R. Carroll*
James R. Carroll (BBO #554426)
Alisha Q. Nanda (BBO #657266)
Kurt Wm. Hemr (BBO #638742)
Nigel Tamton (BBO #696396)
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
500 Boylston Street
Boston, Massachusetts  02116
(617) 573-4800
james.carroll@skadden.com
alisha.nanda@skadden.com
kurt.hemr@skadden.com
nigel.tamton@skadden.com

*Counsel for Defendants*
*Carbonite, Inc., Mohamad S. Ali,*
*and Anthony Folger*

19