# EXHIBIT A

*(Agreed-On Form Of Production Specifications)*

## I.    PRODUCTION OF HARD COPY DOCUMENTS – FORMAT

Hard copy documents should be scanned as single-page, Group IV, 300 DPI TIFF images with an .opt image cross-reference file and a delimited database load file (*i.e.*, .dat).  The database load file should contain the following fields: "BEGNO," "ENDNO," "PAGES," "VOLUME" and "CUSTODIAN."  The documents should be logically unitized (*i.e.*, distinct documents shall not be merged into a single record, and single documents shall not be split into multiple records) and be produced in the order in which they are kept in the usual course of business.  Documents containing color need not be produced in color in the first instance.  However, the receiving Party may request production of such documents in color by providing (1) a list of the Bates numbers of documents it requests to be produced in color format; and (2) an explanation of the need for production in color format, and meeting and conferring with the producing party.  Document-level OCR text for each document should also be provided.  The OCR software shall maximize text quality.  Settings such as "auto-skewing" and "auto-rotation" should be turned on during the OCR process.

## II.    PRODUCTION OF ESI

1.    Format: Electronically stored information ("ESI") should be produced in single-page, black and white, TIFF Group IV, 300 DPI TIFF images with the exception of spreadsheet, screenshots, and, audio and video files, which should be slipsheeted and produced in native format.  Each TIFF image should be assigned a Bates number that:  (1) is unique across the entire document production; (2) maintains a constant length across the entire production (*i.e.,* padded to the same number of characters); (3) contains no special characters or embedded spaces; and (4) is sequential within a given document.  Documents containing color need not be produced in color in the first instance.  However, the receiving Party may request production of such documents in color by

providing (1) a list of the Bates numbers of documents it requests to be produced in color format; and (2) an explanation of the need for production in color format, and meeting and conferring with the producing party.  Parties are under no obligation to enhance an image beyond how it was kept in the usual course of business.  TIFFs should show any and all text and images that would be visible to the reader using the native software that created the document, including but not limited to, tracked changes, comments, speaker notes, BCC lines, etc.

2.      Format – Native Files: Spreadsheets, audio, and video files should be produced in native format with a single-page, Bates stamped image slipsheet. Unredacted PowerPoint presentations, and documents with tracked changes should be produced in native format, along with single-page, 300 DPI TIFF images which display any and all in-line edits to the document, such as speaker notes, comments, and tracked changes.  The receiving Party may request production in native format by providing (1) a list of the Bates numbers of documents it requests to be produced in native format; and (2) an explanation of the need for reviewing such documents in native format, and meeting and conferring with the producing party.  Each native file should be named according to the Bates number it has been assigned, and should be linked directly to its corresponding record in the load file using the NATIVELINK field.  To the extent that either party believes that specific documents or classes of documents, not already identified within this protocol, should be produced in native format, the parties should meet and confer in good faith.

3.      De-Duplication: Each party shall remove exact duplicate documents based on MD5 or SHA-1 hash values, at the family level.  Attachments should not be eliminated as duplicates for purposes of production, unless the parent e-mail and all attachments are also duplicates.  An e-mail that includes content in the BCC or other blind copy field shall not be treated as a duplicate of an e-mail that does not include content in those fields, even if all remaining content in the e-

mail is identical.  E-mail thread suppression may be utilized to remove lesser inclusive e-mails that are fully included within e-mail threads from review but may not be utilized to remove lesser inclusive emails from production.  For the avoidance of doubt, removal of an e-mail that has unique BCC recipients via e-mail thread suppression is not acceptable.  Removal of near-duplicate documents is not acceptable.  De-duplication should be done across the entire collection (global de-duplication) and the CUSTODIAN-ALL field should list each custodian, separated by a semicolon, who was a source of that document and the FILEPATH-DUP field will list each file path, separated by a semicolon, that was a source of that document.  Should the CUSTODIAN-ALL or FILEPATH-DUP metadata fields produced become outdated due to rolling productions, an overlay file providing all the custodians and file paths for the affected documents should be produced prior to substantial completion of the document production.

4.      Technology Assisted Review: Predictive coding/technology-assisted-review shall not be used for the purpose of culling the documents to be reviewed or produced without notifying the requesting party prior to use and with ample time to meet and confer in good faith regarding a mutually agreeable protocol for the use of such technologies.

5.      Metadata: All ESI shall be produced with a delimited, database load file (.DAT), using standard Concordance delimiters, that contains the metadata fields listed in Table 1, attached hereto.   The metadata produced should have the correct encoding to enable preservation of the documents' original language.  Extracted text should not be produced in the .DAT file.  For each document, a document-level extracted text file should be provided along with its corresponding TIFF image file(s) and metadata

For ESI other than e-mail and e-docs that do not conform to the metadata listed in Table 1, such as text messages, Instant Bloomberg, iMessage, Google Chat, Yammer, Slack, etc., the parties will meet and confer as to the appropriate metadata fields to be produced.

6.  Embedded Objects: Embedded files shall be produced as attachments to the document that contained the embedded file, with the parent/child relationship preserved.  The embedded files should be marked with a "YES" in the load file under the "Is Embedded" metadata field.  The parties agree logos need not be extracted as separate documents as long as they are displayed in the parent document.

7.  Attachments: If any part of an e-mail or its attachments is responsive, the entire e-mail and attachments should be produced, except any attachments that must be withheld or redacted on the basis of privilege.  The parties should meet and confer about whether there is an appropriate basis for withholding a family document for any reason other than attorney-client or work product privilege. The attachments should be produced sequentially after the parent e-mail. The parties shall use their best efforts to collect and produce documents that are links in e-mails, including, but not limited to, Google G Suite, Microsoft O365, etc.  Documents extracted from links shall be populated with the BegAttach and EndAttach metadata fields to show the family relationship.

8.  Compressed File Types: Compressed file types (*e.g.*, .ZIP, .RAR, .CAB, .Z) should be decompressed so that the lowest level document or file is extracted.

9.  Structured Data: To the extent a response to discovery requires production of electronic information stored in a database, the parties should meet and confer regarding methods of production.  Parties should consider whether all relevant information may be provided by

querying the database for discoverable information and generating a report in a reasonably usable and exportable electronic file.

10. Encryption: The Parties will produce ESI through a secure FTP site or by sending media containing ESI productions to counsel of record for the receiving party. To maximize the security of information in transit, any files or media through which documents are produced may be encrypted. In such cases, the producing party shall transmit the encryption key or password to the receiving party, under separate cover, contemporaneously with sending the encrypted media or uploading the encrypted files to a secure FTP site.

11. Redactions: If documents that the parties have agreed to produce in native format need to be redacted, the parties will apply redactions in a manner that attempts to maintain the original formatting and usability of such documents. Spreadsheets that require redactions will be redacted using a native redaction tool and produced in native format.

13. Time Zone: All ESI produced by a Party shall be normalized to a single time zone. Each producing Party shall disclose the time zone to which its ESI has been normalized.