# EXHIBIT C

*(Letter from Defendants' Counsel to Plaintiff's Counsel dated June 9, 2022)*

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

500 BOYLSTON STREET
BOSTON, MASSACHUSETTS 02116
———
TEL: (617) 573-4800
FAX: (617) 573-4822
www.skadden.com

FIRM/AFFILIATE OFFICES
————
CHICAGO
HOUSTON
LOS ANGELES
NEW YORK
PALO ALTO
WASHINGTON, D.C.
WILMINGTON
————
BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MUNICH
PARIS
SÃO PAULO
SEOUL
SHANGHAI
SINGAPORE
TOKYO
TORONTO

June 9, 2022

David Rosenfeld
Robert Gerson
Philip Merenda
Robbins Geller Rudman & Dowd LLP
58 South Service Road, Suite 200
Melville, New York 11747

RE:    Luna v. Carbonite, Inc., et al., No. 19-11662-LTS

Dear Counsel:

I write further to my May 2, 2022 letter regarding the Carbonite email account of former Carbonite employee, Jamie Zajac, your May 10, 2022 response, my May 16, 2022 response thereto, our call on May 26, 2022 and my May 31, 2022 follow-up letter.  This letter addresses your request that Defendants disclose privileged materials relating to Defendants' attorney-led document preservation efforts.

As you know from our prior correspondence and discussions, on May 2, 2022, we voluntarily disclosed that Defendants recently became aware of an inadvertent human error that resulted in the non-preservation of Ms. Zajac's Carbonite email account.  We made that disclosure in the interest of candor, notwithstanding that Ms. Zajac was (i) just one of many Carbonite employees who worked on VME, (ii) is not a named defendant, (iii) is not named in the Complaint, (iv) was not one of the parties' agreed-upon document custodians, and (v) was not one of the more than 120 Carbonite employees identified in Lead Plaintiff's initial disclosures as "likely to have discoverable information."

To assure that that error would have no meaningful impact on discovery, we agreed to add Ms. Zajac's direct supervisor, Chris Petersen, as a document custodian.  We also ran a search across the universe of documents we had

David Rosenfeld
Robert Gerson
Philip Merenda
June 9, 2022
Page 2

already agreed to review for production and informed you that the document set to be reviewed included more than 10,000 documents on which Ms. Zajac is included in the "To," "From," "CC" or "BCC" fields (including more than 2,000 emails "From" Ms. Zajac).

In response, your May 10, 2022 letter asserted that our voluntary disclosure of that issue raised "serious concerns about your client's document preservation efforts" and, without any basis whatsoever, speculated that Ms. Zajac's emails "were knowingly destroyed by Carbonite." Your May 10, 2022 letter further demanded several specific categories of documents and information purportedly related to the issue regarding Ms. Zajac's emails.

In response to that letter, we have taken the following measures, which were detailed in our May 16, 2022 and May 31, 2022 letters:

(i)      We confirmed that we were able to search Carbonite's entire company-wide email system for any emails containing Ms. Zajac's email address, collected those documents, applied the parties' agreed-upon search terms, and will review for potential production the more than 10,000 documents that hit on the search terms (which will be in addition to the more than 10,000 documents that include Ms. Zajac from the parties' initial, agreed-upon custodians);

(ii)      On May 23, 2022, we produced documents responsive to Lead Plaintiffs' Document Request No. 30, including organizational charts, that were located as of that date;

(iii)      We confirmed that Ms. Zajac's emails and documents from the relevant time period were not collected for any other litigation or investigation;

(iv)      We confirmed that Ms. Zajac has been asked by counsel whether she currently has any potentially relevant emails or documents, and she does not;

(v)      We confirmed that we investigated whether Ms. Zajac's Carbonite email account is recoverable from any backup system, and it is not;

(vi)      We agreed to investigate whether any other Carbonite employee maintained a copy of Ms. Zajac's entire email

David Rosenfeld
Robert Gerson
Philip Merenda
June 9, 2022
Page 3

account after her departure, and can now confirm that no employee did so;

(vii)    We investigated Carbonite's historical email architecture and explained to Lead Plaintiff that Carbonite has used O365 continuously during the relevant time period. Defendants also explained that after OpenText acquired Carbonite in December 2019, Carbonite email accounts were transitioned to the OpenText O365 tenant;

(viii)    We agreed to produce Carbonite's document retention and email policies, to the extent such documents exist and can be located through a reasonable search proportional to the needs of this case; and

(ix)    We agreed to produce a witness to sit for a Rule 30(b)(6) deposition on document preservation issues, and agreed that such a deposition will not count towards Lead Plaintiff's allotted depositions in this case.

In sum, the only actions, materials or information requested in your May 10, 2022 letter that Defendants have not provided or agreed to provide are your requests for a copy of the memorandum from counsel providing legal advice to Carbonite personnel about documents that should be retained for this litigation, and the spreadsheet of names related to document preservation efforts that was created by a former Carbonite paralegal at the direction of Carbonite's in-house counsel. Those materials are privileged. They were created by, or at the direction of attorneys, in anticipation of litigation. The documents reflect legal advice and information used to facilitate the rendering of legal advice.

During our May 26, 2022 call, we asked why you were requesting those privileged materials. You referred only to unspecified concerns about Defendants' document preservation efforts purportedly stemming from Defendants' voluntary disclosure regarding Ms. Zajac's email. In view of the lack of any reasonable basis for your request and the ample measures we have already taken to address your purported concerns about Ms. Zajac's emails, the extraordinary step of producing privileged documents is neither warranted or justified. We are reviewing the more than 20,000 documents that we have located that include Ms. Zajac and will be producing the responsive documents in due course. In view of the considerable work that we have already done, the considerable expenses that

David Rosenfeld
Robert Gerson
Philip Merenda
June 9, 2022
Page 4

Defendants have incurred around these issues, and the substantial production that we expect to make, we see no reason to produce privileged documents.

Sincerely,

/s/ Nigel Tamton

Nigel Tamton