UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RUBEN A. LUNA, Individually and on Behalf of All Others Similarly Situated, )<br><br>Plaintiff, )<br><br>vs. )<br><br>CARBONITE, INC., et al., )<br><br>Defendants. ) | No. 1:19-cv-11662-LTS<br>**(Consolidated)**<br><br><u>CLASS ACTION</u><br><br>**LEAVE TO FILE GRANTED ON**<br>**MARCH 6, 2023 (ECF No. 126)** |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF LEAD PLAINTIFF'S**
**MOTION TO COMPEL AND FOR ADDITIONAL DISCOVERY**

Lead Plaintiff respectfully submits this reply memorandum of law in further support of its Motion to Compel and for Additional Discovery (ECF No. 115; the "Motion").[1]

## I.    PRELIMINARY STATEMENT

Defendants do not dispute that they failed to preserve and search for many relevant documents, consistent with their discovery obligations in this case. Nonetheless, they seek to shirk their responsibility by arguing that Lead Plaintiff should have more quickly reviewed all of the produced documents and identified what was missing sooner than it did. Of course, there is no such burden or time constraint imposed on Lead Plaintiff, as Defendants have their own independent obligation to preserve documents, regardless of whether or not Plaintiff alerts them to any shortcomings.

And here, Lead Plaintiff was not dilatory in its review in any way. It diligently began to review Defendants' documents as soon as they were produced, and alerted Defendants when it became clear that relevant unique documents were missing from their production. Indeed, it would not have been possible for Lead Plaintiff to know Defendants' production was even incomplete until after all of Defendants' documents were produced; at that point, Lead Plaintiff had the opportunity to finish its review, determine what was missing, and promptly alert Defendants, which it did.

Defendants have offered no explanation as to why many of the requested documents were not preserved, no explanation as to why the links to documents were not preserved, and no

---

[1]    Paragraphs of the Consolidated Amended Complaint (ECF No. 45; the "CAC"), are cited as "¶__." "Ex. __" refers to the exhibits in the Reply Declaration of David A. Rosenfeld submitted herewith. Unless otherwise noted, emphasis has been added and internal citations and quotations have been omitted. Capitalized terms not defined herein are as defined in the CAC. Lead Plaintiff's opening memorandum of law filed in support of the Motion is referenced herein as "Pl.'s Br." Defendants' opposition to this Motion is referred to herein as "Opp." ECF No. 121. References to "Tamton Decl. Ex. __" are to exhibits filed in support of the Opp.

explanation as to why the documents connected to those links – which have been established to be highly relevant, responsive, and unique (including a retrospective survey discussing the launch of VME) – were never searched for and are not being produced.

Defendants should be compelled to produce the requested documents and Lead Plaintiff's other relief requested in the Motion should be granted.

## II.   ARGUMENT

### A.   Lead Plaintiff's Requests Are Timely[2]

Instead of explaining their efforts to preserve and search for documents that were never produced, Defendants contend that Lead Plaintiff – not Defendants – should have identified these deficiencies sooner, even though Lead Plaintiff raised these issues prior to the close of fact discovery.[3]  That is not the law.[4]

---

[2]   Defendants disingenuously suggest that Lead Plaintiff is seeking additional discovery because it has not found support for its claims.  *See* Opp. at 1-2.  As the deposition testimony and Lead Plaintiff's expert reports make abundantly clear, Lead Plaintiff's claims are well-backed and will be addressed at the appropriate time.  Lead Plaintiff is simply seeking the documents that Defendants agreed to search for and produce, but never did.  Moreover, Defendants' attack on the confidential witness ("CW"), Opp. at 1, based on cherry-picked excerpts from his deposition, Tamton Decl. Ex. L, ignores other parts of the CW's testimony that he had ███████████ ████████████████████████████████████████████████████████████ ██████████  Crucially – and tellingly – Defendants never challenged the CW on his recitation of the facts alleged in the CAC.

[3]   Contrary to what Defendants suggest, Lead Plaintiff did not wait until the last day of fact discovery to raise these issues.  Rather, Defendants would not make themselves available any time sooner for a meet and confer, even though counsel were together earlier that week at a deposition.

[4]   In *Doe v. Holly*, 2021 WL 1700765 (D. Mass. Apr. 29, 2021), *cited in* Opp. at 17, the plaintiff's request for a further extension of discovery was denied where plaintiff had failed to meet its discovery obligations by not timely filing their initial disclosures or responding to interrogatories or document requests, and one extension of the fact discovery deadline had already been granted. *Id.* at *1-*2.  Those factors are considerably different from the situation here.  Similarly, in *Metropolitan Property & Casualty Insurance Co. v. Savin Hill Family Chiropractic, Inc.*, 2019 WL 1959653 (D. Mass. May 2, 2019), *cited in* Opp. at 10, and unlike here, plaintiff filed a motion for reconsideration of the scheduling order without articulating what discovery it wanted.

