UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RUBEN A. LUNA, Individually and on Behalf of All Others Similarly Situated, ) ) ) | No. 1:19-cv-11662-LTS **(Consolidated)** |
| Plaintiff, ) ) | <u>CLASS ACTION</u> |
| vs. ) ) ) | Leave To File Under Seal Granted On August 3, 2023 (Doc. No. 151) |
| CARBONITE, INC., et al., ) ) | |
| Defendants. ) ) ) | Leave To File 23 Pages Granted on August 8, 2023 (Doc. No. 153) |

**LEAD PLAINTIFF'S MEMORANDUM OF LAW IN
OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ...................................................................................................1

II.   ARGUMENT...........................................................................................................2

     A.    Legal Standard ..............................................................................................2

     B.    Defendants Have Failed to Prove that Their Class Period Statements Were Not Materially False and Misleading.......................................................2

          1.    The Evidence Confirms VME Was Not a "Super Strong Product," and Did Not Make Carbonite "Extremely Competitive," or "Completely Competitive" as of November 2018 (or Ever) .......................3

          2.    The First Circuit Has Already Rejected Defendants' Falsity Arguments...................................................................................................8

     C.    There Is a Triable Issue of Fact on Scienter .........................................................10

     D.    There Is No Basis for Summary Judgment on Loss Causation ...........................14

          1.    Defendants' Fraud Caused Plaintiff's Economic Loss ..............................15

          2.    Defendants' Recycled Front-End Price Inflation Argument Fails.............18

          3.    Factual Issues Preclude Summary Judgment on Loss Causation ..............19

              a.    There Are Disputed Issues of Fact Regarding the Market's Reaction to VME's Withdrawal.......................................................19

              b.    There Are Disputed Issues of Fact Regarding Ali's Departure.......................................................................................22

III.  CONCLUSION......................................................................................................23

## TABLE OF AUTHORITIES

**Page**

**CASES**

*Abu Dhabi Com. Bank v. Morgan Stanley & Co. Inc.*,
  888 F. Supp. 2d 431 (S.D.N.Y. 2012)...................................................................................13

*Akerson v. Pritzker*,
  2021 WL 2295522
  (D. Mass. June 4, 2021) .........................................................................................................2

*Avalanche IP, LLC v. FAM, LLC*,
  2022 WL 3597411
  (D. Mass. Aug. 23, 2022)......................................................................................................10

*Baker v. SeaWorld Ent., Inc.*,
  423 F. Supp. 3d 878 (S.D. Cal. 2019)...............................................................................16, 21

*Bricklayers & Trowel Trades International Pension Fund v.*
  *Credit Suisse Securities (USA) LLC*,
  752 F.3d 82 (1st Cir. 2014)...............................................................................................17, 20

*Caremark, Inc. v. Coram Healthcare Corp.*,
  113 F.3d 645 (7th Cir. 1997) ............................................................................................14, 18

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986).............................................................................................................14

*Chabot v. Walgreens Boots All., Inc.*,
  2023 WL 2908827
  (M.D. Pa. Mar. 31, 2023).........................................................................................10, 18, 23

*Constr. Indus. & Laborers Joint Pension Tr. v. Carbonite, Inc.*,
  22 F.4th 1 (1st Cir. 2021).............................................................................................. *passim*

*Daubert v. Merrell Dow Pharm., Inc.*,
  509 U.S. 579 (1993)..............................................................................................................17

*Di Donato v. Insys Therapeutics, Inc.*,
  333 F.R.D. 427 (D. Ariz. 2019) ............................................................................................19

*Dura Pharms., Inc. v. Broudo*,
  544 U.S. 336 (2005)..............................................................................................................14

*Fitzer v. Security Dynamics Technologies, Inc.*,
  119 F. Supp. 2d 12 (D. Mass. 2000) ......................................................................................9

**Page**

*Freudenberg v. E\*Trade Fin. Corp.*,
  712 F. Supp. 2d 171 (S.D.N.Y. 2010).................................................................................21

*Greebel v. FTP Software, Inc.*
  194 F.3d 185 (1st Cir. 1999)................................................................................................9

*Hsingching Hsu v. Puma Biotechnology, Inc.*,
  2018 WL 4945703
  (C.D. Cal. Oct. 5, 2018) ............................................................................2, 3, 18, 22

*In re Bos. Sci. Corp. Sec. Litig.*,
  2022 WL 17823837 (D. Mass. Dec. 20, 2022).....................................................................11

*In re Daou Sys., Inc.*,
  411 F.3d 1006 (9th Cir. 2005) ...........................................................................................16

*In re Metris Cos., Inc. Securities Litigation*,
  428 F. Supp. 2d 1004 (D. Minn. 2006).................................................................................9

*In re Novatel Wireless Sec. Litig.*,
  830 F. Supp. 2d 996 (S.D. Cal. 2011)....................................................................10, 14, 17

*In re Omnicom Group, Inc. Securities Litigation*,
  597 F.3d 501 (2d Cir. 2010).............................................................................................19

*In re Parametric Technology Corp. Securities Litigation*,
  300 F. Supp. 2d 206 (D. Mass. 2001) ...................................................................................8

*In re Reliance Sec. Litig.*,
  135 F. Supp. 2d 480 (D. Del. 2001)...............................................................................9, 10

*In re Smith & Wesson Holding Corp. Sec. Litig.*,
  604 F. Supp. 2d 332 (D. Mass. 2009) ...................................................................................8

*In re Smith & Wesson Holding Corp. Sec. Litig.*,
  669 F.3d 68 (1st Cir. 2012).............................................................................................13

*In re Smith & Wesson Holding Corp. Securities Litigation*,
  836 F. Supp. 2d 1 (D. Mass. 2011) ....................................................................................13

*In re Stone & Webster, Inc., Sec. Litig.*,
  414 F.3d 187 (1st Cir. 2005)...............................................................................................2

**Page**

*In re Twitter, Inc. Sec. Litig.*,
  2020 WL 4187915
  (N.D. Cal. Apr. 17, 2020) ................................................................................................ *passim*

*In re Vivendi, S.A. Sec. Litig.*,
  838 F.3d 223 (2d Cir. 2016) ................................................................................................5, 16

*In re Vivendi Universal, S.A. Sec. Litig.*,
  634 F. Supp. 2d 352 (S.D.N.Y. 2009) ......................................................................................16

*In re Williams Securities Litigation-WCG Subclass*,
  558 F.3d 1130 (10th Cir. 2009) ..............................................................................................19

*Khadda v. Target Corp.*,
  2016 WL 3976567
  (D. Mass. July 22, 2016) ..........................................................................................................7

