UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

RUBEN A. LUNA, individually and on behalf of :    Civil Action
all others similarly situated,                     No. 19-11662-LTS

                                       :    (Consolidated)

             Plaintiff,

        v.                      :    **LEAVE TO FILE WITH EXCESS PAGES GRANTED ON SEPTEMBER 8, 2023**

CARBONITE, INC., MOHAMAD S. ALI and    :    **(Doc. No. 161)**
ANTHONY FOLGER,

                                         :    **REDACTED PUBLIC VERSION**

            Defendants.

                                         :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## DEFENDANTS' REPLY IN FURTHER SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

Dated: September 11, 2023                       James R. Carroll
                                                 Kurt Wm. Hemr
                                                 Alisha Q. Nanda
                                                 Nigel Tamton
                                                 SKADDEN, ARPS, SLATE,
                                                     MEAGHER & FLOM LLP
                                                 500 Boylston Street
                                                 Boston, Massachusetts 02116
                                                 (617) 573-4800

                                                 *Counsel for Defendants*
                                                 *Carbonite, Inc., Mohamad S. Ali,*
                                                 *and Anthony Folger*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT ...........................................................................................1

ARGUMENT ........................................................................................................................3

I.  SUMMARY JUDGMENT IS WARRANTED BECAUSE THE TRUST
    HAS FAILED TO OFFER EVIDENCE THAT WOULD DISENTANGLE
    THE ALLEGED FRAUD FROM CONFOUNDING DISCLOSURES ............................3

    A.  The Trust Offers No Basis To Disaggregate The Impact Of Mr. Ali's
        Departure From The Impact Of The Putative Corrective Disclosure .....................5

    B.  The Trust Offers No Basis To Disaggregate The Impact
        Of The Reduction In Revenue Guidance Unrelated To VME From
        The Impact Of The Putative Corrective Disclosure Regarding VME .....................7

II. SUMMARY JUDGMENT IS WARRANTED BECAUSE
    THERE IS NO COMPETENT EVIDENCE THAT THE NOVEMBER
    2018 STATEMENTS WERE ACTIONABLY FALSE — BECAUSE
    VME DID INDEED WORK — AND THERE IS NO COMPETENT
    EVIDENCE THAT THOSE STATEMENTS WERE MADE WITH SCIENTER ..........10

    A.  The Trust's Concession That VME Was
        A Functional Product Is Fatal To Its Claim, And
        It Cannot Wave Away That Failure Of Proof By Declaring That Its
        "Theory Of Falsity" Is Now "Conformed" To The Discovery Record .................10

    B.  The Trust's Failure Of Proof On Scienter
        Also Requires The Entry Of Summary Judgment .................................................12

CONCLUSION....................................................................................................................15

## TABLE OF AUTHORITIES

**Cases**                                                                                                    **Page(s)**

*Abu Dhabi Com. Bank v. Morgan Stanley & Co.*,
    888 F. Supp. 2d 431 (S.D.N.Y. 2012)..............................................................................15

*Akerson v. Pritzker*,
    No. 12-10240-PBS, 2021 WL 2295522 (D. Mass. June 4, 2021) .....................................15

*Atlantica Holdings, Inc. v. Sovereign Wealth Fund Samruk-Kazyna JSC*,
    477 F. Supp. 3d 88 (S.D.N.Y. 2020), *aff'd*,
    No. 20-2805-cv, 2022 WL 151302 (2d Cir. Jan. 18, 2022).................................................5

*Avalanche IP, LLC v. FAM, LLC*,
    No. 20-cv-10102-ADB, 2022 WL 3597411 (D. Mass. Aug. 23, 2022) .............................15

*Baker v. SeaWorld Ent., Inc.*,
    423 F. Supp. 3d 878 (S.D. Cal. 2019)..................................................................................4

*Bank of Eng. v. Lonoke Cnty. Prop. Owners' Multipurpose Improvement Dist. No. 10*,
    No. 4:13-CV-00268-BRW, 2013 WL 12110115 (E.D. Ark. Aug. 15, 2013)....................11

*Bricklayers & Trowel Trades International Pension Fund v. Credit Suisse First Boston*,
    853 F. Supp. 2d 181 (D. Mass. 2012), *aff'd sub nom.*
    *Bricklayers & Trowel Trades International Pension Fund v. Credit Suisse*
    *Securities (USA) LLC*, 752 F.3d 82 (1st Cir. 2014).........................................................1, 4

*Bricklayers & Trowel Trades International Pension Fund v. Credit Suisse Securities*
    *(USA) LLC*, 752 F.3d 82 (1st Cir. 2014)..........................................................................1, 3

*Caremark, Inc. v. Coram Healthcare Corp.*,
    113 F.3d 645 (7th Cir. 1997) ...............................................................................................4

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986).............................................................................................................15

*Chabot v. Walgreens Boots All., Inc.*,
    No. 1:18-CV-2118, 2023 WL 2908827 (M.D. Pa. Mar. 31, 2023) ....................................4

*Construction Industry & Laborers Joint Pension Trust v. Carbonite, Inc.*,
    22 F.4th 1 (1st Cir. 2021)...........................................................................................1, 10, 12

*Daubert v. Merrell Dow Pharms., Inc.*,
    509 U.S. 579 (1993).............................................................................................................15

*Di Donato v. Insys Therapeutics, Inc.*,
    333 F.R.D. 427 (D. Ariz. 2019) ...........................................................................................4

*Freudenberg v. E\*Trade Fin. Corp.*,
　　712 F. Supp. 2d 171 (S.D.N.Y. 2010)..................................................................................4

*Glassman v. Computervision Corp.*,
　　90 F.3d 617, 635 (1st Cir. 1996)......................................................................................12

*Gordon Partners v. Blumenthal*,
　　No. 02 Civ. 7377 LAK, 2007 WL 1438753 (S.D.N.Y. May 16, 2007), *aff'd,*
　　293 F. App'x 815 (2d Cir. 2008) .........................................................................................5

*Greebel v. FTP Software, Inc.*,
　　194 F.3d 185 (1st Cir. 1999)..........................................................................................2, 12

*Hsingching Hsu v. Puma Biotechnology, Inc.*,
　　No. SACV 15-00865 AG (JCGx), 2018 WL 4945703 (C.D. Cal. Oct. 5, 2018) ................4

