UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RUBEN A. LUNA, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>CARBONITE, INC., et al.,<br><br>Defendants. | No. 1:19-cv-11662-LTS<br>**(Consolidated)**<br><br><u>CLASS ACTION</u><br><br>MEMORANDUM OF LAW IN SUPPORT OF LEAD COUNSEL'S MOTION FOR ATTORNEYS' FEES AND LITIGATION EXPENSES, CHARGES AND COSTS AND AWARD TO LEAD PLAINTIFF PURSUANT TO 15 U.S.C. §78u-4(a)(4) |

4890-0791-6210.v1

**TABLE OF CONTENTS**

**Page**

I. PRELIMINARY STATEMENT ...................................................................................1

II. HISTORY AND BACKGROUND OF THE LITIGATION.............................................3

III. ARGUMENT...............................................................................................................3

    A. Lead Counsel Is Entitled to an Award of Attorneys' Fees from the Common Fund ..........................................................................................................3

    B. The Court Should Award Attorneys' Fees Using the Percentage-of-the Fund Method..........................................................................................................4

    C. Factors Considered by Courts in the First Circuit Confirm that the Requested Fee Is Fair and Reasonable.......................................................................6

        1. The Amount of the Recovery and the Number of Class Members Who Will Benefit From the Settlement Support the Requested Fee ...........7

        2. The Skill and Experience of Counsel Support the Requested Fee...............8

        3. The Complexity and Duration of the Litigation Support the Requested Fee .........................................................................................9

        4. The Risk of Non-Payment Was Extremely High in This Case..................11

        5. The Amount of Time Devoted to the Litigation by Lead Counsel Supports the Requested Fee ...................................................................12

        6. Awards in Similar Cases Support the Requested Fee ...............................13

        7. Public Policy Considerations Support the Requested Fee ........................13

        8. The Endorsement of Lead Plaintiff and the Reaction of the Class Support the Requested Fee ...................................................................14

    D. The Expenses Incurred Are Reasonable and Were Necessary to Achieve the Benefit Obtained ..................................................................................15

    E. The Award to Lead Plaintiff Pursuant to 15 U.S.C. §78u-4(a)(4) of the PSLRA Is Reasonable..................................................................................16

IV. CONCLUSION...........................................................................................................18

4890-0791-6210.v1

**TABLE OF AUTHORITIES**

**Page**

**CASES**

*Ahearn v. Credit Suisse First Bos. LLC*,
  No. 03-CV-10956 (JLT) (D. Mass. June 7, 2006) ....................................................................16

*Anwar v. Fairfield Greenwich Ltd.*,
  2012 WL 1981505 (S.D.N.Y. June 1, 2012) ...........................................................................15

*Barbosa v. Cargill Meat Sols. Corp.*,
  297 F.R.D. 431 (E.D. Cal. 2013) .............................................................................................16

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
  472 U.S. 299 (1985)..............................................................................................................4, 14

*Bezdek v. Vibram USA Inc.*,
  79 F. Supp. 3d 324 (D. Mass. 2015),
  *aff'd*, 809 F.3d 78 (1st Cir. 2015) .........................................................................................8, 14

*Blum v. Stenson*,
  465 U.S. 886 (1984)....................................................................................................................4

*Boeing Co. v. Van Gemert*,
  444 U.S. 472 (1980)....................................................................................................................3

*City of Providence v. Aeropostale, Inc.*,
  2014 WL 1883494 (S.D.N.Y. May 9, 2014), *aff'd sub nom.*
  *Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015)..............................................................9

*Cohen v. Brown Univ.*,
  2001 WL 1609383 (D.N.H. Dec. 5, 2001)................................................................................12

*Crandall v. PTC Inc.*,
  2017 U.S. Dist. LEXIS 217581 (D. Mass. July 14, 2017).........................................................6

*Dahhan v. Ovascience, Inc.*,
  No. 1:17-cv-10511-IT (D. Mass. Dec. 20, 2022)..................................................................5, 16

*Duhaime v. John Hancock Mut. Life Ins. Co.*,
  989 F. Supp. 375 (D. Mass. 1997) .........................................................................................5, 7

*Ford v. Takeda Pharms. U.S.A., Inc.*,
  2023 WL 3679031 (D. Mass. Mar. 31, 2023)...........................................................................15

4890-0791-6210.v1

**Page**

*Gordan v. Mass. Mut. Life Ins. Co.*,
  2016 WL 11272044 (D. Mass. Nov. 3, 2016) .....................................................................5, 12

*Hensley v. Eckerhart*,
  461 U.S. 424 (1983).................................................................................................................7

*Hicks v. Stanley*,
  2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) ..........................................................................4

*Hill v. State St. Corp.*,
  2015 WL 127728 (D. Mass. Jan. 8, 2015) ...................................................................... *passim*

*Hosp. Auth. of Metro. Gov't of Nashville v. Momenta Pharms., Inc.*,
  2020 WL 3053468 (M.D. Tenn. May 29, 2020)........................................................................6

*In re 3D Sys. Sec. Litig.*,
  2024 WL 50909 (E.D.N.Y. Jan. 4, 2024) .................................................................................6

*In re Cendant Corp. Sec. Litig.*,
  404 F.3d 173 (3d Cir. 2005)......................................................................................................5

*In re Evergreen Ultra Short Opportunities Fund Sec. Litig.*,
  2012 WL 6184269 (D. Mass. Dec. 10, 2012)..........................................................................16

