UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____

CONSTRUCTION INDUSTRY AND LABORERS
JOINT PENSION TRUST, et al.,

     Plaintiff,

   v.

CARBONITE, INC., et al.,

     Defendants.

Civil Action No.
1:19-cv-11662-LTS

_____

BEFORE THE HONORABLE LEO T. SOROKIN, DISTRICT JUDGE

MOTION

Wednesday, May 15, 2024
2:01 p.m.

John J. Moakley United States Courthouse
Courtroom No. 13
One Courthouse Way
Boston, Massachusetts

Rachel M. Lopez, CRR
Official Court Reporter
raeufp@gmail.com

**A P P E A R A N C E S**

On behalf of the Plaintiffs:

HUTCHINGS, BARSAMIAN, CROSS AND MANDELCORN, LLP
BY:   THEODORE M. HESS-MAHAN
110 Cedar Street
Wellesley Hills, Massachusetts  02481
(781) 431-2231
thess-mahan@hutchingsbarsamian.com

ROBBINS GELLER RUDMAN & DOWD LLP
BY:   ELLEN GUSIKOFF STEWART, DAVID A. ROSENFELD, AND
ROBERT D. GERSON
655 West Broadway
Suite 1900
San Diego, California  92101
(619) 231-1058
elleng@rgrdlaw.com
drosenfeld@rgrdlaw.com
rgerson@rgrdlaw.com

On behalf of the Defendants:

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
BY:   ALISHA QUINTANA NANDA AND NIGEL TAMTON
500 Boylston Street
Boston, Massachusetts  02116
(617) 573-4800
alisha.nanda@skadden.com
nigel.tamton@skadden.com

**P R O C E E D I N G S**

(In open court.)

THE DEPUTY CLERK:  The United States District Court for the District of Massachusetts is now in session, the Honorable Leo T. Sorokin presiding.

THE COURT:  Please be seated.

THE DEPUTY CLERK:  Today is Wednesday, May 15, 2024, and we are on the record in civil case number 19-cv-11662, Construction Industry and Laborers Joint Pension Trust, et al., versus Carbonite, Inc., et al.

Will counsel please state your name for the record.

MR. HESS-MAHAN:  Theodore Hess-Mahan, local counsel for lead plaintiffs.  Good afternoon.

THE COURT:  Good afternoon.

MS. GUSIKOFF STEWART:  Good afternoon, Your Honor, Ellen Gusikoff Stewart, of Robbins Geller Rudman & Dowd, on behalf of the lead plaintiff and the class.

MR. ROSENFELD:  Good afternoon, Your Honor, David Rosenfeld, also from Robbins Geller, on behalf of the lead plaintiff and the class.

MR. GERSON:  Good afternoon, Your Honor, Robert Gerson, also from Robbins Geller, on behalf of the plaintiff and the class.

THE COURT:  Good afternoon to all of you.

MS. NANDA:  Good afternoon, Alisha Nanda, from

Skadden, for Carbonite and the individual defendants.

MR. TAMTON:  Good afternoon, Nigel Tamton, from Skadden, on behalf of defendants.

THE COURT:  Good afternoon to both of you.

Well, there's no one here, so obviously no objectors have showed up.

I see no objections on the docket.

Is that your understanding, as well, for both of you?

MS. GUSIKOFF STEWART:  Yes, Your Honor.

MS. NANDA:  Yes, Your Honor.

THE COURT:  All right.  Fine.

So there are two issues here, one is the final approval of the class action settlement and plan of allocation, and the other is the motion for attorneys' fees, costs, and the award to the lead plaintiff.

I'm happy to hear you, but I've read it all.  It struck me at the time that I read it at the preliminary approval, and I thought about it and I was curious to see -- I'm always curious to see if there were objections.  But I reviewed it all before the hearing, and it seems like an arm's length -- well-negotiated arm's-length settlement, done after substantial litigation and discovery, including I dismissed it, you went to the circuit, I was wrong.  They reversed it.  It came back, did a lot of discovery.  There

was class certification, a motion to undue the class certification.  You had a lot of bases.  You went before a serious mediator.  You went through it all.

I wouldn't expect either the plaintiffs' counsel in this case or defense counsel to roll over, given the nature of the issues, and you didn't.  And so it seems like a perfectly reasonable settlement and rational allocation plan.  So I'm happy to hear you, but I'm inclined to allow it.

As to the -- anybody want to be heard on that?

MS. GUSIKOFF STEWART:  Not to snatch defeat from the jaws of victory, I will rest on our papers and thank the Court for its time over the last four years.

MS. NANDA:  No further comment on our side.  Thank you very much, Your Honor.

THE COURT:  All right.  Then I will allow the motion for final approval of the class action settlement and allocation plan, and I'll sign and issue the proposed settlement order.

And just have the clerk's notes, Sam, note that no person even appeared -- there was no person appearing at the hearing to object.  I think the docket -- you don't need to note this, but the docket is clear, no one objected before.

So that brings me to the other motion.  You're taking no position on it, right, the defendants?

MS. NANDA:  That's correct, no position.

THE COURT:  All right.

So I am -- I have one question about it and -- I'll just tell you -- I'll tell you this.  I'm inclined to approve it.  I'm not -- the $14,000 award to the main plaintiff, that seemed reasonable to me.  In this case, the person they did a fair bit of work involved.  It was a lengthy litigation.  That's not out of the ordinary, especially given the amount of time and effort put into it.