If Defendants' argument that Plaintiff immediately should have been aware of Defendants' production deficiencies at the time of production were credible, then Defendants themselves should certainly have been aware of their deficiencies at the time of production – and fixed them. After all, Defendants had by that point not only *produced* the documents, but had *reviewed* them as well.  That is *their* responsibility.  *See* Fed. R. Civ. P. 26(e) (requiring a party to supplement its disclosure upon learning it was incomplete).

Defendants also suggest that there is some absolute deadline by which discovery disputes must be raised.  Yet there is nothing in the schedule identifying any such date, nor have Defendants specified when such a deadline should be.  Lead Plaintiff diligently began its review as soon as documents were produced.

Lead Plaintiff reasonably relied in good faith that Defendants had complied with their discovery obligations in this case.  Here:

- Lead Plaintiff could not have known that relevant documents referenced in hyperlinks were never produced and that Defendants would have entire repositories of documents that *were never once searched – which was first disclosed to Lead Plaintiff on the last day of fact discovery*.

- Lead Plaintiff could not have known ███████████████████████ ████████████████ when Defendants neglected to disclose that fact.[5]

---

Moreover, the litigation had gone on for four years and the plaintiffs "still ha[d] not completed a review of the files now long available to them[,]" *id.* at *1 n.2; discovery had gone on for nearly two years, *id.* at *1; the plaintiffs had "not been diligent in taking discovery" – for example, they "elected to take no depositions[,]" *id.* at *2 n.4; and the trial date was already set for just six months later, *id.* at *2.  Perhaps most importantly, this Court explicitly declined to take any position on the "hypothetical" situation at trial of "a document that would have been responsive to a timely, properly propounded discovery request but was never in fact produced."  *Id.* at *2 n.5.  That hypothetical is this case (before trial): Lead Plaintiff asks only that Defendants meet their preexisting obligations.

[5]  In their interrogatory response, Defendants stated only that ████████████████ ████████████████████████  *See* Tamton Decl. Ex. H, *cited in* Opp. at 12.

- Lead Plaintiff could not have known that documents produced with the look and feel of emails were, in fact, chats. *See, e.g.*, Exs. B-D. Indeed, when presented to deponents at depositions to explain the nature of the document, they were described as ██████████████████████████████

- Lead Plaintiff understood – based on the expectation that Defendants would fulfill their obligation to produce ESI in "*a reasonably usable form*[,]" Fed. R. Civ. P. 34(b)(2)(E)(ii) – that any responsive chats would eventually be identified as part of their document review. It was only upon substantial completion of document review that Lead Plaintiff learned these chats had been produced as PDFs in email format.

**B.    Hyperlinked Documents Should Be Produced as Family Attachments with the Emails They Are Found in, or, at a Minimum, Defendants Should Search *All* Relevant Document Repositories**

Defendants' distinction between hyperlinks and the documents they point to, Opp. at 5-7, raises more questions than it answers:

    i.    When the litigation hold first took effect (*i.e.*, Summer 2019), did Defendants make any effort to preserve the bridge between the hyperlink and the linked document?

    ii.    When discovery commenced, did Defendants make any effort to test the links, or did they just *assume* they were no longer operational?

Defendants studiously avoid giving straight answers to these questions. Until they are answered, however, Defendants cannot claim to have satisfied their discovery obligations.

Defendants' lone case – *Nichols v. Noom Inc.*, 2021 WL 948646 (S.D.N.Y. Mar. 11, 2021), *cited in* Opp. at 8-9 – only helps Lead Plaintiff. *First*, the court there stressed the "[n]otabl[e]" fact that, unlike here, the ESI protocol was *silent* regarding hyperlinks. *Id.* at *3. *Second*, also unlike here, it appears the defendant there produced *all* documents referenced in hyperlinks (albeit not as family attachments, but rather in a "separate collection of those documents"), thus ensuring the plaintiffs could "identify the underlying hyperlinked documents" somewhere in the production. *Id.* at *2, *4. *Third*, the court there specifically directed "that if there were certain documents discovered in the production containing hyperlinks for which the corresponding hyperlinked document could not be located or identified, . . . Noom would be required to provide the document

- 4 -

or Bates number." *Id.* at *2.  Thus, a proper reading of *Nichols* compels the following three

conclusions:

1. Because the Agreed-On Form of Production here (unlike in *Nichols*) unequivocally mentions "documents that are links in e-mails[,]" (Opp. at 5) Defendants should produce all relevant hyperlinked documents as family to their respective emails.[6]  To the extent the hyperlinks no longer point to the correct locations, Defendants should run searches through the actual documents, which they represented have been preserved.  *See* Opp. at 7.