*Knous v. Broadridge Fin. Sols., Inc.*,
  2020 WL 2747821
  (D. Mass. May 27, 2020) ..........................................................................................................2

*Lattanzio v. Deloitte & Touche LLP*,
  476 F.3d 147 (2d Cir. 2007) ...................................................................................................16

*Loc. 703, I.B. of T. Grocery & Food Emps. Welfare Fund v. Regions Fin. Corp.*,
  762 F.3d 1248 (11th Cir. 2014) ..............................................................................................22

*Mass. Ret. Sys. v. CVS Caremark Corp.*,
  716 F.3d 229 (1st Cir. 2013) .......................................................................................14, 20, 21

*Metro. Life Ins. Co. v. Beard*,
  321 F. Supp. 3d 181 (D. Mass. 2018) .......................................................................................2

*Mississippi Public Employees' Retirement System v. Boston Scientific Corp.*,
  649 F.3d 5 (1st Cir. 2011) .......................................................................................................14

*Nat'l Amusements, Inc. v. Town of Dedham*,
  43 F.3d 731 (1st Cir. 1995) .......................................................................................................2

*Nguyen v. Radient Pharms. Corp.*,
  946 F. Supp. 2d 1025 (C.D. Cal. 2013) ..................................................................................18

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
  135 S. Ct. 1318 (2015) ..............................................................................................................9

**Page**

*Pelletier v. Endo Int'l PLC*,
    338 F.R.D. 446 (E.D. Pa. 2021)........................................................................................5

*Robbins v. Koger Props., Inc.*,
    116 F.3d 1441 (11th Cir. 1997) ....................................................................................16

*S.E.C. v. EagleEye Asset Mgmt., LLC*,
    975 F. Supp. 2d 151 (D. Mass. 2013) ..........................................................................10

*S.E.C. v. Ficken*,
    546 F.3d 45 (1st Cir. 2008)...........................................................................................10

*S.E.C. v. Lemelson*,
    532 F. Supp. 3d 30 (D. Mass. 2021) ............................................................................10

*S.E.C. v. Mozilo*,
    2009 WL 3807124
    (C.D. Cal. Nov. 3, 2009).................................................................................................3

*S.E.C. v. True N. Fin. Corp.*,
    909 F. Supp. 2d 1073 (D. Minn. 2012)..........................................................................9

*Sands v. Ridefilm Corp.*,
    212 F.3d 657 (1st Cir. 2000).........................................................................................2

*Schultz v. Am. Airlines, Inc.*,
    449 F. Supp. 3d 1301 (S.D. Fla. 2020), *aff'd*,
    855 F. App'x 656 (11th Cir. 2021) ...............................................................................7

*Silverman v. Motorola, Inc.*,
    798 F. Supp. 2d 954 (N.D. Ill. 2011) ...........................................................................16

*Smilovits v. First Solar Inc.*,
    119 F. Supp. 3d 978 (D. Ariz. 2015) ............................................................................9

*Special Situations Fund III, L.P. v. Am. Dental Partners, Inc.*,
    775 F. Supp. 2d 227 (D. Mass. 2011) ..........................................................................13

*Washtenaw Cnty. Emps.' Ret. Sys. v. Talbots, Inc.*,
    2013 WL 5348569
    (D. Mass. Sept. 23, 2013) ..............................................................................................8

**Page**

## STATUTES, RULES AND REGULATIONS

15 U.S.C.
    §78j(b)......................................................................................................................23
    §78t(a).......................................................................................................................23
    §78u-4(b)(4)..............................................................................................................14

Fed. R. Civ. P.
    Rule 56(a)....................................................................................................................2

## SECONDARY AUTHORITIES

Wright & Miller,
    10A Fed. Prac. & Proc. Civ.
    §2721 (4th ed.) ...........................................................................................................5

██████████████████████████████████████████████████

██████████████████████████████████████████████

## I.    INTRODUCTION

Lead Plaintiff Construction Industry and Laborers' Joint Pension Trust ("Plaintiff") respectfully submits its opposition to Defendants' motion for summary judgment in this compelling case of securities fraud.[1]

As the record shows, Carbonite rushed to launch a backup software product – the Server VM Edition ("VME") – that its senior-most officials knew was deficient, but nonetheless released to customers, pitching VME to investors as a "***super strong product***" that was already making Carbonite "***extremely competitive***" and "***completely competitive***" in the virtual machine backup space.    The contemporaneous documents are devastating to Defendants' falsity and scienter challenges, making clear that:

- Carbonite rushed VME to market via a release that was "████████████████████ ███████████████";
- VME paled in comparison to its competitors as it was not "████████████████ ██████████████████████████████████████   and
- At the time of launch, VME was ███████████████████████████████████ ████████████.

Deposition testimony from numerous former high-ranking Carbonite officials (including defendants Ali and Folger) confirmed that ███████████████████████████████████

████████████████████████████████████████████████

---

[1]    "Defendants" refers to Carbonite, Inc. ("Carbonite" or the "Company"), Mohamad Ali, and Anthony Folger.  Unless otherwise noted: (i) "¶_" or "¶¶_" are references to the Consolidated Amended Complaint for Violations of the Federal Securities Laws (the "CAC," Doc. No. 45); and (ii) in quoted material, all emphasis is added and internal citations are omitted.  Undefined capitalized terms are as defined in the CAC. "PX _" refers to the exhibits in the Declaration of David A. Rosenfeld, dated August 10, 2023. "SOAMF ¶_" refers to Plaintiff's Statement of Additional Material Facts and "RSOMF ¶_" refers to Plaintiff's Responses to Defendants' Local Rule 56.1 Statement of Material Facts as to Which There Is No Genuine Issue to be Tried, both of which are incorporated herein by reference.

██.

As to loss causation, Defendants and their finance expert expressly concede that ████████

████████████████████████████████████████. How much of the subsequent stock

price decline is attributed to VME is a damages question for the jury, not this motion.

Defendants' arguments ignore the overwhelming evidence of their fraud, and, for the most

part, were already rejected by the First Circuit at the pleading stage and, most recently, by this Court

at the Class certification stage.  As set forth herein, these arguments are all erroneous and, at an

absolute minimum, create disputed issues of fact, thereby precluding summary judgment.

## II.    ARGUMENT

### A.    Legal Standard

Summary judgment is only appropriate if, viewing all facts in the light most favorable to the

non-moving party, there is no genuine dispute as to any material fact.  Fed. R. Civ. P. 56(a); *Knous*

*v. Broadridge Fin. Sols., Inc.*, 2020 WL 2747821, at *2 (D. Mass. May 27, 2020) (Sorokin, J.).  A

genuine issue exists where the evidence is "sufficiently open-ended to permit a rational factfinder to

resolve the issue in favor of either side."  *Metro. Life Ins. Co. v. Beard*, 321 F. Supp. 3d 181, 183 (D.