*In re Daou Sys., Inc.*,
　　411 F.3d 1006 (9th Cir. 2005) ............................................................................................4

*In re Novatel Wireless Sec. Litig.*,
　　830 F. Supp. 2d 996 (S.D. Cal. 2011)..................................................................................4

*In re Reliance Sec. Litig.*,
　　135 F. Supp. 2d 480 (D. Del. 2001)...................................................................................12

*In re Scientific Atlanta, Inc. Securities Litigation*,
　　754 F. Supp. 2d 1339 (N.D. Ga. 2010), *aff'd sub nom.*
　　*Phillips v. Scientific-Atlanta, Inc.*, 489 F. App'x 339 (11th Cir. 2012)..............................4

*In re Smith & Wesson Holding Corp. Sec. Litig.*,
　　604 F. Supp. 2d 332 (D. Mass. 2009) ...............................................................................15

*In re Stone & Webster, Inc., Sec. Litig.*,
　　414 F.3d 187 (1st Cir. 2005)..............................................................................................11

*In re Twitter, Inc. Sec. Litig.*,
　　No. 16-cv-05314-JST, 2020 WL 4187915 (N.D. Cal. Apr. 17, 2020) ................................4

*In re Vivendi Universal, S.A. Sec. Litig.*,
　　634 F. Supp. 2d 352 (S.D.N.Y. 2009)..................................................................................4

*In re Vivendi, S.A. Sec. Litig.*,
　　838 F.3d 223 (2d Cir. 2016).............................................................................................4, 5

*Khadda v. Target Corp.*,
　　No. 15-11542-LTS, 2016 WL 3976567 (D. Mass. July 22, 2016) ......................................6

*Knous v. Broadridge Fin. Sols., Inc.*,
    No. 19-11973-LTS, 2020 WL 2747821 (D. Mass. May 27, 2020) ...................................15

*Lattanzio v. Deloitte & Touche LLP*,
    476 F.3d 147 (2d Cir. 2007)..........................................................................................4

*Loc. 703, I.B. of T. Grocery & Food Emps. Welfare Fund v. Regions Fin. Corp.*,
    762 F.3d 1248 (11th Cir. 2014) ....................................................................................4

*LSI Design & Integration Corp. v. Tesaro, Inc.*,
    No. CV 18-12352-LTS, 2020 WL 1027773 (D. Mass. Mar. 3, 2020) ............................11

*Mass. Ret. Sys. v. CVS Caremark Corp.*,
    716 F.3d 229 (1st Cir. 2013)..........................................................................................4

*Metro. Life Ins. Co. v. Beard*,
    321 F. Supp. 3d 181 (D. Mass. 2018) ..........................................................................15

*Nat'l Amusements, Inc. v. Town of Dedham*,
    43 F.3d 731 (1st Cir. 1995)...........................................................................................15

*Nguyen v. Radient Pharms. Corp.*,
    946 F. Supp. 2d 1025 (C.D. Cal. 2013) .........................................................................4

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
    575 U.S. 175 (2015).....................................................................................................12

*Pelletier v. Endo Int'l PLC*,
    338 F.R.D. 446 (E.D. Pa. 2021)...................................................................................12

*Robbins v. Koger Props., Inc.*,
    116 F.3d 1441 (11th Cir. 1997) .....................................................................................4

*Sands v. Ridefilm Corp.*,
    212 F.3d 657 (1st Cir. 2000).........................................................................................15

*Schultz v. American Airlines, Inc.*,
    449 F. Supp. 3d 1301 (S.D. Fla. 2020), *aff'd*,
    855 F. App'x 656 (11th Cir. 2021) .................................................................................6

*SEC v. EagleEye Asset Mgmt., LLC*,
    975 F. Supp. 2d 151 (D. Mass. 2013) ..........................................................................15

*SEC v. Ficken*,
    546 F.3d 45 (1st Cir. 2008)..........................................................................................15

*SEC v. Lemelson*,
    532 F. Supp. 3d 30 (D. Mass. 2021) ............................................................................15

iv

*SEC v. Mozilo*,
　　No. CV 09-3994-JFW (MANx), 2009 WL 3807124 (C.D. Cal. Nov. 3, 2009) ...............15

*SEC v. True N. Fin. Corp.*,
　　909 F. Supp. 2d 1073 (D. Minn. 2012) ...............................................................................12

*Silverman v. Motorola, Inc.*,
　　798 F. Supp. 2d 954 (N.D. Ill. 2011) ..................................................................................4

*Smilovits v. First Solar Inc.*,
　　119 F. Supp. 3d 978 (D. Ariz. 2015) .................................................................................12

*Special Situations Fund III, L.P. v. Am. Dental Partners, Inc.*,
　　775 F. Supp. 2d 227 (D. Mass. 2011) ................................................................................15

*Thant v. Karyopharm Therapeutics Inc.*,
　　43 F.4th 214 (1st Cir. 2022) ..............................................................................................12

*Tropigas de Puerto Rico Inc. v. Certain Underwriters at Lloyd's of London*,
　　637 F.3d 53 (1st Cir. 2011) ..................................................................................................7

*Washtenaw Cnty. Emps' Ret. Sys. v. Princeton Rev., Inc.*, No. CIV. A. 11-11359-RGS,
　　2012 WL 727125 (D. Mass. Mar. 6, 2012) ........................................................................11

*Washtenaw Cnty. Emps.' Ret. Sys. v. Talbots, Inc.*,
　　No. 11-10186-NMG, 2013 WL 5348569 (D. Mass. Sept. 23, 2013) .................................15

*Yan v. ReWalk Robotics Ltd.*,
　　973 F.3d 22 (1st Cir. 2020) ...............................................................................................12

## PRELIMINARY STATEMENT[1]

The Trust's blunderbuss Opposition only serves to make plain that summary judgment is warranted here on at least two grounds:

*First,* the Trust fails to meaningfully address this Circuit's precedent in *Bricklayers & Trowel Trades International Pension Fund v. Credit Suisse Securities (USA) LLC*, 752 F.3d 82 (1st Cir. 2014).  In *Bricklayers*, Judge Gorton observed that "to survive summary judgment, plaintiffs must isolate the extent to which the decrease in stock price was caused by the disclosure and not, as the Supreme Court has warned, 'the tangle of [other] factors affecting [stock] price.'"  *Bricklayers & Trowel Trades Int'l Pension Fund v. Credit Suisse First Bos.*, 853 F. Supp. 2d 181, 193 (D. Mass. 2012) (citation omitted).  The First Circuit affirmed that decision in full.  *Bricklayers*, 752 F.3d at 84.  Here, that controlling precedent requires that the Trust identify what part, if any, of Carbonite's July 2019 stock drop was due to correction of the alleged November 2018 misrepresentations regarding VME rather than to other factors, such as the departure of Mr. Ali as CEO and the company's downward revision of its revenue guidance (which was due in substantial part to factors other than VME).  The Trust has not proffered competent evidence that would establish that essential fact.