*In re Fidelity/Micron Sec. Litig.*,
  167 F.3d 735 (1st Cir. 1999)...................................................................................................15

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
  2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010).......................................................................9, 13

*In re GE ERISA Litig.*,
  No. 1:17-cv-12123-IT (D. Mass. Mar. 8, 2024) .......................................................................5

*In re Glob. Crossing Sec. & ERISA Litig.*,
  225 F.R.D. 436 (S.D.N.Y. 2004) ...........................................................................................15

*In re Health Ins. Innovations Sec. Litig.*,
  2021 WL 1341881 (M.D. Fla. Mar. 23, 2021) ........................................................................13

*In re J.P. Morgan Stable Value Fund ERISA Litig.*,
  2019 WL 4734396 (S.D.N.Y. Sept. 23, 2019)..........................................................................6

*In re Puerto Rican Cabotage Antitrust Litig.*,
  815 F. Supp. 2d 448 (D.P.R. 2011)........................................................................................6, 7

4890-0791-6210.v1

**Page**

*In re Relafen Antitrust Litig.*,
  231 F.R.D. 52 (D. Mass. 2005)...................................................................6, 12

*In re Thirteen Appeals Arising Out of*
  *San Juan Dupont Plaza Hotel Fire Litig.*,
  56 F.3d 295 (1st Cir. 1995)...................................................................3, 4, 5, 12

*In re TJX Cos. Retail Sec. Breach Litig.*,
  584 F. Supp. 2d 395 (D. Mass. 2008) ...................................................................6

*In re Tyco Int'l, Ltd. Multidistrict Litig.*,
  535 F. Supp. 2d 249 (D.N.H. 2007)...................................................................3, 4, 12, 13

*In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*,
  364 F. Supp. 2d 980 (D. Minn. 2005)...................................................................8

*Machado v. Endurance Int'l Grp. Holdings, Inc.*,
  2019 WL 4409217 (D. Mass. Sept. 13, 2019) ...................................................................5

*Medoff v. CVS Caremark Corp.*,
  2016 WL 632238 (D.R.I. Feb. 17, 2016)...................................................................6, 11, 13

*Mo. v. Jenkins by Agyei*,
  491 U.S. 274 (1989)...................................................................12

*Plymouth Cnty. Ret. Sys. v. Patterson Cos., Inc.*,
  2022 WL 2093054 (D. Minn. June 10, 2022)...................................................................6

*Redwen v. Sino Clean Energy, Inc.*,
  2013 WL 12303367 (C.D. Cal. July 9, 2013)...................................................................9

*Roberts v. TJX Cos., Inc.*,
  2016 WL 8677312 (D. Mass. Sept. 30, 2016) ...................................................................6, 11

*Schwartz v. TXU Corp.*,
  2005 WL 3148350 (N.D. Tex. Nov. 8, 2005)...................................................................9

*Souss v. Banco Santander S.A. & Santander Bancorp.*,
  2011 WL 13350165 (D.P.R. June 9, 2011)...................................................................13

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
  551 U.S. 308 (2007)...................................................................4

- iv -

**Page**

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
    396 F.3d 96 (2d Cir. 2005)............................................................................................5

*Zametkin v. Fidelity Mgmt. & Rsch. Co.*,
    No. 1:08-cv-10960-MLW (D. Mass. May 11, 2012).................................................16

## STATUTES, RULES, AND REGULATIONS

15 U.S.C.
    §78u-4(a)(4) .........................................................................................................1, 3, 16
    §78u-4(a)(6) ..................................................................................................................5

## SECONDARY AUTHORITIES

H.R. Conf. Reg. No. 104-369 (1995),
    *reprinted in* 1995 U.S.C.C.A.N. 730 (1995)............................................................17

4890-0791-6210.v1

Court-appointed Lead Counsel, Robbins Geller Rudman & Dowd LLP ("Robbins Geller"), respectfully submits this memorandum of law in support of its application for (i) an award of attorneys' fees of 33-1/3% of the $27,500,000 Settlement Amount; (ii) an award of $475,395.89 for litigation expenses incurred in prosecuting this action; and (iii) payment of $14,000 to Lead Plaintiff Construction Industry and Laborers' Joint Pension Trust ("Lead Plaintiff") pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA").[1]

## I.    PRELIMINARY STATEMENT

Lead Counsel negotiated this $27,500,000 settlement with Defendants, which will be distributed to eligible Class Members after deduction of Court-approved fees and expenses. This substantial and certain recovery obtained for the Class was achieved through the efforts, skill, experience, and effective advocacy of Lead Counsel over the last four-plus years. As explained in contemporaneously filed submissions,[2] the efforts of counsel included:

- Conducting a comprehensive investigation of the events underlying the claims alleged in the Litigation, including, *inter alia*, a review of publicly available information regarding the Defendants;

- Researching the applicable law with respect to Lead Plaintiff's claims and Defendants' anticipated defenses;

- Drafting the CAC;

---

[1]    This motion is also made on behalf of Local Counsel, Hutchings Barsamian Mandelcorn, LLP.

[2]    Submitted herewith in support of approval of the proposed Settlement are: (i) the Memorandum of Law in Support of Lead Plaintiff's Motion for Final Approval of Class Action Settlement and Approval of Plan of Allocation ("Final Approval Brief"); and (ii) the Declaration of Robert D. Gerson in Support of: (1) Lead Plaintiff's Motion for Final Approval of Class Action Settlement and Approval of Plan of Allocation; and (2) Lead Counsel's Motion for Attorneys' Fees and Litigation Expenses, Charges and Costs and Award to Lead Plaintiff Pursuant to 15 U.S.C. §78u-4(a)(4) ("Gerson Decl."), along with its exhibit thereto. Unless otherwise defined herein, all capitalized terms are defined in the Stipulation of Settlement dated January 31, 2024 (the "Stipulation") (ECF 175), or in the Gerson Decl.