So I'm inclined to approve the -- approve on the following sort of theories.  I view, frankly, the hourly rates described is a little bit soft data in the sense that it's probably comparable or under what the defendants charged their clients.  And I understand that.  And I understand why, then, you would feel -- you feel that you're quite good lawyers, too.  I don't have any reason to question that, and I'm not questioning that.  And so you think, then, why don't you get those rates, too?

And of course, one difference is they are getting those rates at arm's-length negotiations, with sophisticated parties, who are prepared to pay.  And whether -- without any disrespect to the particular defense counsel here or the group of lawyers that typically obtain rates between $500 and $2,500 an hour from their clients, whether they're, in fact, worth it, or whether they're, in fact, two or ten X better than lawyers who charge less is not a question for me to

adjudicate or before me or for me to decide.  That's just an arm's-length private transaction.  I don't have any reason to question it.

And your hourly rates, I don't understand them to be rates that private parties in arm's-length negotiations are paying.  I understand how you derive them, and I understand that.  And I don't think that you should be limited to, sort of, the hourly rate that lawyers at Greater Boston Legal Services are paid, if you take their salary, divide it by the number of hours, even assuming that doesn't violate some other minimum wage law.

But I just say that so -- what I mean by that is I don't particularly view a determination by me accepting this as my adjudicated determination that, in fact, somebody at your law firm is worth 1,400 or 900 or 1,800, or whatever, an hour.  And I say that because I do receive fee petitions, sometimes in different kinds of cases where they're more contested, where people say judge so and so approved me getting whatever.

The way I thought about this is as follows -- I say that as sort of -- I'm not issuing a written opinion about this, but as a sort of caveat.  The way I think about it, you did the number of hours, at the rates you propose, which I infer are what you view is roughly equivalent to big law rates.  As it comes out, then, this is -- and you're just

getting paid your hourly rate.  And that's one way to think about it.  And then the third fee is fair for sure.  Right?

And then I thought, well, even if I halved your rates just across the board -- and I'm not really sure if I were really going through some scientific process that halving would be appropriate.  There's some people who the higher the number, the more appropriate it is to knock it down.  Some of the lower numbers didn't look to me to be -- it looked to me, probably, actually, very reasonable.  And I wouldn't even think about submitting it.  I wouldn't reduce it at all.

But even if I did halve it and just said, rough stroke -- and I noticed the two people who billed one-third to one-half of all of the total dollar billings were the -- these two sitting here.  And so and their rates were less than $1,000 an hour, not that that's some sort of threshold of reasonableness.

So in any event, I thought, well, if I halved it all, then you're getting -- I'm doubling the lodestar if it is a double.  And that doesn't seem, in this particular case, unreasonable.

I looked at the case, and I thought you didn't have a case.  I was wrong.  The First Circuit reversed.  But unless I'm completely crazy it shows that there's at least some view that's wrong but not irrational, I guess is the way

I would have termed my decision now, and that it's not a -- you know, it's a winner.

So that means you took a fair bit of risk, and you decided to go further. You didn't know if you were going to win in the circuit. You presumably thought you had a chance, at least. And then you did -- that's just to get to square one.

And so you're entitled, on the cases -- you lose cases -- I mean, you particularly, but plaintiffs securities lawyers lose cases regularly, in part because defense counsel does a really good job, and in part given the nature of the issues and the law. So it struck me as you're entitled to more than -- if I halved it, even if I said that's a reasonable hourly rate for you -- I'm not saying it is -- then you're talking about more than that.

So I came back to both the -- then it seemed reasonable to me. And it struck -- in the end, it didn't strike me as excessive, even if I thought the rates -- which is a long way of saying I'm fine with it, but I don't view it as an -- I'm neither rejecting those hourly rates, but I'm not viewing it as an endorsement in my determination that each person listed on that chart is entitled to an hourly rate to that.

And I wouldn't view my decision as -- at least in the case in front of me, in a disputed, or even just in

thinking about it, it necessarily means that there's a determination that Sorokin thought that this person, in May of 2024, was worth this much per hour.  I'm not saying they're not.  That's all.

With that, I'm inclined to allow, unless you want to say something further about that, or otherwise snatch defeat from the jaws of victory.

MS. GUSIKOFF STEWART:  Again, Your Honor, nothing -- nothing on our behalf.  And I would just thank you.  Yes, we do think that even if you were to halve, you know, a two multiplier, given the amount of work that was done here and the risk, it would not be an unreasonable multiplier if we had come in with that -- with that case law.

THE COURT:  Right.  That's what I thought.  So that's how I reach that resolution.

So I will allow the motion to approve the attorneys' fees and the costs and the award, and I'll sign the order for that, too.

I think it was a, you know, really well litigated case on all sides, and so I commend all of you for that.

And then anything else before we adjourn?

MS. GUSIKOFF STEWART:  Not on the plaintiffs' side. Thank you, Your Honor.

MS. NANDA:  No, Your Honor.  Thank you very much.

THE COURT:  All right.  Thank you.  Have a good

day.  We stand in recess.

(Court in recess at 2:12 p.m.)

**CERTIFICATE OF OFFICIAL REPORTER**

I, Rachel M. Lopez, Certified Realtime Reporter, in and for the United States District Court for the District of Massachusetts, do hereby certify that pursuant to Section 753, Title 28, United States Code, the foregoing pages are a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

Dated this 21st day of May, 2024.

/s/ RACHEL M. LOPEZ

_____
Rachel M. Lopez, CRR
Official Court Reporter