2. It has become clear that Defendants have access to repositories that were never searched.  For instance, they found a relevant document in a repository that they contend they "did not believe would contain relevant material."  Opp. at 7 n.5.  Since it is now evident that that repository *does* contain relevant material, Defendants' continued refusal to comprehensively search it (and others like it) is inexcusable.  They should be required to do so.

3. At the very least, Defendants should produce documents specifically identified and requested by Lead Plaintiff, just as Noom was required to do.

It only just came to light that numerous shared drives exist with relevant information **that**

**have never once been searched**, much less produced.  Pl.'s Br. 1-2.  Defendants should be

compelled to do both.

### C.    Documents of Messrs. Mohan and Haines Should Be Searched and Produced

Defendants have still not disclosed whether the documents of Messrs. Mohan and Haines

were preserved, and if they were not, when they were destroyed.  In response to the request for a

copy of the █████████████████████████████████████████

███████████████████████  Defendants' response was that it was unreasonable "to

undertake an expansive search for those documents."  Pl.'s Br. at 4.  There is no basis for such a

---

6    Defendants' outlandish argument about a deficiency in Lead Plaintiff's own production (Opp. at 6 (citing Tamton Decl. ¶3)) – limited to signature block hyperlinks **to Lead Counsel's website and social media handles, as opposed to relevant, actual information** – is telling.

response.  Nor is there a basis for failing to preserve and produce the requested documents of Mohan and Haines.

### D.  Chats Should Be Produced in Native Format to Enable Proper Review

Despite Defendants' arguments, Opp. at 16, access to chats in an organized and searchable format is necessary since, as produced, the chats are essentially incomprehensible (and sorting by Bates-number, as Defendants requested, is unreasonable).  *See* Pl.'s Br. 5.  Defendants' prior production makes clear that ██████████████████████████████████████

████████████████████████████████████████████████████████████

██████  And contrary to what Defendants contend, Opp. at 16, Lead Plaintiff was unable to determine which of the produced documents were chats until it became apparent through the course of depositions, during which former Carbonite employees themselves could not ████████

████████████████████████████████████████

### III.  CONCLUSION

For the foregoing reasons, Lead Plaintiff's Motion should be granted in full.[8]

---

[7]  Defendants' claim for fees and costs (Opp. at 18) is clearly inappropriate as, for all the reasons set forth herein, this motion is substantially justified.

[8]  Defendants also contend that the motion should be denied for not complying with Local Rule 37.1.  *See* Opp. at 4.  The substance of the Rule, however, is satisfied: Lead Plaintiff's Motion (ECF No. 115) includes a certification that the parties conferred prior to filing, and its memorandum (ECF No. 116) states the time and location of the conference (*id.* at 1 n.1) and the matters agreed upon and the issues remaining to be decided by the Court (*id.* at 2-5).  Moreover, neither case cited by Defendants to support this contention involved a failure to attach a certificate of compliance, but to itemize and discuss "with particularity" each disputed production request. *See Theidon v. Harvard Univ.*, 2016 WL 3919839, at *1 (D. Mass. July 15, 2016); *Doe*, 2021 WL 1700765, at *3.  As this Court has explained, the particularity requirement "is not technical; it assists the Court in resolving motions and focuses the parties' dispute." *Theidon v. Harvard Univ.*, 2016 WL 2901730, at *1 (D. Mass. May 18, 2016) (Sorokin, J.).  Here, Lead Plaintiff's requests are individually itemized, satisfying the Rule.  *See* Pl.'s Br. 1-2, 7 (hyperlinked documents); *id.* at 2-4, 8-9 (Mohan and Haines documents); *id.* at 4-5, 9 (native chats).

DATED: March 6, 2023

Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
SAMUEL H. RUDMAN
DAVID A. ROSENFELD (admitted *pro hac vice*)
ROBERT D. GERSON (admitted *pro hac vice*)
PHILIP T. MERENDA (admitted *pro hac vice*)

_____
             */s/ David A. Rosenfeld*
             DAVID A. ROSENFELD

58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com
drosenfeld@rgrdlaw.com
rgerson@rgrdlaw.com
pmerenda@rgrdlaw.com

*Lead Counsel for Lead Plaintiff*

HUTCHINGS BARSAMIAN MANDELCORN,
LLP
THEODORE M. HESS-MAHAN, BBO #557109
110 Cedar Street, Suite 250
Wellesley Hills, MA  02481
Telephone:  781/431-2231
781/431-8726 (fax)
thess-mahan@hutchingsbarsamian.com

*Local Counsel*

**CERTIFICATE OF SERVICE**

I, David A. Rosenfeld, hereby certify that on March 6, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a Notice of Electronic Filing to all counsel of record.

_/s/ David A. Rosenfeld_
DAVID A. ROSENFELD