Mass. 2018) (quoting *Nat'l Amusements, Inc. v. Town of Dedham*, 43 F.3d 731, 735 (1st Cir. 1995)).

To succeed on summary judgment, the movant must demonstrate an "absence of evidence

supporting the non-moving party's case."  *Akerson v. Pritzker*, 2021 WL 2295522, at *3 (D. Mass.

June 4, 2021) (quoting *Sands v. Ridefilm Corp.*, 212 F.3d 657, 660 (1st Cir. 2000)).  Defendants

have failed to meet their burden.

### B.    Defendants Have Failed to Prove that Their Class Period Statements Were Not Materially False and Misleading

"The falsity of a statement and the materiality of a false statement are questions for the jury."

*In re Stone & Webster, Inc., Sec. Litig.*, 414 F.3d 187, 209 (1st Cir. 2005); *see also Hsingching Hsu*

*v. Puma Biotechnology, Inc.*, 2018 WL 4945703, at \*6 (C.D. Cal. Oct. 5, 2018) ("Generally, whether a public statement is misleading, or whether adverse facts were adequately disclosed is a mixed question to be decided by the trier of fact – here, the jury."). Arguments that statements are not misleading are therefore "rarely successful on a motion for summary judgment." *S.E.C. v. Mozilo*, 2009 WL 3807124, at \*9 (C.D. Cal. Nov. 3, 2009).

> ### 1. The Evidence Confirms VME Was Not a "Super Strong Product," and Did Not Make Carbonite "Extremely Competitive," or "Completely Competitive" as of November 2018 (or Ever)

Despite carrying the burden on this motion, Defendants offer no evidence to suggest VME was "super strong," "completely competitive," or "extremely competitive" – as they had told investors. *See generally* Mot. 12-16.[2] The reason is understandable: ████████████

████████████████████████████████████████████.[3] For example:

- ████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████

- ████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████

[2] ████████████████████████████████████████
████████████████████████████

[3]  At the pleading stage, the First Circuit held that the November 2018 statements were material misrepresentations, rejecting each of Defendants' arguments to the contrary. *See Constr. Indus. & Laborers Joint Pension Tr. v. Carbonite, Inc.*, 22 F.4th 1, 7-8 (1st Cir. 2021).

[4]  "DF" refers to Defendants' Local Rule 56.1 Statement of Material Facts as to Which There Is No Genuine Issue to be Tried (Doc. No. 133). Defendants' memorandum (Doc. No. 132) is cited as "Mot. _." "TD Ex. _" and "TDC Ex. _" refer to: (i) the Transmittal Declaration of Nigel Tamton (Doc. No. 134); and (ii) the Transmittal Declaration of Nigel Tamton (Confidential Discovery Documents) (Doc. No. 135) dated June 2, 2023.

These documents are but a mere snapshot of the trove of evidence showing ▇▇▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇.” *See*

SOAMF ¶¶20-167.  Although lacking evidence to contend otherwise, Defendants nevertheless argue

that their statements are not false.  At an absolute minimum, the extensive evidentiary record

developed in discovery confirms that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇.

Ignoring what they actually said to investors about VME, Defendants focus on one allegation

in the CAC – that VME "never worked" as intended – suggesting that this claim does not hold water,

therefore summary judgment is appropriate.  Mot. 13-15; ¶¶6, 44.  At the outset, to the extent

Defendants' position is that Plaintiff is bound by the narrow constructions of its complaint – no matter what evidence is developed in discovery – they are wrong.  Plaintiff's allegations, including its theory of falsity, can and should be conformed to the evidence developed in discovery.  *See In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223, 242 n.11 (2d Cir. 2016) (holding that plaintiffs are not even bound by the "precise set of alleged ***misstatements*** identified in their complaint throughout the entire course of litigation"); *Pelletier v. Endo Int'l PLC*, 338 F.R.D. 446, 482-84 (E.D. Pa. 2021). ("[P]lacing meat on the bones of the fraud alleged in the complaint . . . is consistent with the design of the Federal Rules, which contemplate that additional facts and evidence will emerge in discovery to help plaintiffs flesh out their claims.").[5]

Regardless, this desperate argument falls flat for numerous other reasons.  None more so at this stage of the proceedings than creating yet another factual dispute.  Indeed, the contemporaneous record contains a mountain of evidence detailing that ███████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

---

[5]    *See also* Wright & Miller, 10A Fed. Prac. & Proc. Civ. §2721 (4th ed.) ("[T]he formal issues framed by the pleadings are not controlling on . . . summary judgment; the court must consider the issues presented by the other materials offered by the parties on the motion to determine whether the Rule 56 request should be granted.").

[6]    ████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████

Defendants press ahead with their "VME worked" argument, by claiming: (i) they received positive customer feedback on VME; and (ii) VME passed pre-launch tests.  Both arguments are sorely misguided.  First, Defendants cite to one document with purported positive customer feedback – ██████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

██████████████████████  ████████████████ The only other document they rely on refers to █

███████████████████████████████████████████████████████. The documentary evidence here – which is far more credible than the selective ex-post, self-serving deposition testimony quoted by Defendants (Mot. 14) – shows that ████████████████████████

███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
██████████████████████████████

---

[7]    Defendants' other false and misleading statements touting Carbonite's data protection platform and product offerings (¶¶73, 82, 87, 89, 91, 97, 101) remain actionable.  As the First Circuit "train[ed] [its] attention on" and upheld the November 2018 statements without addressing Plaintiff's other alleged misstatements, they all remain operative, consistent with the First Circuit's conclusion that there was "no other claimed basis for dismissing the complaint." *Carbonite*, 22 F.4th at 7, 11 ("revers[ing] the ***judgment*** of the district court granting the motion to dismiss").  These statements were false and misleading because they gave investors the impression that, for example, "***our technology works and works really, really well***," when that was anything but the case with VME.  *See* SOAMF ¶¶150-152, 166.  Similarly actionable is the false and misleading FY19 revenue guidance Defendants gave in both February (¶84) and May of 2019 (¶94) – which included (internal) projections for VME.  When Defendants finally admitted VME was a failure, all projected VME-related revenues were removed from Carbonite's guidance.  ¶66; SOAMF ¶¶168-175; RSOMF ¶¶102-103.