*Second*, as to falsity and scienter, Defendants do not deny that the First Circuit's decision in this action held that the Trust had pled a plausible Section 10(b) claim based on its allegation that VME "never worked."  *Constr. Indus. & Laborers Joint Pension Tr. v. Carbonite, Inc.*, 22 F.4th 1, 10 (1st Cir. 2021).  But now, after extensive discovery, it is clear that the Trust has not proven (and cannot prove) that allegation with competent evidence.  The Trust has no

---

[1]    Capitalized terms have the meanings ascribed to them in prior briefing.  "Opposition" or "Opp." refers to the Trust's Opposition (Doc. No. 154).  "PX" refers to exhibits to the Trust's declaration in support of its Opposition (Doc. No. 156).

testimony supporting its claim that VME never worked — the fact witnesses confirm that it did — or that Mr. Ali or Mr. Folger were ever told anything like that.  Instead, as Defendants predicted, the Opposition offers up thousands of pages of internal Carbonite documents addressing issues in the development of VME.  That is standard fare in the software industry: building new software is difficult.  But those documents do not show that VME did not work, or that Mr. Ali or Mr. Folger knew (or were reckless in not knowing) that their November 2018 statements about VME were materially false or misleading.

Indeed, even the quote from Mr. Beeler that the Trust puts at the head of its Opposition ("the code quality . . . sucked," TDC Ex. 132) — which it apparently hopes is regarded as a smoking gun — demonstrates the deficiency in the Trust's case.  That remark comes from an April 2019 email sent more than five months after the November 2018 statements were made.  It was not sent to Mr. Ali and Mr. Folger.  Most importantly, it is *not* evidence that *VME did not work*.  As Mr. Beeler acknowledged, by April 2019, VME "was not performing at the level we wanted [it] to."  (TDC Ex. 137, Beeler Dep. Tr. 159:7-14.)  That is true, and at the same time, his testimony that many customers liked the product is also true.  (*Id.* 211:11-212:2.)

In the end, the Trust effectively concedes that failure of proof on its allegation that VME did not work at all and proposes instead that "its theory of falsity . . . should be conformed to the evidence."  (Opp. 5.)  But there has been no motion to amend the complaint here, and in any event the Trust may not amend its complaint to assert a theory that does not state a legally viable claim.  Disappointment with a product's performance cannot retrospectively make a product announcement an act of securities fraud.  *Greebel v. FTP Software, Inc.*, 194 F.3d 185, 207 (1st Cir. 1999) ("upbeat statements of optimism" not actionable).  The Trust's failures of proof on falsity and scienter thus also require entry of summary judgment.

## ARGUMENT

**I.    SUMMARY JUDGMENT IS WARRANTED BECAUSE THE TRUST HAS FAILED TO OFFER EVIDENCE THAT WOULD DISENTANGLE THE ALLEGED FRAUD FROM CONFOUNDING DISCLOSURES**

There were confounding disclosures that contributed to Carbonite's July 2019 stock drop, including, among other things, (i) the surprise departure of Mr. Ali as Carbonite's CEO and (ii) Carbonite's reduction in 2019 revenue guidance for reasons unrelated to VME. Both analyst and media reports made clear that news of Mr. Ali's departure (unrelated to VME) and news of Carbonite's guidance reduction (which was related only in part to VME) adversely impacted Carbonite's stock price. (TD 97, 99, 108, 109.) The Trust does not appear to dispute that those factors affected Carbonite's stock price. Because the Trust has not adduced competent evidence providing a basis to disaggregate the price effects of those confounding disclosures, summary judgment is warranted. *See Bricklayers*, 752 F.3d at 90.

The Trust asserts that it is not required to quantify the purported price impact attributable to the alleged November 2018 misrepresentations[2] at the summary judgment stage, declaring: "How much of the subsequent stock price decline is attributed to VME is a damages question for the jury, not this motion." (Opp. 2, 14.) But it is not the law of this Circuit that juries may be left to speculate about the impact of confounding factors. As Judge Gorton wrote in the *Bricklayers* decision affirmed by the First Circuit:

> [T]o survive summary judgment, plaintiffs must isolate the extent to which the decrease in stock price was caused by the disclosure and not, as the Supreme Court has warned, "the tangle of [other] factors affecting [stock] price" . . . .

---

[2]    In a footnote, the Trust asserts that its claims based on statements other than the November 2018 statements "remain actionable." (Opp. 6 n.7.) For the reasons explained in Defendants' opening brief, they do not. Nonetheless, this Court need not decide that issue to enter summary judgment on loss causation grounds. There is only one putative corrective disclosure in this case. Regardless of what statements about VME are challenged, the Trust has failed to disentangle confounding disclosures from that corrective disclosure.