4890-0791-6210.v1

- Opposing Defendants' motion to dismiss;

- Successfully appealing the Court's granting of Defendants' motion to dismiss;

- Requesting, negotiating for, and reviewing hundreds of thousands of pages of non-public documents, serving multiple discovery requests, and responding to Defendants' discovery requests;

- Participating in 16 fact and expert witness depositions;

- Obtaining class certification and opposing Defendants' motion to decertify the Class;

- Consulting with experts who provided multiple reports and deposition testimony;

- Opposing Defendants' motion for summary judgment;

- Preparing a detailed mediation statement, and participating in a formal arm's-length mediation process before a highly experienced mediator; and

- Negotiating and documenting the Settlement.

*See generally* Gerson Decl.

Lead Plaintiff's Counsel's efforts to date have been without compensation of any kind for their successful prosecution of this case, which required them to devote over 14,860 hours of billable time, and risk more than $475,300 in litigation expenses. The recovery of any fees or expenses has been wholly contingent upon the result achieved. Thus, in accordance with fees awarded in similar actions in this Circuit and throughout the country, Lead Counsel seeks a percentage fee of 33-1/3% of the Settlement Fund. As discussed herein and in the Gerson Decl., the method of compensating counsel and the amount requested are justified in light of the substantial time and labor expended by Lead Counsel; the substantial recovery obtained for the Class; the quality of Lead Counsel's representation; the significant risks presented in the prosecution and settlement of this securities class action under the PSLRA on a contingent basis; the magnitude and complexity of the Litigation; and the professional standing of both Lead Counsel and Defendants' Counsel.

4890-0791-6210.v1

Counsel also seek payment of $475,395.89 in expenses incurred in prosecuting the action. As discussed herein, the expenses requested are reasonable in amount and were necessarily incurred for the successful litigation of the case. Finally, Lead Plaintiff seeks $14,000.00 pursuant to 15 U.S.C. §78u-4(a)(4) for its efforts representing the Class in the Litigation. The modest award is reasonable and should be awarded.

The requested amounts were disclosed in the Court-approved notices that were provided or made available to the Class. To date, no Class Member has objected to any of these requests.[3]

## II.   HISTORY AND BACKGROUND OF THE LITIGATION

To avoid repetition, Lead Counsel respectfully refers the Court to the accompanying Gerson Decl. for a detailed discussion of the factual background and procedural history of the Litigation, the efforts undertaken by Lead Plaintiff and Lead Plaintiff's Counsel during the course of the Litigation, the risks of continued litigation, and other factors supporting the fee and expense request.

## III.   ARGUMENT

### A.   Lead Counsel Is Entitled to an Award of Attorneys' Fees from the Common Fund

The U.S. Supreme Court and the First Circuit have long recognized that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *see also In re Thirteen Appeals Arising Out of San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 305 (1st Cir. 1995); *In re Tyco Int'l, Ltd. Multidistrict Litig.*, 535 F. Supp. 2d 249, 265 (D.N.H. 2007). Awards of reasonable attorneys' fees from a "common fund" provide compensation that "encourages capable plaintiffs' attorneys to aggressively litigate complex, risky

---

[3]   The objection deadline is April 24, 2024. If any timely objections are received, Lead Counsel will address them in a reply memorandum due no later than May 8, 2024.

4890-0791-6210.v1

cases like this one" and spread the costs of the litigation "proportionately among those benefitted by the suit." *Id.*

The Supreme Court also has emphasized that private securities actions, such as the instant action, are "an essential supplement to criminal prosecutions and civil enforcement actions" brought by the U.S. Securities and Exchange Commission ("SEC"). *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 313 (2007); *accord Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985) (noting private securities actions "provide 'a most effective weapon in the enforcement' of the securities laws and are 'a necessary supplement to [SEC] action'").[4] Compensating plaintiffs' counsel for the risks they take in bringing these actions is essential: "[s]uch actions could not be sustained if plaintiffs' counsel were not to receive remuneration from the settlement fund for their efforts on behalf of the class." *Hicks v. Stanley*, 2005 WL 2757792, at *9 (S.D.N.Y. Oct. 24, 2005). Accordingly, Lead Counsel is entitled to an award of attorneys' fees from the Settlement Fund.

**B.      The Court Should Award Attorneys' Fees Using the Percentage-of-the Fund Method**

The Supreme Court has endorsed the percentage method, stating that "under the 'common fund doctrine' . . . a reasonable fee is based on a percentage of the fund bestowed on the class." *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984). The First Circuit also has endorsed this method in common fund cases, noting that it is the prevailing method and that it "offers significant structural advantages in common fund cases, including ease of administration, efficiency, and a close approximation of the marketplace." *Thirteen Appeals*, 56 F.3d at 308. "Indeed, there is a 'clear consensus among federal and state courts' that the percentage of fund approach is the more efficient,