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

████████████████████████████████████

Second, Carbonite's pre-release testing of VME was ██████████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

████████████████████████████████████████████   ████████

---

[8]    Defendants' reliance on self-serving deposition testimony (Mot. 14) is a tactic routinely rejected at summary judgment and does not suffice to satisfy their burden of showing the absence of a genuine dispute as to any material fact.  In fact, "the Court may disregard self-serving testimony that is blatantly contradicted by the record." *Schultz v. Am. Airlines, Inc*., 449 F. Supp. 3d 1301, 1311 (S.D. Fla. 2020), *aff'd*, 855 F. App'x 656 (11th Cir. 2021); *see also Khadda v. Target Corp*., 2016 WL 3976567, at *2 (D. Mass. July 22, 2016) (Sorokin, J.) ("when opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for the purposes of ruling on a motion for summary judgment.").  And Defendants' unfounded suggestion that Plaintiff itself is required to submit *deposition* testimony demonstrating that VME "never worked" (Mot. 14) is a red herring given the ███████████████████████████████████████████
███. SOAMF ¶¶20-167. ███████████████████████████████
█████████████████████████████████████████████████████
█████████████████████████████████████████████████████
███████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████

### 2. The First Circuit Has Already Rejected Defendants' Falsity Arguments

Defendants rehash arguments already rejected by the First Circuit, contending that the challenged statements were highly "[s]ubjective statements of optimism about VME and its competitive prospects." Mot. at 15. As the First Circuit concluded, Ali and Folger's November 2018 statements "were not projections of hoped-for future performance. Rather, *they were flat-out claims about the product as it then stood*." 22 F.4th at 11.[9] Further, because the November 2018 statements were statements of present fact– and not forward-looking – they are not entitled to protection as mere puffery or statements of corporate optimism. *See In re Smith & Wesson Holding Corp. Sec. Litig.*, 604 F. Supp. 2d 332, 342 (D. Mass. 2009) ("only purely forward-looking statements are entitled to protection as 'mere puffery.' Statements of present or historical fact are not mere 'puffery.'"); *see also Washtenaw Cnty. Emps.' Ret. Sys. v. Talbots, Inc.*, 2013 WL 5348569, at \*30 (D. Mass. Sept. 23, 2013) (Sorokin, J.) (statements not "mere puffery" where

---

[9] For example, as the First Circuit reasoned, "Folger used the *present tense* to describe Carbonite's beliefs about the then-existing status of a product that the company had already 'put out' into the market. *Retrospectively asserting that this was somehow a forward-looking statement does not make it so*." 22 F.4th at 8. Accordingly, *In re Parametric Technology Corp. Securities Litigation*, 300 F. Supp. 2d 206, 217-18 (D. Mass. 2001) (Mot. 15-16), where the court found that the statement, "*[l]ooking ahead* to the second half of fiscal 1998 . . . we continue to have confidence in the fundamental strength of our business and in our strong competitive position," was "plainly on its face a forward-looking statement entitled to the [PSLRA] safe harbor," is highly distinguishable.

plaintiff alleged that Talbots "was in fact experiencing at that time widespread inventory management difficulties").

Nor can Defendants hide behind the argument that their statements about VME's strength and competitiveness were "subjective" and they sincerely held optimistic beliefs or opinions about VME.  Regardless of whether their statements are considered opinions, they are still actionable.  *See Carbonite*, 22 F.4th at 7-8 (discussing *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 135 S. Ct. 1318 (2015)) and concluding that even though Folger's November 15 statement was "presented in the form of a statement of belief," it nonetheless "***misled investors***" because he either did not believe VME to be "completely competitive" and "super strong," his opinion did not "fairly align" with information in his possession and/or his opinion was not based on a reasonable inquiry).  Defendants' attempt to undo this settled law of the case should be rejected.[10]

In any event, where significant evidence contradicts Defendants' purported beliefs, like here (SOAMF ¶¶20-167), courts are compelled to reject this argument at summary judgment because "a jury could choose not to credit [defendant's] subjective belief given evidence [to the contrary] . . . . These are factual and credibility issues for the jury to resolve." *Smilovits v. First Solar Inc.*, 119 F. Supp. 3d 978, 1005 (D. Ariz. 2015); *see also In re Reliance Sec. Litig.*, 135 F. Supp. 2d 480, 507-08

---

[10]    The "loose" optimistic statements in *Fitzer v. Security Dynamics Technologies, Inc.*, 119 F. Supp. 2d 12, 22 (D. Mass. 2000) (Mot. 15), that the company was "well positioned" to "take advantage of the range of opportunities in the market" are a far cry from Defendants' specific, detailed, verifiable representations that Carbonite's newly launched VME is a "super strong product" that "significantly improves" Carbonite's performance and makes the Company "extremely competitive" in the market.  ¶¶5, 55, 77.  *See Omnicare*, 575 U.S. at 184 (differentiating between "mere puffery" and "determinate, verifiable statement[s]" about a company's products).  Defendants' statements thus stand in stark contrast to the statements found inactionable in *Greebel v. FTP Software, Inc.*, upon which Defendants rely, including that the company's "products ***should*** help us achieve our revenue objection" and "[s]ales continue to be strong." 194 F.3d 185, 189 (1st Cir. 1999).  Likewise, *In re Metris Cos., Inc. Securities Litigation*, 428 F. Supp. 2d 1004 (D. Minn. 2006) (Mot. 16), is similarly misplaced.  There, the "***broad statements***" about the company's financial wellbeing, were too "plain vanilla" and "vague" to be actionable, unlike the present statements of fact at issue here.  *Id.* at 1011. Moreover, even "somewhat vague" statements can create genuine issues of material fact where, like here, there is a "stark contrast" between a company's reality and "the one it painted for its investors."  *S.E.C. v. True N. Fin. Corp.*, 909 F. Supp. 2d 1073, 1110 (D. Minn. 2012) (distinguishing *Metris*).

(D. Del. 2001) (denying summary judgment where a "juror could conclude that these defendants did not have a genuine belief" in light of "express warnings" to the contrary).