*Bricklayers*, 853 F. Supp. 2d at 193 (citation omitted).  The Trust does not cite any authority

from this Circuit to the contrary, and even the Second Circuit authority on which the Trust relies

does not support its position.[3]  In *Lattanzio v. Deloitte & Touche LLP*, 476 F.3d 147, 158 (2d

Cir. 2007), the Second Circuit held that at the motion to dismiss stage, a plaintiff must at least

"ascribe some rough proportion of the whole loss to [the alleged] misstatements."  At summary

judgment, however, a plaintiff in the Second Circuit must back up that allegation with competent

---

[3]     Of the 17 cases the Trust cites in support of its loss causation arguments, 16 were decided
outside the First Circuit, and the majority do not address what evidence a plaintiff must offer to
survive a motion for summary judgment (as opposed to, *e.g.*, a motion to dismiss).  *See
Caremark, Inc. v. Coram Healthcare Corp.*, 113 F.3d 645 (7th Cir. 1997) (motion for judgment
on pleadings, addressing summary judgment only in dicta); *Chabot v. Walgreens Boots All., Inc.*,
No. 1:18-CV-2118, 2023 WL 2908827 (M.D. Pa. Mar. 31, 2023) (no apparent issue of
confounding disclosures); *In re Daou Sys., Inc.*, 411 F.3d 1006 (9th Cir. 2005) (motion to
dismiss); *Di Donato v. Insys Therapeutics, Inc.*, 333 F.R.D. 427 (D. Ariz. 2019) (class
certification); *Freudenberg v. E\*Trade Fin. Corp.*, 712 F. Supp. 2d 171 (S.D.N.Y. 2010) (motion
to dismiss); *Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) (affirming grant of
motion to dismiss); *Lattanzio v. Deloitte & Touche LLP*, 476 F.3d 147 (2d Cir. 2007) (affirming
grant of motion to dismiss); *Loc. 703, I.B. of T. Grocery & Food Emps. Welfare Fund v. Regions
Fin. Corp.*, 762 F.3d 1248 (11th Cir. 2014) (class certification); *Nguyen v. Radient Pharms.
Corp.*, 946 F. Supp. 2d 1025 (C.D. Cal. 2013) (class certification); *In re Novatel Wireless Sec.
Litig.*, 830 F. Supp. 2d 996 (S.D. Cal. 2011) (motion for judgment on pleadings); *Hsingching
Hsu v. Puma Biotechnology, Inc.*, No. SACV 15-00865 AG (JCGx), 2018 WL 4945703 (C.D.
Cal. Oct. 5, 2018) (no apparent issue of confounding disclosures); *Baker v. SeaWorld Ent., Inc.*,
423 F. Supp. 3d 878 (S.D. Cal. 2019) (evidence offered disaggregating confounding disclosures);
*Silverman v. Motorola, Inc.*, 798 F. Supp. 2d 954 (N.D. Ill. 2011) (relying on *Caremark* dicta
contrary to *Bricklayers*); *In re Twitter, Inc. Sec. Litig.*, No. 16-cv-05314-JST, 2020 WL 4187915
(N.D. Cal. Apr. 17, 2020); *In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223 (2d Cir. 2016) (no
apparent confounding disclosures); *In re Vivendi Universal, S.A. Sec. Litig.*, 634 F. Supp. 2d 352
(S.D.N.Y. 2009) (discussed in note 4 *infra*).

        The Trust's citations to out-of-Circuit authority that follows a different rule, or to cases
discussing pleading standards, do not excuse its failure to satisfy the *Bricklayers* standard.  *See
In re Sci. Atlanta, Inc. Sec. Litig.*, 754 F. Supp. 2d 1339, 1373 (N.D. Ga. 2010), *aff'd sub nom.
Phillips v. Sci.-Atlanta, Inc.*, 489 F. App'x 339 (11th Cir. 2012) (granting summary judgment
and discussing differences among circuits on this issue, including Seventh Circuit's dicta in
*Caremark*, 113 F.3d at 649-50).  The only case that the Trust cites from the First Circuit was
decided on a motion to dismiss and discusses what a plaintiff must do to *plead* loss causation, not
what a plaintiff must prove to show loss causation at summary judgment, which is the pertinent
inquiry here.  *See Mass. Ret. Sys. v. CVS Caremark Corp.*, 716 F.3d 229 (1st Cir. 2013).

4

evidence disaggregating the confounding disclosures.[4]  The Trust has utterly failed to do so here.

The Trust's suggestion that Defendants should be faulted because their expert — Dr. Paul Gompers of Harvard Business School — has explained that it is not possible to disaggregate the confounding disclosures in this situation with the available information (Opp. 17) is absurd.  (PX 245, Gompers Tr. 99:2-15; 136:10-22.)  The Trust's inability to offer proof of an element of its claim is not "fatal to Defendants' motion":  rather, it is fatal to the Trust's case.

### A.    The Trust Offers No Basis To Disaggregate The Impact Of Mr. Ali's Departure From The Impact Of The Putative Corrective Disclosure

The Trust seeks to explain away Mr. Ali's departure as a confounding disclosure by claiming that there are purported "disputed issues of fact surrounding Ali's departure from Carbonite."  (Opp. 22.)  Not so.  Mr. Ali testified that he left Carbonite voluntarily for another job.  (TDC Ex. 140, Ali Dep. Tr. 217:20-218:4.)  Stephen Munford, a non-party who was the chair of Carbonite's board at the time — and whom the Trust never sought to depose — has confirmed that fact.  (TDC Ex. 144.)  The Trust has adduced no competent evidence to the contrary.  The Trust's contention that this Court should ignore that evidence because it is "self-

---

[4]    *See Atlantica Holdings, Inc. v. Sovereign Wealth Fund Samruk-Kazyna JSC*, 477 F. Supp. 3d 88, 111 (S.D.N.Y. 2020) (granting summary judgment because "Plaintiffs fail to disaggregate losses caused by non-fraud factors"), *aff'd*, No. 20-2805-cv, 2022 WL 151302 (2d Cir. Jan. 18, 2022); *Gordon Partners v. Blumenthal*, No. 02 Civ. 7377 LAK, 2007 WL 1438753, at *2 (S.D.N.Y. May 16, 2007) ("Because the [plaintiffs] have not provided this Court with *any* evidence as to what their true damages are and therefore cannot show loss causation, defendants are entitled to summary judgment . . . .  Summary judgment is the time to 'put up or shut up.'"), *aff'd*, 293 F. App'x 815 (2d Cir. 2008).  The Trust attempts to obscure the Second Circuit's jurisprudence by pointing to an out-of-context quotation from *Vivendi*, 634 F. Supp. 2d at 364, stating:  "In theory, plaintiffs need only prove that they suffered some damage from the fraud."  (Opp. 16.)  The very next page of *Vivendi* makes clear that to show loss causation at summary judgment, plaintiffs must "(1) show a correlation between news of the event and the declines; and (2) *disaggregate the declines or some rough percentage of the declines from losses resulting from other, non-fraud-related events*."  634 F. Supp. 2d at 365 (emphasis added).

serving" (Opp. 7 n.8)[5] only highlights the Trust's own failure to adduce admissible evidence.