---

4        Internal citations are omitted, and emphasis is added throughout, unless otherwise indicated.

better reasoned, and effective method." *Gordan v. Mass. Mut. Life Ins. Co.*, 2016 WL 11272044, at *2 (D. Mass. Nov. 3, 2016).  The percentage method "appropriately aligns the interests of the class with the interests of the class counsel[,] . . . is 'less burdensome to administer than the lodestar method,' . . . 'enhances efficiency' and does not create a 'disincentive for the early settlement of cases.'" *Duhaime v. John Hancock Mut. Life Ins. Co.*, 989 F. Supp. 375, 377 (D. Mass. 1997) (quoting *Thirteen Appeals*, 56 F.3d at 307); *see also Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 121 (2d Cir. 2005) (noting method "'directly aligns the interests of the class and its counsel'").[5]  For these reasons, courts assessing fee awards in securities fraud class actions generally apply the percentage method, with or without consideration of lodestar as a "cross-check." *See, e.g.*, *Hill v. State St. Corp.*, 2015 WL 127728, at *17 (D. Mass. Jan. 8, 2015) (noting that lodestar cross-check is sometimes used but would not be "particularly helpful or appropriate" to assess fees in that securities fraud action).

The requested fee of 33-1/3% is both reasonable under the circumstances and well within the typical range of percentage fees awarded in the First Circuit and elsewhere.  *See, e.g.*, *In re GE ERISA Litig.*, No. 1:17-cv-12123-IT, ECF 385 at 1-2, Order Awarding Attorneys' Fees and Expenses and Awards to Plaintiffs (D. Mass. Mar. 8, 2024) (awarding 1/3 of $61 million settlement fund, plus expenses); *Dahhan v. Ovascience, Inc.*, No. 1:17-cv-10511-IT, ECF 210 at 2, Order Awarding Attorneys' Fees and Payment of Litigation Expenses, Charges and Costs (D. Mass. Dec. 20, 2022) (awarding 33-1/3% of $15 million settlement, plus expenses); *Machado v. Endurance Int'l Grp. Holdings, Inc.*, 2019 WL 4409217, at *1 (D. Mass. Sept. 13, 2019) (awarding 33 1/3% of $18.65

---

[5]     The PSLRA provides that "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class."  15 U.S.C. §78u-4(a)(6).  Thus, "the PSLRA has made percentage-of-recovery the standard for determining whether attorneys' fees are reasonable." *In re Cendant Corp. Sec. Litig.*, 404 F.3d 173, 188 n.7 (3d Cir. 2005).

4890-0791-6210.v1

million settlement, plus expenses); *Crandall v. PTC Inc.*, 2017 U.S. Dist. LEXIS 217581, at *16 (D. Mass. July 14, 2017) (awarding 33-1/3% of $2.1 million settlement, plus expenses); *Roberts v. TJX Cos., Inc.*, 2016 WL 8677312, at *13 (D. Mass. Sept. 30, 2016) (awarding 33-1/3% of $4.75 million settlement).  *See also In re 3D Sys. Sec. Litig.*, 2024 WL 50909, at *1 (E.D.N.Y. Jan. 4, 2024) (awarding one-third of $4 million settlement, plus expenses); *Plymouth Cnty. Ret. Sys. v. Patterson Cos., Inc.*, 2022 WL 2093054, at *1 (D. Minn. June 10, 2022) (awarding 33-1/3% fee on $63 million settlement, plus expenses); *Hosp. Auth. of Metro. Gov't of Nashville v. Momenta Pharms., Inc.*, 2020 WL 3053468, at *2 (M.D. Tenn. May 29, 2020) (awarded one-third of $120 million recovery, plus expenses); *In re J.P. Morgan Stable Value Fund ERISA Litig.*, 2019 WL 4734396, at *6 (S.D.N.Y. Sept. 23, 2019) (awarding one-third fee on $75 million settlement, plus expenses).

## C.      Factors Considered by Courts in the First Circuit Confirm that the Requested Fee Is Fair and Reasonable

While "[t]he First Circuit has not endorsed a specified set of factors to be used in determining whether a fee request is reasonable," *In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 79 (D. Mass. 2005), courts in this Circuit consider several factors when considering an award of attorneys' fees, including:

> "(1) the size of the fund and the number of persons benefitted; (2) the skill, experience, and efficiency of the attorneys involved; (3) the complexity and duration of the litigation; (4) the risks of the litigation; (5) the amount of time devoted to the case by counsel; (6) awards in similar cases; and (7) public policy considerations, if any."

*Hill*, 2015 WL 127728, at *17 (quoting *In re Puerto Rican Cabotage Antitrust Litig.*, 815 F. Supp. 2d 448, 458 (D.P.R. 2011)); *Medoff v. CVS Caremark Corp.*, 2016 WL 632238, at *8 (D.R.I. Feb. 17, 2016) (same).  Courts also have considered whether lead plaintiffs support the requested fee and the reaction of the class.  *See Hill*, 2015 WL 127728, at *19-*20; *In re TJX Cos. Retail Sec. Breach Litig.*, 584 F. Supp. 2d 395, 401 (D. Mass. 2008) (considering "the reaction of the class members to

- 6 -

the settlement and proposed attorneys' fees" as one of the relevant factors). As set forth below, all of these factors weigh strongly in favor of finding that the requested fee award of 33-1/3% of the common fund is reasonable.

### 1.    The Amount of the Recovery and the Number of Class Members Who Will Benefit From the Settlement Support the Requested Fee

Courts consistently have recognized that the result achieved is one of the most important factors to be considered in making a fee award. *See Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) ("[T]he most critical factor is the degree of success obtained."); *see also Puerto Rican Cabotage*, 815 F. Supp. 2d at 458 ("[T]he net dollars and cents results achieved by counsel for their clients is often the most influential factor in assessing the reasonableness of any attorneys' fee award."). The Settlement Fund of $27,500,000 has been obtained through the diligent efforts of Lead Counsel without the risk of trial and appeals.