### C.    There Is a Triable Issue of Fact on Scienter

To establish scienter, Plaintiff must "show either that the defendants consciously intended to defraud, or that they acted with a high degree of recklessness." *Carbonite*, 22 F.4th at 8.  Although the PSLRA requires a plaintiff to plead "a 'strong' inference of scienter," at summary judgment, "the standard is less stringent" and "'a simple inference of scienter is sufficient to support a jury's verdict.'"  *In re Novatel Wireless Sec. Litig.*, 830 F. Supp. 2d 996, 1017 (S.D. Cal. 2011). "[S]cienter is usually a question reserved for the jury." *S.E.C. v. Lemelson*, 532 F. Supp. 3d 30, 42 (D. Mass. 2021); *see also S.E.C. v. Ficken*, 546 F.3d 45, 51 (1st Cir. 2008) ("[I]t is unusual to grant summary judgment on scienter."); *S.E.C. v. EagleEye Asset Mgmt., LLC*, 975 F. Supp. 2d 151, 158 (D. Mass. 2013) (the "requisite scienter" under the Exchange Act is a "question[] best left to a jury"); *In re Twitter, Inc. Sec. Litig.*, 2020 WL 4187915, at *12 (N.D. Cal. Apr. 17, 2020) ("'Generally, scienter should not be resolved by summary judgment.'").  "[C]ourts must be lenient in allowing scienter issues to withstand summary judgment based on [even] fairly tenuous inferences, because such issues are appropriate for resolution by the trier of fact." *Avalanche IP, LLC v. FAM, LLC*, 2022 WL 3597411, at *7 (D. Mass. Aug. 23, 2022).

The First Circuit already found that the CAC alleged "a ***very strong*** inference" of scienter as to Ali and Folger. *Carbonite*, 22 F.4th at 8-11.  Extensive discovery has now corroborated both Plaintiff's allegations and the First Circuit's findings.  The documentary and testimonial record in this case decisively establish that ██████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████ ████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████████████ ▀ ██

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████

In the face of this devastating evidence, Defendants attempt to portray Ali and Folger as C-Suite executives far removed from VME's engineering and development process. Mot. 17. But

███████████████████████████████████████████████████████

Defendants' suggestion that Ali and Folger "could not have been reckless" because VME "passed its pre-launch tests" is misguided. Mot. at 17, 18-19; *see* ████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

---

[11]   These are hardly "expressions of 'Monday morning remorse' many months [after the alleged misstatements]," as Defendants contend. Mot. 20.

[12]   Tellingly, with more than 180,000 documents at their disposal, Defendants cite to *four* contemporaneous documents in support of their scienter argument.

████████████ ███████████████████████████████████████████████████

████████ ██████ ██████ ██████ ████ ██████ ██████ █████ ██████

███████████████████████████████████████████████████████████

Equally unavailing is Defendants' attempt to evade liability by claiming that "informal discussions between engineers" grumbling about VME were not brought to the attention of Ali or Folger. Mot. 17-18. Besides being a ███████████████████████████████ (RSOMF ¶¶17-20), the First Circuit has made clear that Defendants do not get a pass for burying their heads in the sand on VME. *See Carbonite*, 22 F.4th 10 (finding CAC pleaded "facts raising a strong inference that *Ali and Folger either inquired about VME before deciding to promote it to investors or were reckless in failing to do so*").[15]

In sum, drawing all reasonable inferences in Plaintiff's favor, "[t]he evidence plaintiff[] ha[s] provided—coupled with the suggestion that courts should refrain from deciding issues of intent on summary judgment—is enough to create a disputed issue of fact as to scienter." *Abu Dhabi Com. Bank v. Morgan Stanley & Co. Inc.*, 888 F. Supp. 2d 431, 462 (S.D.N.Y. 2012); *Twitter*, 2020 WL

---

[13]    Any supposed excitement held by the Carbonite's sales team to sell VME and belief it had competitive advantages (Mot. 17) █████████████████████████████████████

[14]    The documents in evidence here, unlike in *In re Smith & Wesson Holding Corp. Securities Litigation*, 836 F. Supp. 2d 1 (D. Mass. 2011) (Mot. 19), are not "ambiguous," "conflicting and uncertain" and "decidedly mixed," nor do they demonstrate mere "expressions of anxiety" or project "hopeful anticipation" (*id*. at 14-16); they █████████████████████████████████████████████████████ ████████████████████████████████████████████████████████." SOAMF ¶¶20-124. Here, there is far more than merely "thin and debatable" evidence of an intent to defraud and/or recklessness. *See In re Smith & Wesson Holding Corp. Sec. Litig*., 669 F.3d 68, 77 (1st Cir. 2012). Notably, Defendants themselves (Mot. 19) highlight the First Circuit's guidance in *Smith & Wesson* that "courts are normally cautious about granting summary judgment for the defense on th[e] issue" of scienter "assum[ing] that there is either *some evidence* of subjective bad intent, or, alternatively, misstatements or omissions so blatantly improper that bad intent or recklessness can be inferred." 669 F.3d at 77. That is precisely the case here given the breadth of evidence that Plaintiff has proffered.

[15]    *See also Special Situations Fund III, L.P. v. Am. Dental Partners, Inc.*, 775 F. Supp. 2d 227, 243 (D. Mass. 2011) ("If Defendants did not know that their statements posed a danger of misleading investors in this way, then they were highly reckless not to know it . . . reckless enough to incur liability under the securities laws.").

4187915, at *12 ("'Generally, scienter should not be resolved by summary judgment.'").[16]

## D.     There Is No Basis for Summary Judgment on Loss Causation

A plaintiff must "prove [at trial] that the defendant's misrepresentation (or other fraudulent conduct) proximately caused [its] . . . loss." *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 346 (2005); 15 U.S.C. §78u-4(b)(4). Plaintiff need only prove that a "relevant truth" that was previously concealed became "generally known" and caused the company's stock price to drop. *Dura*, 544 U.S. at 342, 344. This inquiry requires no more than the familiar test for proximate cause. *Id.* at 346. "Loss causation is easiest to show when a corrective disclosure is associated with a drop in share price." *Mass. Ret. Sys. v. CVS Caremark Corp.*, 716 F.3d 229, 238 (1st Cir. 2013).

As the party seeking summary judgment, it is Defendants' burden to establish the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). For loss causation, a defendant must "establish[] that the decline in the value of the security is attributable *in total* to some other factor." *Caremark, Inc. v. Coram Healthcare Corp.*, 113 F.3d 645, 649-50 (7th Cir. 1997); *see also Novatel*, 830 F. Supp. 2d at 1019 (defendants must "'establish that, as a matter of undisputed fact, the depreciation in the value of [Carbonite's stock] could not have resulted from the alleged false statement or omission of the defendant'"). As set forth below, Defendants have not met their burden.

---

[16]   Defendants' reliance on, and cursory analysis of, *Mississippi Public Employees' Retirement System v. Boston Scientific Corp.*, 649 F.3d 5 (1st Cir. 2011) (Mot. 19-20), is likewise misplaced. There, the plaintiff argued that defendants made statements and omissions that misled the market about the risk of problems with the company's delivery system for its stent devices, including that the devices would require a significant recall, and that defendants' awareness of this risk supported an inference of scienter. 649 F.3d at 21. Defendants omit several crucial facts upon which the First Circuit relied in *Mississippi*, including the "*very small number*" of complaints of the problem and that "[t]he investing public was not only *aware* of the no-deflate complaints, but also of the risk of recall, which defendants openly discussed." *Id.* at 29. Here, in stark contrast, investors had no knowledge that, *inter alia*, ███████████████████████████████ ████████████████████████████████████████████████████████████████ ███████████████████████████.