The Trust's principal basis for asserting that Mr. Ali was fired is a sentence in a

███████████████████████████████████████████████████████████████████

███████████████ (PX 213.)  This is rank hearsay — the Trust never even sought to take a

deposition from anyone at that firm — and it is indeed the worst kind of hearsay, because it is a

non-party's out-of-court statement ripped from context to create a deliberately misleading

impression.  Staffers at that firm prepared that preliminary draft release as a contingency based

on "speculation as to what the project might entail." (TDC Ex. 147.)  The Trust pointedly did

not point out to this Court the other preliminary documents that ██████████████████████

███████████████████████████████████████████████████████████████████

██████████ (TDC Exs. 148-154.)  A partner of that firm has confirmed that no one at that firm

"was ever told by anyone from Carbonite that Carbonite's Board of Directors ever intended to

terminate Mr. Ali." (TDC Ex. 147.)

None of the other documents proffered by the Trust on this point are sufficient to

create a dispute of material fact relating to Mr. Ali's departure:

(i)    a document referencing hearsay speculation by a customer as to the reasons for Mr. Ali's departure (PX 233);

(ii)    ████████████████████████████████████████████████ (PX 222);

(iii)    an email from Carbonite's head of marketing about press strategy, which does not suggest Mr. Ali was fired (PX 227) — to the contrary, that individual testified at his deposition that Mr. Ali was not fired (*see* PX 241, Guadagno Dep. Tr. 157:21-

---

5   This is not a case where Defendants are offering testimony contradicted by video (as in *Khadda v. Target Corp.*, No. 15-11542-LTS, 2016 WL 3976567 (D. Mass. July 22, 2016)) or where parties are offering contradictory testimony (as in *Schultz v. American Airlines, Inc.*, 449 F. Supp. 3d 1301 (S.D. Fla. 2020), *aff'd*, 855 F. App'x 656 (11th Cir. 2021)).  Here, both party and non-party witnesses alike have consistently provided testimony that supports Defendants' defenses and undermines the Trust's claims — as evidenced by the meager references to testimony in the Opposition, which cites just three items of fact witness testimony.

158-19);

(iv)    two analyst reports that offer hearsay speculation that Mr. Ali might have left because of Board dissatisfaction, with no reference to VME (TD 103, 107); and

(v)     (PX 225.)

Speculation from the Trust's putative expert, Mr. Steinholt, that ██████████████ ████████████████████████████████████████████████████ ██████████████████████████ is unsupported and contradicted by the record.  (TDC 143 ¶ 42.)  The evidence shows Mr. Ali left voluntarily for a new opportunity. (TDC Ex. 140, Ali Dep. Tr. 217:20-218:4; TDC Ex. 147.)  Mr. Steinholt's speculation ██████ ██████ is not competent evidence.[6]

Even if the Trust had raised a genuine factual dispute as to whether Mr. Ali was fired — and it has not — that would still not exclude Mr. Ali's departure as a confounding disclosure.  To do that, the Trust would need to offer evidence not just that Mr. Ali was fired but that he was fired because of VME, such that the impact of his departure on the stock price could be plausibly attributed to the corrective disclosure about VME.  The Trust cannot show that.

**B.    The Trust Offers No Basis To Disaggregate
The Impact Of The Reduction In Revenue Guidance Unrelated To VME
From The Impact Of The Putative Corrective Disclosure Regarding VME**

The Trust's failure to offer any evidentiary basis for disentangling the impact of

Mr. Ali's departure on the company's stock price from the impact of the putative corrective

---

[6]    The Trust asserts that all criticism of Mr. Steinholt's conclusions must be saved "for cross-examination at trial."  (Opp. 16.)  While Defendants certainly intend to challenge Mr. Steinholt's opinions if this action proceeds, Defendants may do so now as well.  The Trust must point to "competent evidence" "to stave off summary judgment."  *Tropigas de P.R. Inc. v. Certain Underwriters at Lloyd's of London*, 637 F.3d 53, 56 (1st Cir. 2011) (citation omitted).  It cannot immunize incompetent speculation from criticism by including it in an expert's report.

disclosure about VME, standing alone, requires entry of summary judgment against the Trust.

But there were other confounding disclosures regarding Carbonite on July 25, 2019, and the

Trust also fails to offer a basis for disaggregating the impact of those disclosures:

(i)     The announcement and discussion of Carbonite's Second Quarter 2019 financial results (TD 91 at 13);

(ii)    The announcement and discussion of the Company's reduction in 2019 revenue guidance, at least in part, for reasons unrelated to VME (TD 94 at 13);

(iii)   Discussion of Carbonite's ongoing integration with Webroot, a company Carbonite had recently acquired (*see, e.g.*, *id.* at 5);

(iv)    Discussion of recent personnel changes within Carbonite, including the creation of a new Chief Revenue Officer role due in part to Carbonite "recogniz[ing] that we needed to make a change in the go-to-market leadership" (*id.* at 19); and

(v)     Discussion of a different new product, "Carbonite Endpoint 360" (*id.* at 5).

The Trust waves away these confounding disclosures, asserting that its putative expert Mr.

Steinholt ██████████████████████████████████████████████████████

███████████    (Opp. 15.)   That analysis is entirely conclusory and cannot be relied upon to

avoid summary judgment.