Indeed, one of the distinct advantages of the percentage-of-the-fund method is that it directly incorporates the value of the recovery obtained into the calculation of the fee. *See Duhaime*, 989 F. Supp. at 377 (noting advantage of percentage method is that "it focuses 'on result, rather than process, which better approximates the workings of the marketplace'" and "the greater the value secured for the class, the greater the fee earned by class counsel"). Furthermore, as explained in the Final Approval Brief and Gerson Decl., the favorable nature of this Settlement is supported by recent empirical evidence regarding securities class action settlements. In 2023, the median recovery in securities cases was $14 million.[6] This Settlement far exceeds that median recovery – an excellent recovery in light of Defendants' countervailing legal arguments. Gerson Decl., ¶¶75, 80, 88-93.

---

[6]    *See* Edward Flores and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2023 Full-Year Review*, at 20, Fig. 19 (NERA Jan. 23, 2024) (attached as Ex. A to the Gerson Decl.).

4890-0791-6210.v1

Here, the Settlement is all cash, not dependent upon the number of claims made, there is no reversion to Defendants, and hundreds – if not thousands – of Members of the Class will now receive compensation that was otherwise uncertain when the case began.

### 2.    The Skill and Experience of Counsel Support the Requested Fee

The prosecution and management of a complex national securities class action requires unique legal skills and abilities.  As demonstrated by its firm résumé, Robbins Geller has experienced and skilled practitioners in the securities class action field, and has a long and successful track record in such cases.  Robbins Geller's willingness and ability to undertake complex and difficult cases such as this, and commitment to the Litigation, added valuable leverage to the settlement negotiations.  *See Hill*, 2015 WL 127728, at *17 (noting plaintiffs' counsel's "experience and expertise contributed to the achievement of the Settlement"); *Bezdek v. Vibram USA Inc.*, 79 F. Supp. 3d 324, 350 (D. Mass. 2015) (finding skill of lawyers "nationally known for and greatly experienced in representing plaintiffs" in class action lawsuits weighed in favor of fee award), *aff'd*, 809 F.3d 78 (1st Cir. 2015).

The quality of the work performed by Robbins Geller in attaining the Settlement should also be evaluated in light of the quality of the opposition.  *See In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*, 364 F. Supp. 2d 980, 995 (D. Minn. 2005) ("Defendants' attorneys . . . consistently put plaintiffs' counsel through the paces.  All counsel consistently demonstrated considerable skill and cooperation to bring this matter to an amicable conclusion.").  Here, throughout the Litigation, Defendants have been represented by highly experienced lawyers from Skadden Arps, an international and well-respected law firm known for its vigorous defense in cases such as this.

Notwithstanding this formidable opposition, Lead Counsel developed a case that was sufficiently strong to persuade Defendants to settle the action on terms highly favorable to the Class.

- 8 -

*See Schwartz v. TXU Corp.*, 2005 WL 3148350, at *30 (N.D. Tex. Nov. 8, 2005) ("The ability of plaintiffs' counsel to obtain such a favorable settlement for the Class in the face of such formidable legal opposition confirms the superior quality of their representation."). Accordingly, this factor further supports the requested attorneys' fees.

### 3. The Complexity and Duration of the Litigation Support the Requested Fee

Courts have long recognized that securities class actions are notoriously complex and difficult to prove, and this case was no exception. *See, e.g.*, *Redwen v. Sino Clean Energy, Inc.*, 2013 WL 12303367, at *6 (C.D. Cal. July 9, 2013) ("Courts experienced with securities fraud litigation "'routinely recognize that securities class actions present hurdles to proving liability that are difficult for plaintiffs to clear.'""); *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 2010 WL 4537550, at *15 (S.D.N.Y. Nov. 8, 2010) (recognizing securities class litigation is ""notably difficult and notoriously uncertain""); *City of Providence v. Aeropostale, Inc.*, 2014 WL 1883494, at *16 (S.D.N.Y. May 9, 2014), *aff'd sub nom. Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015) ("[T]he complex and multifaceted subject matter involved in a securities class action such as this supports the fee request.").

Many complex issues were raised in the Litigation. Among other things, Lead Counsel needed to develop a deep understanding of, *inter alia*, the Virtual Machine backup process, various software testing processes, and the Virtual Machine backup software industry at large. *See* Gerson Decl., ¶37. A comprehensive factual investigation was undertaken by Lead Counsel to draft the CAC, oppose Defendants' motion to dismiss, and then successfully appeal the Court's decision on the motion to dismiss. *Id.*, ¶¶15-29. Once the PSLRA-mandated discovery stay was lifted following resolution of the appeal of the motion to dismiss decision, Lead Counsel propounded targeted discovery to Defendants and numerous third parties. *Id.*, ¶¶30-43. The fruits of this discovery