### 1.    Defendants' Fraud Caused Plaintiff's Economic Loss

Loss causation in this case could not be more clear-cut.[17]  Defendants launched VME ██

████████████████████████████████████████████████████████████████████

███████████████████████████  *Id*. ¶¶20-113.  Just nine months after release, on July 25, 2019, after

market close, Defendants revealed that VME was a failure, they were withdrawing it from the

market, and substantially reducing Carbonite's financial guidance for the remainder of 2019.  *Id*.

¶¶168-175.  On this news, Carbonite's stock fell nearly 25%.  *Id*. ¶172.  Based on the widely

accepted event study methodology, Plaintiff's loss causation and damages expert, Bjorn I. Steinholt,

established that Carbonite's stock price suffered a company-specific, statistically significant residual

decline on July 26, 2019, and explained the relationship between this fraud-related, company-

specific information, and Plaintiff's allegations.  *See* TDC Ex. 142 (Doc. No. 135-27), Steinholt Rpt.

¶¶31-74; TDC Ex. 143 (Doc. No. 135-28), Steinholt Rebuttal ¶¶12, 10-49.

Mr. Steinholt analyzed *all* information disclosed by Carbonite after the market closed on

July 25, 2019.  TDC Ex. 146 (Doc. No. 135-31), Steinholt Tr. 27:13-34:25; 77:7-83:2, 132:2-137:17.

He did not "assume[] away," but rather expressly considered, and rejected, the purportedly

"confounding factors" raised by ████████████████████████ ████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████  ████████  Rebuttal

¶¶41-49.[18]  Steinholt also made clear that he can ██████████████████████████

_____

[17]    Perhaps that is why Defendants chose not to challenge loss causation at the pleading stage.  *See generally* Doc. No. 53.

[18]  ████████████████████████████████████████████████████████████████

████████████████████████████████████████████. TDC Ex. 143 (Doc. No. 135-28),

Steinholt Rebuttal ¶49; TDC Ex. 146 (Doc. No. 135-31), Steinholt Tr. 176:3-8.

Even so, "'as long as the misrepresentation is **one substantial cause of the investment's**

**decline in value**, other contributing forces will not bar recovery under the loss causation requirement

but will play a role in determining recoverable damages." *Twitter*, 2020 WL 4187915, at *15

(quoting *In re Daou Sys., Inc.*, 411 F.3d 1006, 1025 (9th Cir. 2005)); *see Robbins v. Koger Props.,

Inc.*, 116 F.3d 1441, 1447 (11th Cir. 1997) (same).[19] Defendants' revelation of a failed VME was –

without question – "one substantial cause" of Carbonite's July 26, 2019 stock price decline. *Twitter*,

2020 WL 4187915, at *15.[20]

Defendants' issues with Steinholt's conclusions may be appropriate fodder for cross-

examination at trial, but they are not sufficient to grant them summary judgment. *See, e.g., Baker v.

SeaWorld Ent., Inc.*, 423 F. Supp. 3d 878, 935 (S.D. Cal. 2019) ("Defendants' disagreement with

[plaintiff's expert's damages] approach and conclusions are not bases for summary judgment.");

---

[19]   *See also Lattanzio v. Deloitte & Touche LLP*, 476 F.3d 147, 158 (2d Cir. 2007) (requiring plaintiffs to produce sufficient evidence for the fact finder to "ascribe some rough proportion of the whole loss" to defendants' fraud).

[20]   Defendants' demand for Plaintiff to prove "what part of the drop" relates to their fraud (Mot. 12) conflates the elements of loss causation and damages. *See, e.g.*, *In re Vivendi Universal, S.A. Sec. Litig.*, 634 F. Supp. 2d 352, 364 (S.D.N.Y. 2009) (observing "it is important not to confuse causation with damages when comparing competing causes for a stock decline. In theory, plaintiffs need only prove that they suffered *some* damage from the fraud. Liability obviously does not hinge on how much damage") (emphasis in original). *See also Vivendi*, 838 F.3d at 256 ("It was up to the *jury* to determine how much, if any, of the artificial inflation identified by [expert] was caused by Vivendi's alleged fraud.") (emphasis in original); *Silverman v. Motorola, Inc.*, 798 F. Supp. 2d 954, 984 (N.D. Ill. 2011) (disaggregation goes to the amount, not the fact, of damages and thus does not support summary judgment).

*Novatel*, 830 F. Supp. 2d at 1022 (defendants' "'alternative explanation[s]'" for company's stock price declines only serves to raise "a question of fact").[21]

While Steinholt explained why the entire price decline on July 26, 2019 was caused by VME-related disclosures, Defendants have failed to establish that ***any*** (let alone all) of the decline was caused by something else.  At deposition, ████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
██████████████████████████████████

███████████████████████████████████████████

Because Defendants have failed to provide evidence "establishing that the decline[s] in the value of

---

[21]    Defendants' heavy reliance on *Bricklayers & Trowel Trades International Pension Fund v. Credit Suisse Securities (USA) LLC*, 752 F.3d 82 (1st Cir. 2014) (Mot. 1, 5, 6, 11, 12), is misplaced.  At the outset, *Bricklayers* is principally a decision involving a motion to exclude the plaintiffs' expert's opinion under *Daubert v. Merrell Dow Pharm., Inc*., 509 U.S. 579 (1993).  *See Bricklayers*, 752 F.32 at 91-97.  In *Bricklayers*, the First Circuit affirmed summary judgment on the sole ground that the report had been properly excluded, *Bricklayers*, 752 F.3d at 97 – an issue that is not now before the Court.  Regardless, the facts of *Bricklayers* are entirely distinguishable.  *Bricklayers* involved alleged misrepresentations in reports prepared by ***third party*** analysts covering AOL.  *Id*. at 85.  This case concerns, *inter alia*, statements by Carbonite's CEO and CFO about a product representing what they described as "***a really important product***" for the Company.  PX 133, December 6, 2018 Conference Call.  There, the Court excluded the expert's report in light of numerous identified deficiencies, including the selection of many event dates that bore "no relationship to the allegations in the complaint" and focusing on disclosures that "did no more than to provide gloss on public information."  *Bricklayers*, 752 F.3d at 91, 95.  *See id.* at 95 ("in some instances he has turned the complaint on its head, treating certain events as corrective when the complaint labeled them inflationary").  Here, as set forth above, the July 25, 2019 disclosures of new information relating to VME are directly related to Plaintiff's allegations.  Finally, in *Bricklayers*, within the context of "a highly publicized merger that captured the attention of the entire financial industry," the expert "seemingly made a judgment call as to confounding information without any methodological underpinning."  *Bricklayers*, 752 F.3d at 95.  Here, while considering and concluding that no confounding information exists, Mr. Steinholt has provided the precise framework he would employ should any such confounding information later come to light.  *See* TDC Ex. 143 (Doc. No. 135-28), Steinholt Rebuttal ¶¶38-41.