In particular, the Trust seeks to capitalize on this Court's July 14, 2023 Order on

class certification (Doc. No. 148), asserting that this Court "expressly rejected" the notion that

"Carbonite's revenue guidance reduction and the withdrawal of VME are not related" because

this Court found "the lowering of the 2019 guidance *based on the VME withdrawal* as evidence

bearing on the price impact issue." (Opp. 19-21 (emphasis omitted); Doc. No. 148 at 20 n.9

(emphasis added).)  This misses the mark: at the class certification stage, this Court assessed

whether or not there was *any* overlap between the guidance reduction and VME withdrawal.  But

to show that there is competent evidence of loss causation, the Trust is required to offer a factual

basis for disentangling the confounding disclosures.  This Court's Order does not help the Trust

in that regard.  Carbonite made clear during its July 25, 2019 earnings call that just one-third of

the guidance reduction was related to VME:

> Analyst:  I mean the $20 million delta for the year on the revenue guide, was your expectation that [VME] was going to do that well?  Or is there more to [the guidance reduction] than that product?
>
> Mr. Folger:  Yes . . . it's a very good question.  And no, [the guidance reduction] *is not entirely focused on the virtual server product*. . . .
>
> Analyst:  [C]an you at least give us the revenue component you're pulling out for that piece?
>
> Mr. Folger:  Yes . . . . I think of the takedown, *maybe a third of it* is associated with the product issue.  I think our belief in really wanting to ensure that we've got the right baseline around pipeline conversion and large deals is probably another third of it.

(TD Ex. 94 at 9, 13 (emphasis added).)

Undeterred, the Trust asserts that, according to Mr. Steinholt, ▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮    (Opp. 16 n.18.)  That too is wrong.  An analyst specifically asked why

Carbonite faced issues with conversion and large deals.  Mr. Folger's answer made clear that

these issues had nothing to do with VME:

> [W]e saw our conversion rates running a little bit lower in the second quarter than the first as well.  So to me, it didn't feel as though we have really solved some of the go-to-market challenges that we had seen previously . . . .  [O]n the big deal side, this is why we've not wanted to be overly dependent on it.  As is the case with a lot of companies, deals push from quarter to quarter, they get spread out, and there's just inherently challenges in predicting how those deals will come in.

(TD 94 at 9.)  The Trust's conclusory assertion that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  is contradicted by the actual, specific evidence in

the record, and cannot be credited to save the Trust from the entry of summary judgment.  (*See*

*id.*)  Like news of Mr. Ali's departure, the news of Carbonite's 2019 revenue guidance

9

reduction — to the extent that it was unrelated to VME — was a confounding disclosure that the

Trust was required to disaggregate from the purported corrective disclosure.  It has not done so.

**II.     SUMMARY JUDGMENT IS WARRANTED
BECAUSE THERE IS NO COMPETENT EVIDENCE THAT
THE NOVEMBER 2018 STATEMENTS WERE ACTIONABLY FALSE —
BECAUSE VME DID INDEED WORK — AND THERE IS NO COMPETENT
<u>EVIDENCE THAT THOSE STATEMENTS WERE MADE WITH SCIENTER</u>**

        **A.     The Trust's Concession That VME Was A Functional Product Is Fatal To
Its Claim, And It Cannot Wave Away That Failure Of Proof By Declaring
<u>That Its "Theory Of Falsity" Is Now "Conformed" To The Discovery Record</u>**

The Trust asserts that the First Circuit "has already rejected Defendant's falsity

arguments" (Opp. 8) and "already found that the CAC alleged 'a ***very strong*** inference' of

scienter as to both Ali and Folger."  (Opp. 10 (adding emphasis to *Carbonite*, 22 F.4th at 9).)

But that ruling[7] was predicated on the complaint's allegations that "as of November 1 VME

could not back up virtual environments," 22 F.4th at 7, exhibited a "basic inability to function,"

*id.* at 8, "was not functional," *id.* at 9, "has never once done what it is supposed to do," had

"produced not one successful backup," and simply "did not work yet." *Id.* at 10.  The Trust's

boast that discovery has "corroborated" the complaint's pleading-stage allegations (Opp. 10) is

thus false.  The witnesses deposed by the Trust testified that the product worked,[8] and

Carbonite's documents (*e.g.*, TDC Exs. 124, 126) confirmed that.[9]  Even the Trust's own

---

    [7]    The First Circuit's December 2021 opinion issued during the highly-publicized fraud trial of the founder of Theranos, a company which touted an advanced blood-testing device that ultimately proved to be wholly fictitious.  Here, however, the Trust's very similar theory about VME lacks factual foundation: VME was always a real product.

    [8]    *See, e.g.*, TDC Ex. 137, Beeler Dep. Tr. 210:12-211:21; TDC Ex. 139, Mohan Dep. Tr. 160:4-161:3; TDC Ex. 138, Sreenivasan Dep. Tr. 365:8-24; TDC Ex. 140, Ali Dep. Tr. 195: 5-11.

    [9]    The Trust's assertion that there is a "factual dispute" as to whether VME *ever* worked is baseless.  (Opp. 5.)  There is ample evidence VME worked for customers (*e.g.*, TDC Ex. 126) when the November 2018 statements were made.  A report from April 2019 that many customers were "having problems" does not show otherwise.  (TDC Ex. 132, cited at Opp. 5.)

putative confidential witnesses did not support the Trust's allegations.  The Trust's theory that VME was never a "functional" product has no support in the discovery record.[10]

Remarkably, the Opposition effectively concedes that failure of proof as to falsity, suggesting that the Trust's "allegations, including its theory of falsity, can and should be conformed to the evidence developed in discovery."  (Opp. 5.)  But there has been no motion to amend the complaint and any such motion would now be untimely.  And certainly the Trust could not amend its "theory of falsity" to adopt a theory of liability that fails to state a claim as a matter of law.[11]  What the Trust would propose as its new "theory of falsity" is nothing more than a series of business school criticisms of VME's development:  "corner cutting" (TDC 119), "production concerns" (PX 87), "performance issues" (PX 103), a possible "competitive gap" (PX 113 (cited at Opp. 3-4)), "limited" ability to test (PX 159), a putative "conflict of interest" in testing arrangements (PX 73) (cited at Opp. 7-8).  These contentions, justified or not, cannot give rise to a claim for securities fraud.  *Washtenaw Cnty. Emps' Ret. Sys. v. Princeton Rev., Inc.*, No. CIV. A. 11-11359-RGS, 2012 WL 727125, at *8 (D. Mass. Mar. 6, 2012) (dismissing securities claim; "'mismanagement' is not a cognizable claim under the securities laws").[12]

The First Circuit has repeatedly held — both before and after its decision in this

---

[10]   The Trust misleadingly quotes *In re Stone & Webster, Inc., Sec. Litig.*, 414 F.3d 187, 209 (1st Cir. 2005) (cited at Opp. 2) to suggest that falsity questions must always be left for the jury. The opinion continues, however: "A court is thus free to find, as a matter of law, that a statement was not false, or not materially false, only if a jury could not reasonably find falsity or materiality on the evidence presented."  *Id.*  That is the situation presented here.