included hundreds of thousands of pages of documents and deposition testimony. *Id.*, ¶¶37, 43. Lead Plaintiff moved for and obtained class certification over Defendants' vigorous opposition. *Id.*, ¶¶44-52. Defendants moved to decertify the Class following issuance of the Second Circuit's application of the Supreme Court's *Goldman Sachs* decision, and Lead Plaintiff opposed the motion. *Id.*, ¶¶79-80. That motion was undecided at the time the proposed Settlement was reached. *Id.*, ¶81. The parties also retained experts; those experts provided opening and rebuttal reports and deposition testimony. *Id.*, ¶¶64-74. Following lengthy negotiations over the scope of discovery, Lead Plaintiff moved to compel certain discovery. *Id.*, ¶¶56-63. Defendants then moved for summary judgment, which was opposed by Lead Plaintiff. *Id.*, ¶¶75-77. The motion was fully briefed and ripe for decision at the time the proposed Settlement was reached. *Id.*, ¶78. In connection with the mediation, Lead Counsel drafted mediation statements that set out Lead Plaintiff's strongest evidence based on the documents produced and testimony obtained. *Id.*, ¶83. Defendants likewise made compelling arguments in connection with their motion to dismiss and in their response to Lead Plaintiff's appeal, their opposition to class certification (and in seeking to decertify the Class) and in support of summary judgment, as well as in their mediation statements, including that they made no materially false statements, or material omissions, and did not omit any information they had a duty to disclose and that Lead Plaintiff could not establish scienter, or loss causation. *See id.*, ¶¶18-19, 48, 75. Defendants would argue that if the Class suffered any damages, they were significantly lower than Lead Plaintiff's estimates. *Id.*, ¶92. These and many other matters required substantial attention by Lead Counsel, who needed to analyze the factual record and relevant law carefully.

Accordingly, the magnitude and complexity of this Litigation support the conclusion that the requested fee is fair and reasonable.

4890-0791-6210.v1

### 4. The Risk of Non-Payment Was Extremely High in This Case

In a case undertaken on a contingent fee basis, the risk of the litigation is a key factor in determining an appropriate fee award. *See Roberts*, 2016 WL 8677312, at \*13 ("[M]ost importantly, Class Counsel took the case on a contingency fee basis, assuming significant risk in litigating the case."); *Hill*, 2015 WL 127728, at \*18 ("consider[ing] . . . contingency risk in awarding attorneys' fees" when counsel "litigated the Action on a fully contingent basis and were exposed to the risk that they might obtain no compensation for their efforts on behalf of the class"). Where, as here, Lead Counsel "undertook this action on a contingency basis and faced a significant risk of non-payment, this factor weighs more heavily in favor of rewarding litigation counsel." *CVS*, 2016 WL 632238, at \*9.

As noted throughout the Gerson Decl., from the outset of this case in 2019 it was apparent that Lead Counsel faced very significant challenges to establishing liability and damages, on behalf of Lead Plaintiff. Thus, there was a significant risk that the case could be litigated for many years but result in no recovery for the Class and no payment for counsel. Specifically, Lead Counsel faced substantial risks and uncertainties in, among other things, proving that Defendants' alleged misstatements were materially false and misleading and made with scienter, as required by the federal securities laws. There is also a significant risk that Defendants, through expert evidence, could successfully challenge loss causation, by establishing that Carbonite's stock price decline was caused by something other than the alleged false and misleading statements. And, while Lead Plaintiff successfully obtained class certification, at the time a settlement was reached, it faced a pending motion to decertify. In addition, Defendants' motion for summary judgment (raising strenuous challenges to falsity, scienter, and loss causation) was fully briefed. Therefore, in the absence of a settlement, the Class faced a substantial litigation risk with no guarantee of a greater, or

4890-0791-6210.v1

any recovery.  Despite these very real risks, Lead Counsel worked vigorously to achieve a significant result for the Class.  Under these circumstances, the requested fee is fully appropriate.

### 5. The Amount of Time Devoted to the Litigation by Lead Counsel Supports the Requested Fee

The extensive time and effort expended by Lead Counsel in prosecuting the Litigation and achieving the Settlement since the Litigation was initiated in August 2019 also establish that the requested fee is justified and reasonable.  *See Hill*, 2015 WL 127728, at *19.  The Gerson Decl. details the substantial efforts of Lead Plaintiff's Counsel in prosecuting Lead Plaintiff's claims. While a lodestar cross-check is not required, *see id.* at *17, "a lodestar analysis may be performed as a cross-check to ensure that the percentage award is fair and reasonable."  *Gordan*, 2016 WL 11272044, at *2.  Courts considering lodestar frequently note that lodestar multiples of 1.0 to 4.0 are generally considered appropriate.  *See, e.g.*, *Relafen*, 231 F.R.D. at 82 (approving settlement with 2.02 lodestar multiple).  When the lodestar is used as a cross-check, "the focus is not on the 'necessity and reasonableness of every hour' of the lodestar, but on the broader question of whether the fee award appropriately reflects the degree of time and effort expended by the attorneys."  *Tyco*, 535 F. Supp. 2d at 270 (quoting *Thirteen Appeals*, 56 F.3d at 307).  In this case, the lodestar method, whether used directly or as a cross check on the percentage method, strongly demonstrates the reasonableness of the requested fee.