the security [are] attributable *in total* to some other factor" unrelated to the alleged fraud, summary judgment must be denied. *Caremark*, 113 F.3d at 649-50; *Puma Biotechnology*, 2018 WL 4945703, at \*9 (denying summary judgment where defendants "failed to show that factors other than the . . . corrective disclosures caused the stock's decline"); *see also Nguyen v. Radient Pharms. Corp.*, 946 F. Supp. 2d 1025, 1040 (C.D. Cal. 2013) (summary judgment denied where defendants did not show stock drop "was the result of factors other than alleged false and misleading statements").[22]

Here, the information disclosed by Defendants on July 25, 2019 is directly linked to Plaintiff's allegations and caused Plaintiff's and the class's losses. "The question of how much of the decline can be attributed to the challenged statements, as opposed to other factors, is a factual question for the jury." *Twitter*, 2020 WL 4187915, at \*16 n.17.

### 2.    Defendants' Recycled Front-End Price Inflation Argument Fails

Implicitly recognizing the failure to meet their burden, Defendants focus on various VME-related events (including the making of the alleged misstatements) they assert had no effect on the market price of Carbonite stock before the announcement of VME's withdrawal in July 2019. Mot. 7-8. This is a complete red herring. Defendants made – and this Court rejected – this very same flawed argument at the Class certification stage. *See* Doc. No. 148 at 18 n.8 ("*[A]s to the front-end, the issue is not whether the price increased after the alleged misstatements, but whether the alleged misstatements impacted the price—a different question*.").

A recent decision from the Middle District of Pennsylvania – where Mr. Steinholt served as the plaintiffs' expert, and the court rejected this argument on summary judgment – is instructive. *See Walgreens*, 2023 WL 2908827, at \*21 n.12:

---

[22]    Defendants do not dispute that the July 26, 2019 price decline identified by Steinholt was statistically significant and Carbonite-specific.  ██████████████████████████
████████████████████████

Defendants argue Steinholt's failure to find significant price increases on November 17, 2016, and April 5, 2017, indicates the statements on those days did not cause price inflation. ... *But defendants miss the point*. The absence of a price increase after a misrepresentation does not mean the statement had no impact on price; misrepresentations can prevent, mitigate, or delay declines in price. *Cf. In re Advance Auto Parts, Inc., Sec. Litig.*, No. 18-212-RGA, 2020 WL 6544637, at *4 (D. Del. Nov. 6, 2020) ("The movement of a stock price immediately after a false statement often tells us very little about how much inflation the false statement caused." (citation omitted)). *The key factor in assessing loss causation is decline after disclosure, not inflation after the misrepresentation*. Bubbles tend to burst quite quickly, but they take time to inflate.

*See also Di Donato v. Insys Therapeutics, Inc.*, 333 F.R.D. 427, 444 (D. Ariz. 2019) (in a price maintenance case, "[t]he *lack* of statistically significant proof that a statement affected the stock price is *not* statistically significant proof of the opposite, *i.e.*, that it did not actually affect the stock price") (emphasis in original).[23]  As such, Defendants' focus on the lack of any front-end price increases should be disregarded.

### 3.  Factual Issues Preclude Summary Judgment on Loss Causation

Even if Defendants could meet their initial burden (which they cannot), the record evidence raises obvious factual disputes as to loss causation, precluding summary judgment.

### a.  There Are Disputed Issues of Fact Regarding the Market's Reaction to VME's Withdrawal

At the outset, Defendants revisit their disingenuous argument raised – and expressly rejected by this Court – at the class certification stage, that Carbonite's revenue guidance reduction and the withdrawal of VME are *not* related.  *See* Mot. 9-10; Doc. No. 148 at 20 (Sorokin, J.) ("*But as the*

---

[23]  *In re Omnicom Group, Inc. Securities Litigation*, 597 F.3d 501 (2d Cir. 2010) (Mot. 6), is inapposite. There, the plaintiff merely offered "a negative characterization of already-public information" as its primary basis for alleging loss causation.  597 F.3d at 512.  Moreover, unlike in that case, there is anything but a "tenuous[] connect[ion]" between Defendants' statements and the information revealed on July 25, 2019. *Id.* at 515. *In re Williams Securities Litigation-WCG Subclass*, 558 F.3d 1130 (10th Cir. 2009) (Mot. 6), is also highly distinguishable.  Plaintiff does not allege a "leakage theory" whereby "a number of tiny corrective disclosures occurred each and every day…which had the cumulative effect of gradually disclosing the fraud," as was the case in *Williams*.  558 F.3d at 1138.  In fact, there, the plaintiffs' expert, among a host of other differentiating factors, "could not explain how the market learned of the fraud" and even "concede[d] that the market *knew* of the misrepresentations even before those disclosures[.]" *Id.* at 1139, 1143.  That stands in stark contrast to the facts presented here.

***Trust explains, it is indisputable that Carbonite lowered its revenue guidance in part because it pulled its VME product from the market, as Carbonite's CFO stated directly to analysts at the beginning of the July 25, 2019 earnings call***.").  Defendants continue to flagrantly disregard that the withdrawal of VME is the ***very reason*** for the guidance reduction.  *See, e.g.*, TD Ex. 105 (Doc. No. 134-105), TD Ex. 107 (Doc. No. 134-107) (analyst reports directly linking VME's withdrawal to Carbonite's reduced FY19 revenue guidance); RSOMF ¶¶102, 106.. ███████████████

████████████████████████████████████████████

█████████████████████████████████████  ███████████

███████████████████  ████████████████████████

████████████████████████████████████████████

███████████

Likewise, Defendants' contention that their July 25, 2019 disclosures were unrelated to any prior statements about VME because those prior statements "did not address revenue" (Mot. 9-11) is based on the incorrect (and discredited) theory that a "fact-for-fact" disclosure is required to plead loss causation – that is, that a disclosure is not "corrective" unless it admits fraud or precisely mirrors the alleged misrepresentation.  That theory is contrary to the overwhelming weight of authority, including binding First Circuit precedent.  *See CVS*, 716 F.3d at 240 ("[A] corrective disclosure need not be a 'mirror-image' disclosure—a direct admission that a previous statement is untrue.").[25]

---

[24]  Defendants' repeated references to Carbonite's "further reduction" in revenue guidance on July 25, 2019 is entirely misleading.  *See* Mot. 9, 10; DF ¶100 (Doc. No. 133).  First, Carbonite had ***raised*** its non-GAAP revenue guidance in the prior quarter (1Q19).  RSOMF ¶100.  Second, Defendants concede that the 1Q19 decrease in Carbonite's GAAP revenue guidance was "entirely driven by a change in purchase accounting for Webroot's deferred revenue" – not VME.  DF ¶79.  This also directly contradicts Defendants' argument that Carbonite's 2Q19 reduction in revenue guidance "was an entirely new fact."  *See* Mot. 12.