[11]   *See, e.g.*, *LSI Design & Integration Corp. v. Tesaro, Inc.*, No. CV 18-12352-LTS, 2020 WL 1027773 (D. Mass. Mar. 3, 2020) (Sorokin, J.) (denying leave to amend securities complaint where proposed amendment would be futile under the PSLRA's heightened pleading standards).

[12]   *Accord Bank of Eng. v. Lonoke Cnty. Prop. Owners' Multipurpose Improvement Dist. No. 10*, No. 4:13-CV-00268-BRW, 2013 WL 12110115, at *3 (E.D. Ark. Aug. 15, 2013) (dismissing securities claim).  "Mismanagement, breaches of fiduciary duties, or failures to perform, standing alone, are not securities fraud.  In other words, the securities laws do not provide a remedy to every investor whose chicks don't hatch."  *Id.*

11

action — that optimistic statements regarding a product's prospects cannot support an actionable claim for securities fraud. *Greebel*, 194 F.3d at 190, 207 (statements that company would "lead the market" and that its "new products have been well received" not actionable).[13] Carbonite itself had expressly warned investors that new software products could face quality problems.[14] Accordingly, the First Circuit ruled that the Trust's complaint sufficiently pled falsity of the November 2018 statements "compared to the complaint's contention that as of November 1 VME could not back up virtual environments," 22 F.4th at 7, *not* relative to some measure of the quality of a functional VME product. The Trust's concession that the facts do not support the theory of liability that the First Circuit upheld requires the entry of summary judgment.[15]

### B. The Trust's Failure Of Proof On Scienter Also Requires The Entry Of Summary Judgment

The Trust's concession that VME was a functioning product also presents

---

[13] *Accord Thant v. Karyopharm Therapeutics Inc.*, 43 F.4th 214, 223 (1st Cir. 2022) ("vague optimism about a product's future" not actionable); *Yan v. ReWalk Robotics Ltd.*, 973 F.3d 22, 28 (1st Cir. 2020) (statements that new product was a 'breakthrough product,' with 'compelling clinical data'" not actionable); *Glassman v. Computervision Corp.*, 90 F.3d 617, 635 (1st Cir. 1996) (statement that software was likely "to broaden the number of customers in existing accounts as well as attract new customers" not actionable). The cases cited by the Trust (Opp. 9-10) for the proposition that objectively false statements that go far beyond optimism may then be actionable are distinguishable on their facts and thus not informative here. *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175 (2015) (remanding issue for further consideration); *Smilovits v. First Solar Inc.*, 119 F. Supp. 3d 978, 1005 (D. Ariz. 2015) (statement about status of remediation process objectively false)*; SEC v. True N. Fin. Corp.*, 909 F. Supp. 2d 1073, 1109 (D. Minn. 2012) (no basis for optimism when "nearly all of the assets … that had been generating interest cash flows had been eliminated"); *In re Reliance Sec. Litig.*, 135 F. Supp. 2d 480 (D. Del. 2001) (loss reserve materially undervalued).

[14] "The software applications underlying our solutions are inherently complex and may contain material defects or errors, particularly when first introduced or when new versions or enhancements are released." (TD Ex. 2 at 23 (Carbonite's March 12, 2018 Form 10-K); *see also* TD Ex. 26 at 46 (Carbonite's Nov. 1, 2018 Form 10-Q, incorporating that disclosure).)

[15] *Pelletier v. Endo Int'l PLC*, 338 F.R.D. 446 (E.D. Pa. 2021) (cited at Opp. 5), a class certification decision, does not hold that a complaint may be amended to pursue a theory of liability that is not legally viable.

insuperable factual challenges to the scienter element of its fraud claim.  The Trust offers *no* fact witness testimony that supports its allegations of scienter.  Instead, as Defendants predicted, the Trust has offered a blizzard of documents showing that various Carbonite personnel who worked on VME offered critical comments at various points in time in the months leading up to the product's launch and over the months thereafter.  It is not at all surprising that such documents would be generated in the course of work on any complex software product, and those documents do not help the Trust here:

*First*, the statements challenged here were made on November 1, 2018 and November 15, 2018.  Of 239 exhibits that the Trust submitted with its Opposition, 177 (*i.e.*, about three-quarters) are more than one month removed from the challenged statements, and 146 are more than two months removed.[16]  They reflect earlier stages of VME's development or its post-release performance, and do not shed light on what Mr. Ali and Mr. Folger knew about VME in November 2018.  As Carbonite's former head of engineering Mr. Mohan testified, VME's status frequently changed:  "We ha[d] 50 engineers working on it.  So things that show up can be very quickly turned around."  (TDC Ex. 139, Mohan Dep. Tr. 126:21-23.)

*Second*, documents drawn from throughout the company cannot demonstrate *what Mr. Ali or Mr. Folger* personally thought in November 2018.  Of the 183 communications (emails, chats or letters) submitted by the Trust, Mr. Ali or Mr. Folger are included as senders or recipients on just 43.  Mr. Ali and Mr. Folger were not included on the more colorful emails to which the Trust points, such as those referencing "corner cutting" or a "death march."  (Opp. 3.) And just 13 of those 43 documents were sent within a month of the November 2018 statements.[17]

---

[16]    Per the dates in the Trust's declaration (Doc. No. 156), excluding PX 240-246.

[17]    One of the 13 documents referenced (PX 115) does not list Mr. Ali or Mr. Folger as a recipient on its face but is included in the interest of completeness.

***Third***, the handful of remaining documents — *i.e.*, the 13 documents that went to Mr. Ali or Mr. Folger, and 5 presentations or other documents that Mr. Ali or Mr. Folger *may have* seen — do not show falsity or scienter when examined individually:

(i)     PX 76 states only that "Support volume is very low" with no further explanation. PX 77 shows only that Carbonite's former head of sales, Mr. Mellinger, received the same update on "support volume."