Here, Lead Plaintiff's Counsel spent over 14,860 hours of attorney and other professional support staff prosecuting the Litigation.  *See* Fee Declarations.  Based on counsel's rates, their collective lodestar is $9,292,701.00.[7]  A $9.15 million fee therefore represents a slightly negative

---

[7]    The Supreme Court and courts in this Circuit have approved the use of current hourly rates in calculating the base lodestar figure as a means of compensating for the delay in receiving payment and the loss of interest.  *Mo. v. Jenkins by Agyei*, 491 U.S. 274, 283-84 (1989); *Cohen v. Brown*

- 12 -

multiplier of 0.98 to counsel's lodestar.  The fact that counsel are seeking fees below the amount of their lodestar supports the reasonableness of the requested fee.  *See In re Health Ins. Innovations Sec. Litig.*, 2021 WL 1341881, at *12 (M.D. Fla. Mar. 23, 2021) (A "negative lodestar multiplier . . . further supports the reasonableness of the fee requested."); *In re FLAG Telecom Holdings, Ltd. Sec. Litig.*, 2010 WL 4537550, at *26 (S.D.N.Y. Nov. 8, 2010) ("Lead Counsel's request for a percentage fee representing a significant discount from their lodestar provides additional support for the reasonableness of the fee request.").  The substantial time and effort devoted to this case was critical in obtaining the favorable result achieved by the Settlement, and confirms that the fee request here is reasonable.[8]

### 6.    Awards in Similar Cases Support the Requested Fee

As discussed above, Lead Counsel's requested fee of 33-1/3% of the Settlement Fund is well within the range of fee awards in class action cases in this Circuit and elsewhere.  *See* §III.B.  Thus, this factor strongly supports the reasonableness of the requested fee.

### 7.    Public Policy Considerations Support the Requested Fee

Public policy supports rewarding counsel for prosecuting securities class actions, especially where, as here, "counsel's dogged efforts – undertaken on a wholly contingent basis – result in satisfactory resolution for the class."  *CVS*, 2016 WL 632238, at *9 (citing *Tyco*, 535 F. Supp. 2d at 270).  As the Supreme Court has emphasized, private securities actions such as this provide "'a most

---

*Univ.*, 2001 WL 1609383, at *1 (D.N.H. Dec. 5, 2001); *Souss v. Banco Santander S.A. & Santander Bancorp.*, 2011 WL 13350165, at *12 (D.P.R. June 9, 2011).

[8]    Moreover, the legal work on this action will not end with the Court's approval of the proposed Settlement.  Additional hours and resources already have been, and necessarily will continue to be, expended assisting members of the Class with their Proof of Claim and Release forms, overseeing the claims process, and responding to Class Member inquiries.

effective weapon in the enforcement' of the securities laws and are 'a necessary supplement to [SEC] action.'" *Bateman*, 472 U.S. at 310.

### 8.    The Endorsement of Lead Plaintiff and the Reaction of the Class Support the Requested Fee

Lead Plaintiff was appointed pursuant to the relevant provisions of the PSLRA. As set forth in Lead Plaintiff's declaration, Lead Plaintiff carefully oversaw the prosecution and resolution of this Litigation, and had a sound basis for assessing the reasonableness of the fee request. Lead Plaintiff fully supports and approves that request. *See* Declaration of Thomas Clement ("Clement Decl."), ¶6, submitted herewith.

Furthermore, the reasonableness of the requested fee is supported by the reaction of the Class. *See, e.g.*, *Hill*, 2015 WL 127728, at *19 ("The endorsement of the Lead Plaintiffs and the favorable reaction of the class both support approval of the requested fees."). As of April 8, 2024, the Claims Administrator has disseminated in excess of 13,800 Postcard Notices. *See* accompanying Declaration of Ross D. Murray Regarding Notice Dissemination, Publication, and Requests for Exclusion Received to Date ("Murray Decl."), on behalf of the Court-appointed Claims Administrator for the Settlement, Gilardi & Co. LLC ("Gilardi"), ¶¶5-11. To date, no Class Members have objected to any portion of the Settlement or Lead Counsel's requested fee.[9] No Class Members have opted out of the Class, *see* Murray Decl., ¶16, which lends further support to the requested fee. *See, e.g.*, *Bezdek*, 79 F. Supp. 3d at 351 (finding "overwhelmingly positive" reaction of class to settlement and "quite low number of opt-outs" weighed in favor of requested fee).

In sum, Lead Counsel respectfully submits that the 33-1/3% fee is reasonable here, and should be awarded.

---

[9]    Lead Counsel will address any fee-related objections that are received in its reply papers, to be filed with the Court on May 8, 2024.

- 14 -

**D.    The Expenses Incurred Are Reasonable and Were Necessary to Achieve the Benefit Obtained**

Lead Counsel's fee application includes a request for payment of litigation expenses that were reasonable and necessary to the prosecution of the Litigation.  Attorneys who create a common fund for the benefit of a class are entitled to payment of reasonable litigation expenses from the fund. *See, e.g.*, *In re Fidelity/Micron Sec. Litig.*, 167 F.3d 735, 737 (1st Cir. 1999) ("[L]aw firms are not eleemosynary institutions, and lawyers whose efforts succeed in creating a common fund for the benefit of a class are entitled not only to reasonable fees, but also to recover from the fund, as a general matter, expenses, reasonable in amount, that were necessary to bring the action to a climax."); *Ford v. Takeda Pharms. U.S.A., Inc.*, 2023 WL 3679031, at *3 (D. Mass. Mar. 31, 2023). In the Notice, the Class was advised that Lead Counsel would ask the Court for an award of litigation expenses not to exceed $600,000.00.

Lead Plaintiff's Counsel's expense request of $475,395.89 is reasonable and should be approved.  The Fee Declarations submitted herewith provide itemized schedules of the expenses incurred by each firm.  The expenses listed on those schedules are ones that are necessarily incurred in litigation and routinely charged to clients billed by the hour by each firm.