[25]  *See id.* (a "defendant's failure to admit to making a misrepresentation, or his denial that a

- 20 -

Nor does the fact that Carbonite did not previously break out expected revenues for VME mean that investors somehow always believed VME was *excluded* from Company forecasts.  *See* Mot. 11.  Defendants made this same misguided argument at the Class certification stage, but it was expressly rejected by this Court.  *See* Doc. No. 148 at 20 n.9 ("***The alleged misstatements promoted VME, and the 2019 guidance was lowered in part due to the withdrawal of that same VME product. The Court views the lowering of the 2019 guidance based on the VME withdrawal as evidence bearing on the price impact issue***.").  *See SeaWorld*, 423 F. Supp. 3d at 932 ("[A] reasonable jury could find that the . . . disclosure related back to Defendants' alleged misstatements."); *see also* TDC Ex. 146 (Doc. No. 135-31), ██████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████    ████████████████████████████████

████████████

Equally unavailing is Defendants' effort to downplay the market's focus on VME by manually counting the number of analyst reports, earnings call questions, and media reports supposedly mentioning the product by name.  Mot. 9-10.  Defendants also tried this tactic at the Class certification stage, but it too was rejected by the Court.  *See* Doc. No. 148 at 19 ("***10 out of 11 of these analyst reports…specifically discuss VME's withdrawal in relation to the lowered revenue guidance***."); *id.* ("***As the Trust notes, however, several analysts did question Carbonite representatives on the same call about the VME withdrawal and its relationship to the lowered***

---

misrepresentation was made, does not necessarily preclude loss causation"); *see also Freudenberg v. E\*Trade Fin. Corp.*, 712 F. Supp. 2d 171, 202 (S.D.N.Y. 2010) ("neither the Supreme Court in *Dura*, nor any other court addressing the loss causation pleading standard[,] require a corrective disclosure be a 'mirror image' tantamount to a confession of fraud").

*guidance*.").[26] Regardless, this argument misses the mark. *See, e.g.*, *Puma Biotechnology*, 2018 WL 4945703, at \*9 (denying summary judgment on loss causation grounds, despite that "the vast majority of analysts…did not even mention" the allegedly corrective information and "the four analysts that mentioned these facts referred to them briefly as neutral or positive," and concluding that "this isn't conclusive proof that the [] disclosures didn't contribute to the drop in price").[27]

**b.    There Are Disputed Issues of Fact Regarding Ali's Departure**

In addition, the record abounds with hotly-disputed fact questions about VME's withdrawal, Ali's immediate departure, and the consequent plunge in Carbonite's stock price. ███████████

██████████████████████████████████████████████████

██████████████████████████████ Mot. 10; TDC Ex. 142 (Doc. No. 135-27),

Steinholt Rebuttal ¶42; TDC Ex. 146 (Doc. No. 135-31), Steinholt Tr. 134:12-136:10. ████████

████████████████████████████████████████████████

██████████████████████████████████████████████████

███████████████████

Here, the contemporaneous record – at a bare minimum – raises disputed issues of fact ████████████████████████ For example:

• ████████████████████████████████████████████
  ████████████████████████████████████████████
  ████████████████████████████████████████████;

---

26    Defendants cite to the same analyst reports here. *See* TD Exs. 96-97 (Doc. Nos. 134-96, 134-67); TD Exs. 99-107 (Doc. Nos. 134-99 – 134-107).

27    Defendants' contention that Plaintiff's investment manager was not focused on VME simply because he did not write that word in a July 26, 2019 email is erroneous. Mot. 10. In an August 15, 2019 memorandum– *submitted by Defendants* – ████████████████████████████████████████
████████████████████████████████ ████████████████████
████████████████████████████████████████████████████,
"even if sophisticated investment advisers 'do not incorporate particular informational disclosures into their investment strategies,' they still rely on the integrity of the market." Doc. No. 148 at 10 (quoting *Loc. 703, I.B. of T. Grocery & Food Emps. Welfare Fund v. Regions Fin. Corp.*, 762 F.3d 1248, 1260 (11th Cir. 2014)).



Nevertheless, this factual dispute further precludes summary judgment. *See, e.g.*, *Walgreens*, 2023 WL 2908827, at *21 (with regard to loss causation, "[i]t is the jury and not this court that shall resolve this dispute").[29]

## III.    CONCLUSION

For the foregoing reasons, Defendants' motion should be denied in its entirety.

---

[28] ███████████████████████████████████████████████████████████████
████ *See* SOAMF ¶¶139-144, 188-189.

[29]    Defendants limit their basis for summary judgment on Plaintiff's §20(a) claim to lack of a primary violation of §10(b). Mot. 4 n.5. For the reasons discussed above, that is incorrect and fails as well.

DATED:  August 10, 2023

Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
SAMUEL H. RUDMAN
DAVID A. ROSENFELD (admitted *pro hac vice*)
ROBERT D. GERSON (admitted *pro hac vice*)

*/s/ David A. Rosenfeld*

DAVID A. ROSENFELD

58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com
drosenfeld@rgrdlaw.com
rgerson@rgrdlaw.com

*Lead Counsel for Lead Plaintiff*

HUTCHINGS BARSAMIAN MANDELCORN, LLP
THEODORE M. HESS-MAHAN, BBO #557109
110 Cedar Street, Suite 250
Wellesley Hills, MA  02481
Telephone:  781/431-2231
781/431-8726 (fax)
thess-mahan@hutchingsbarsamian.com

*Local Counsel*

**CERTIFICATE OF SERVICE**

I, David A. Rosenfeld, hereby certify that on August 10, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a Notice of Electronic Filing to all counsel of record.

*/s/ David A. Rosenfeld*
DAVID A. ROSENFELD