(ii)    PX 82 shows only that Mr. Ali was at one point told that a prospective customer expressed a concern about one aspect of VME during a roadshow (a "larger than necessary data footprint").

(iii)   PX 84 reflects that Mr. Mohan resigned on October 15, 2018 "[d]ue to extenuating circumstances with my family." It does not show falsity or scienter.

(iv)    PX 86 is Carbonite's press release announcing the official launch of VME. It is not evidence of falsity or scienter.

(v)     PX 97 is a presentation regarding other Carbonite products that references VME only briefly, and it is not clear whether Mr. Ali or Mr. Folger ever saw it.

(vi)    PX 98 and PX 115 relate to a later version of VME (1.1) that was not released until *after* the challenged statements.

(vii)   The Trust points to PX 101, PX 114, and PX 117 to show that Mr. Ali and Mr. Folger periodically spoke with other executives, sometimes about VME. That is undisputed. The documents do not show that those discussions were ever inconsistent with Mr. Ali's and Mr. Folger's November 2018 statements.

(viii)  The Trust likewise points to PX 104 for the same purpose. To the extent the Trust suggests the document shows Mr. Ali or Mr. Folger were deeply personally involved in VME's development, the document shows that is not correct: rather, Mr. Ali and Mr. Folger reasonably deferred to their engineering colleagues.

(ix)    The Trust points to PX 105 and PX 127 only to show certain reporting relationships in Carbonite's corporate organizational chart.

(x)     The Trust points to PX 110 to contend that Carbonite wrongly gave a single individual responsibilities related to both developing and testing VME. The Trust similarly points to PX 116 to contend that certain VME testing was "done manually." Even if the Trust contends that those are undesirable business practices, they are not proof of fraud.

(xi)    The Trust points to PX 112 to show that the purpose of a backup product is to protect information. It is not evidence of falsity or scienter.

14

(xii)     The Trust points to PX 113 to contend that Mr. Ali was aware that VME had certain "competitive gaps." The document actually confirms that Mr. Ali deferred to his engineering colleagues on technical issues and believed that overall, VME was a competitive product. In the document, Mr. Ali writes regarding technical matters, "I'll leave this to Jamie/Rob to determine," and "I will leave this to Jamie." With regard to VME's competitive position, he writes: "I would think VM Edition has very good storage ratio[s]," and "I hope our partners can see that we are heading down a path to address most of their needs, and then will invest with us on the path rather than waiting until we have everything on the list."

In sum, the Trust's blizzard of documents does not create a dispute of material fact with respect to either falsity or scienter.[18] Summary judgment is thus warranted on both of those grounds.

## CONCLUSION

For the foregoing reasons, Defendants' Motion should be granted.

---

[18]    The plethora of cases that the Trust cites in putative support of its falsity and scienter arguments do not help the Trust stave off summary judgment on those issues. Indeed, the Trust does not substantively rely on a single summary judgment case from this Circuit on those issues.

The Trust cites 41 new cases in its Opposition, generally with little explanation or analysis. Twenty-five of those cases are addressed in notes 3, 5, 10, 13 and 15 *supra*. Twelve of those cases appear to be cited only for general propositions of law or procedure. *Akerson v. Pritzker*, No. 12-10240-PBS, 2021 WL 2295522 (D. Mass. June 4, 2021) (civil rights action); *Avalanche IP, LLC v. FAM, LLC*, No. 20-cv-10102-ADB, 2022 WL 3597411 (D. Mass. Aug. 23, 2022) (contract action); *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) (summary judgment standard); *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993) (expert testimony standard)*; SEC v. EagleEye Asset Mgmt., LLC*, 975 F. Supp. 2d 151 (D. Mass. 2013) (enforcement action); *SEC v. Ficken*, 546 F.3d 45 (1st Cir. 2008) (same); *Knous v. Broadridge Fin. Sols., Inc.*, No. 19-11973-LTS, 2020 WL 2747821 (D. Mass. May 27, 2020) (employment action); *SEC v. Lemelson*, 532 F. Supp. 3d 30 (D. Mass. 2021) (enforcement action); *Metro. Life Ins. Co. v. Beard*, 321 F. Supp. 3d 181 (D. Mass. 2018) (life insurance action); *SEC v. Mozilo*, No. CV 09-3994-JFW (MANx), 2009 WL 3807124 (C.D. Cal. Nov. 3, 2009) (enforcement action); *Nat'l Amusements, Inc. v. Town of Dedham*, 43 F.3d 731 (1st Cir. 1995) (First Amendment action); *Sands v. Ridefilm Corp.*, 212 F.3d 657 (1st Cir. 2000) (employment action).

Of the remaining four cases: *Abu Dhabi Com. Bank v. Morgan Stanley & Co.*, 888 F. Supp. 2d 431 (S.D.N.Y. 2012) involves state law fraud claims. Three did not address summary judgment and are otherwise not helpful to the Trust. *In re Smith & Wesson Holding Corp. Sec. Litig.*, 604 F. Supp. 2d 332 (D. Mass. 2009) (denying in part a motion to dismiss claims that were later dismissed at summary judgment); *Special Situations Fund III, L.P. v. Am. Dental Partners, Inc.*, 775 F. Supp. 2d 227 (D. Mass. 2011) (addresses pleading standard for scienter, not the evidence needed to prove scienter); *Washtenaw Cnty. Emps.' Ret. Sys. v. Talbots, Inc.*, No. 11-10186-NMG, 2013 WL 5348569 (D. Mass. Sept. 23, 2013) (granting motion to dismiss).

Dated: September 11, 2023
  Boston, Massachusetts

Respectfully submitted,

*/s/ James R. Carroll*
James R. Carroll (BBO #554426)
Kurt Wm. Hemr (BBO #638742)
Alisha Q. Nanda (BBO #657266)
Nigel Tamton (BBO #696396)
SKADDEN, ARPS, SLATE,
 MEAGHER & FLOM LLP
500 Boylston Street
Boston, Massachusetts 02116
(617) 573-4800
james.carroll@skadden.com
alisha.nanda@skadden.com
kurt.hemr@skadden.com
nigel.tamton@skadden.com

*Counsel for Defendants*
*Carbonite, Inc., Mohamad S. Ali,*
*and Anthony Folger*

16