Lead Counsel respectfully submits that these expenses were reasonably and necessarily incurred in prosecuting this action and should be awarded from the Settlement Fund.  *See, e.g.*, *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 468 (S.D.N.Y. 2004) ("The expenses incurred – which include investigative and expert witnesses, filing fees, service of process, travel, legal research and document production and review – are the type for which 'the paying, arms' length market' reimburses attorneys.  For this reason, they are properly chargeable to the Settlement fund."); *see also Anwar v. Fairfield Greenwich Ltd.*, 2012 WL 1981505, at *3 (S.D.N.Y. June 1, 2012) ("Here, Plaintiffs' Counsel seek reimbursement for expenses such as mediation fees, expert

- 15 -

4890-0791-6210.v1

witness fees, electronic legal research, photocopying, postage, and travel expenses, each of which is the type the paying, arms' length market reimburses attorneys. . . . As such, these expenses shall be reimbursed."); *Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 454 (E.D. Cal. 2013) (noting "travel, mediation fees, photocopying, . . . delivery and mail charges" are "routinely reimbursed"). No Class Member has objected to these requested expenses.

**E.      The Award to Lead Plaintiff Pursuant to 15 U.S.C. §78u-4(a)(4) of the PSLRA Is Reasonable**

The Class also was advised that Lead Plaintiff would ask the Court for an award not to exceed $14,000.00 in connection with its participation in the Litigation. The PSLRA specifically provides that an "award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class" may be made "to any representative party serving on behalf of a class." 15 U.S.C. §78u-4(a)(4); *see also In re Evergreen Ultra Short Opportunities Fund Sec. Litig.*, 2012 WL 6184269, at *2 (D. Mass. Dec. 10, 2012) (reimbursing lead plaintiffs a total of $54,626 when they had "worked closely with counsel throughout the case, communicated with counsel on a regular basis, reviewed and provided input with respect to counsel's submissions, provided information, produced documents, and participated in settlement discussions"); *Ovascience*, ECF 210 at 3 (awarding $10,000 to lead plaintiff); *Zametkin v. Fidelity Mgmt. & Rsch. Co.*, No. 1:08-cv-10960-MLW, ECF 115 at 6 (D. Mass. May 11, 2012) (awarding $14,910 to lead plaintiff); *Ahearn v. Credit Suisse First Bos. LLC*, No. 03-CV-10956 (JLT), ECF 82 at 5-6 (D. Mass. June 7, 2006) (awarding total of $35,000 to two lead plaintiffs). The reason behind permitting payment for services of a lead plaintiff was made clear in the congressional record: "These provisions are intended to increase the likelihood that parties with significant holdings in issuers, whose interests are more strongly aligned with the class of shareholders, will participate in the litigation and exercise

control over the selection and actions of plaintiff's counsel." H.R. Conf. Reg. No. 104-369, at 32 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, at 731 (1995).

As set forth in its declaration, Lead Plaintiff has actively and effectively fulfilled its obligations as a representative of the Class, complying with the demands placed upon it, and providing valuable assistance to Lead Counsel. Indeed, Lead Plaintiff was actively involved in this case from start to finish. For example, Lead Plaintiff located and produced documents and provided deposition testimony in connection with its motion for class certification; reviewed Defendants' discovery requests and assisted in providing responses; reviewed filings provided by counsel; reviewed key orders and hearing transcripts; discussed case strategy with counsel; attended the hearing on the class certification motion; discussed settlement status; and was consulted during the mediation process. Clement Decl., ¶4. These actions are precisely the type that support reimbursement to representative parties under the PSLRA.

Thus, in recognition of Lead Plaintiff's time and effort expended for the benefit of the Class, Lead Counsel respectfully requests an award to Lead Plaintiff in the amount of $14,000.00, which represents its time spent in the prosecution of the Litigation over the past four years. This amount is reasonable and fully justified under the PSLRA based on Lead Plaintiff's extensive involvement in the Litigation and the amount of time devoted for the benefit of the Class. Therefore, Lead Counsel and Lead Plaintiff respectfully submit that this award should be granted.

4890-0791-6210.v1

## IV.    CONCLUSION

For the reasons set forth above, Lead Counsel respectfully requests that the Court enter an

Order awarding it fees in the amount of 33-1/3% of the Settlement Fund, plus accrued interest; and

$475,395.89 in litigation expenses, plus accrued interest.  Lead Counsel further requests that Lead

Plaintiff be awarded $14,000.00 in connection with its representation of the Class.

DATED:  April 10, 2024                  Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
SAMUEL H. RUDMAN
DAVID A. ROSENFELD (admitted *pro hac vice*)
ROBERT D. GERSON (admitted *pro hac vice*)


                                        */s/ David A. Rosenfeld*
                                        DAVID A. ROSENFELD

58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com
drosenfeld@rgrdlaw.com
rgerson@rgrdlaw.com

ROBBINS GELLER RUDMAN
    & DOWD LLP
ELLEN GUSIKOFF STEWART (admitted *pro hac vice*)
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)
elleng@rgrdlaw.com

Lead Counsel for Lead Plaintiff

4890-0791-6210.v1

HUTCHINGS BARSAMIAN MANDELCORN, LLP
THEODORE M. HESS-MAHAN, BBO #557109
110 Cedar Street, Suite 250
Wellesley Hills, MA  02481
Telephone:  781/431-2231
781/431-8726 (fax)
thess-mahan@hutchingsbarsamian.com

Local Counsel

4890-0791-6210.v1

**CERTIFICATE OF SERVICE**

I, David A. Rosenfeld, hereby certify that on April 10, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System, which will send a Notice of Electronic Filing to all counsel of record.

/s/ David A. Rosenfeld
DAVID A. ROSENFELD